IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


FAYETTEVILLE PUBLIC LIBRARY, a political
subdivision in the City of Fayetteville, State of
Arkansas; EUREKA SPRINGS CARNEGIE PUBLIC
LIBRARY; CENTRAL ARKANSAS LIBRARY
SYSTEM; NATE COULTER; OLIVIA FARRELL;
JENNIE KIRBY, as parent and next friend of HAYDEN
KIRBY; LETA CAPLINGER; ADAM WEBB;
ARKANSAS LIBRARY ASSOCIATION;
ADVOCATES FOR ALL ARKANSAS LIBRARIES;
PEARL'S BOOKS, LLC; WORDSWORTH
COMMUNITY BOOKSTORE LLC d/b/a
WORDSWORTH BOOKS; AMERICAN
BOOKSELLERS ASSOCIATION; ASSOCIATION OF
AMERICAN PUBLISHERS, INC.; AUTHORS
GUILD, INC.; COMIC BOOK LEGAL DEFENSE
FUND; FREEDOM TO READ FOUNDATION                                    PLAINTIFFS


v.                              NO. 4:23-CV-05086-TLB

CRAWFORD COUNTY, ARKANSAS; CHRIS
KEITH, in his official capacity as Crawford County
Judge; TODD MURRAY; SONIA FONTICIELLA;
DEVON HOLDER; MATT DURRETT; JEFF
PHILLIPS; WILL JONES; TERESA HOWELL; BEN
HALE, CONNIE MITCHELL, DAN TURNER, JANA
BRADFORD; FRANK SPAIN; TIM BLAIR; KYLE
HUNTER; DANIEL SHUE; JEFF ROGERS; DAVID
ETHREDGE; TOM TATUM, II; DREW SMITH;
REBECCA REED MCCOY; MICHELLE C.
LAWRENCE; DEBRA BUSCHMAN; TONY
ROGERS; NATHAN SMITH; CAROL CREWS;
KEVIN HOLMES; CHRIS WALTON; and CHUCK
GRAHAM, each in his or her official capacity as a
prosecuting attorney for the State of Arkansas;                      DEFENDANTS

## COMPLAINT

Plaintiffs, Fayetteville Public Library, a political subdivision in the City of Fayetteville, State of Arkansas; Eureka Springs Carnegie Public Library; Central Arkansas Library System; Nate Coulter; Olivia Farrell; Jennie Kirby, as parent and next friend of Hayden Kirby; Leta Caplinger; Adam Webb; Arkansas Library Association; Advocates for All Arkansas Libraries; Pearl's Books, LLC; Wordsworth Community Bookstore, LLC d/b/a WordsWorth Books; American Booksellers Association; Association of American Publishers, Inc.; Authors Guild, Inc.; Comic Book Legal Defense Fund; and Freedom to Read Foundation, Inc., by their undersigned attorneys,[1] and for their Complaint against Defendants Crawford County, Arkansas; Chris Keith, in his capacity as the Crawford County Judge; Todd Murray; Sonia Fonticiella; Devon Holder; Matt Durrett; Jeff Phillips; Will Jones; Teresa Howell; Ben Hale; Connie Mitchell; Dan Turner; Jana Bradford; Frank Spain; Tim Blair; Kyle Hunter; Daniel Shue; Jeff Rogers; David Ethredge; Tom Tatum, II; Drew Smith; Rebecca Reed McCoy; Michelle C. Lawrence; Debra Buschman; Tony Rogers; Nathan Smith; Carol Crews; Kevin Holmes; Chris Walton; and Chuck Graham, each in his or her official capacity as a prosecuting attorney for the State of Arkansas, state:

### INTRODUCTION

1.    This action concerns whether Arkansas may enforce parts of the recently enacted Act 372 of 2023 ("Act 372"), a vague, sweeping law that restrains public libraries and booksellers in Arkansas from making available constitutionally protected books and other media to their patrons and customers. Specifically, Plaintiffs seek to preliminarily and permanently enjoin

---

[1] Plaintiffs Fayetteville Public Library, Eureka Springs Carnegie Public Library, Central Arkansas Library System, Nate Coulter, Olivia Farrell, Hayden Kirby, Leta Caplinger, Adam Webb, Arkansas Library Association, Advocates for All Arkansas Libraries, and Freedom to Read Foundation are referred to herein, collectively, as the "Library Plaintiffs." Pearl's Books, LLC, Wordsworth Community Bookstore, LLC, American Booksellers Association, Association of American Publishers, Inc., the Authors Guild, Inc. and Comic Book Legal Defense Fund are referred to herein, collectively, as the "Bookseller Plaintiffs."

enforcement of, and declare facially unconstitutional and void, Sections 1 and 5 of Act 372 as violations of their rights under the First and Fourteenth Amendments to the U.S. Constitution.[2]

2.      Section 1 of Act 372 makes it a criminal offense, punishable by imprisonment for up to a year, to make available, provide, or show to a minor an item that meets the definition of "harmful to minors" (the "Availability Provision"). This will necessarily force libraries and bookstores to confine to a secure "adults only" area—and so to segregate from their general patrons and customers—any item that might be deemed harmful to the youngest minor, even if there is no constitutional basis for limiting its availability to older minors or adults. Where libraries and booksellers lack the space or resources to construct "adults only" areas, their only choice will be to remove all materials which might be deemed harmful to their youngest, least developed patrons or customers.

3.      By so broadly regulating the display of protected materials that are constitutionally protected as to older minors and adults, the Availability Provision violates the First and Fourteenth Amendments because it imposes a content-based restriction on speech that (a) is not narrowly tailored, (b) is overly broad, and (c) is vaguely worded.

4.      Arkansas knows that it cannot directly prohibit libraries and booksellers from making books and other items available to their patrons and customers on such a sweeping basis, as its prior attempt to limit the availability of material deemed harmful to minors (in a nearly identical law) was struck down by an Arkansas federal court as "facially unconstitutional under the First and Fourteenth Amendments to the United States Constitution because such provisions are overbroad and impose unconstitutional prior restraints on the availability and display of

---

[2] A copy of Act 372 is attached as Exhibit 1 to this Complaint.

constitutionally protected, non-obscene materials to both adults and older minors." *Shipley, Inc. v. Long*, 454 F. Supp. 2d 819, 831 (E.D. Ark. 2004).

5.      What Arkansas cannot permissibly do directly through the Availability Provision, it likewise cannot not do indirectly through Section 5 of Act 372, which requires that public libraries establish a process through which any "person affected by [a] material" in their collection can challenge the "appropriateness" of that material's inclusion in the library's main collection (the "Challenge Procedure"). Like the Availability Provision, the Challenge Procedure will force public libraries to segregate into a secure, "adults only" area a substantial amount of material that is protected as to adults and older minors but which someone may allege is inappropriate for the public library's youngest, least mature reader. For smaller libraries that lack the space and staff to create this secure, "adults only" area, their only choice—compelled by Act 372—will be to remove entirely all materials that might be inappropriate for the youngest, least developed child readers.

6.      The Challenge Procedure thus violates the First and Fourteenth Amendment in that it (a) imposes an unconstitutional prior restraint on constitutionally protected material; (b) is unconstitutionally vague; and (c) lacks any judicial review of a decision to remove materials from a library's main collection.

7.      The constitutional harms created by the Challenge Procedure have already become evident. Specifically, Crawford County has acted to segregate constitutionally protected materials in the Crawford County Library, and its attorney defended the decision to segregate those materials with reference to its impending obligation under Act 372 to create an area inaccessible to minors.

8.      Governor Sanders signed Act 372 on March 31, 2023, and it is scheduled to go into effect on August 1, 2023. Plaintiffs bring this action to safeguard their fundamental rights and the rights of their members under the First and Fourteenth Amendments to the U.S. Constitution to disseminate, receive, and peruse constitutionally protected books, magazines, and other printed or audiovisual media. Act 372 forces bookstores and libraries to self-censor in a way that is antithetical to their core purposes. As further explained below, the Court should strike down the parts of the Act that violate the First and Fourteenth Amendments.

## JURISDICTION AND VENUE

9.      The Court has subject matter jurisdiction over this action (a) under 28 U.S.C. § 1331 because this action arises under federal law and (b) under 28 U.S.C. §§ 1343(a)(3) and (a)(4) because Plaintiffs seek to vindicate their federal civil rights under the First and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983.

10.     Plaintiffs seek remedies in this action under 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. §§ 1983 and 1988, and Fed. R. Civ. P. 65.

11.     Venue is proper in this district under 28 U.S.C. § 1391(b) because multiple Defendants reside in this district and all Defendants are residents of the State in which this district is located.

## PARTIES

12.     The Fayetteville Public Library ("FPL") is a municipal public library and political subdivision in the City of Fayetteville, formed pursuant to Arkansas law to provide library services to local residents. Some of the materials in FPL's collection, though constitutionally protected, could be deemed harmful to minors and therefore subject to the Availability Provision, or inappropriate for minors and therefore subject to the Challenge Procedure. To comply with the

Availability Provision and Challenge Procedure, FPL will have to change the physical layout of its libraries in ways that will materially alter the intentionally welcome and open atmosphere the library strives to create. If FPL declines to make these burdensome changes, or even if it does but fails to segregate a single title in its large collection, it puts itself at risk of violating the Availability Provision and being charged with a crime. FPL's First Amendment rights, and the rights of its patrons, will be adversely affected unless Sections 1 and 5 of Act 372 are enjoined. FPL sues on its own behalf, and on behalf of its library patrons and readers of library materials.

13.     Eureka Springs Carnegie Public Library ("ESCPL") is a municipal public library formed pursuant to Arkansas law to provide library services to local residents. Some of the materials in the ESCPL's collection, though constitutionally protected, could be deemed harmful to minors and therefore subject to the Availability Provision, or inappropriate for minors and therefore subject to the Challenge Procedure. To comply with the Availability Provision and Challenge Procedure, ESCPL will have to change the physical layout of its libraries in ways that will materially alter the intentionally welcome and open atmosphere the library strives to create. If ESCPL declines to make these burdensome changes, or even if it does but fails to segregate a single title in its large collection, it puts itself at risk of violating the Availability Provision and being charged with a crime. ESCPL's First Amendment rights, and the rights of its patrons, will be adversely affected unless provisions of Act 372 are enjoined. ESCPL sues on its own behalf, and on behalf of its library patrons and readers of library materials.

14.     Central Arkansas Library System ("CALS") is a body corporate and politic formed under Arkansas law under an interlocal agreement among the City of Little Rock, Pulaski County, Perry County, the City of Jacksonville, the City of Sherwood, and the City of Maumelle to provide library services to local residents. Some of the hundreds of thousands of materials in the CALS

6

collection, though constitutionally protected, could be deemed harmful to minors and therefore subject to the Availability Provision, or inappropriate for minors and therefore subject to the Challenge Procedure. To comply with the Availability Provision and Challenge Procedure, CALS will have to change the physical layout of its libraries in ways that will materially alter the intentionally welcome and open atmosphere the library strives to create. If CALS declines to make these burdensome changes, or even if it does but fails to segregate a single title in its large collection, it puts itself at risk of violating the Availability Provision and being charged with a crime. CALS's First Amendment rights, and the rights of its patrons, will be adversely affected unless Sections 1 and 5 of Act 372 are enjoined. CALS sues on its own behalf, and on behalf of its library patrons and readers of library materials.

15.    Nate Coulter is a resident of Little Rock and the Director of CALS. He is suing on his own behalf and on behalf of CALS's Board. Mr. Coulter faces the prospect of criminal liability if he engages in conduct that is constitutionally protected by the First Amendment but nevertheless violates Act 372.

16.    Olivia Farrell is an adult resident of Little Rock and a CALS patron and WordsWorth Books customer. Olivia will be injured if the Availability Provision or the Challenge Procedure goes into effect because she will be deprived of access to books that she would like to peruse, read, check out, or buy, and which would otherwise be available.

17.    Jennie Kirby is the parent and next friend of Hayden Kirby. Hayden Kirby is a seventeen-year-old resident of Little Rock and a CALS patron. Her constitutional rights will be adversely affected unless Act 372 is enjoined. Hayden will be injured if the Availability Provision or Challenge Procedure goes into effect because she will be deprived of access to books that she would like to peruse, read, check out, or buy, and which would otherwise be available.

18.     Leta Caplinger is an adult resident of Crawford County and a patron of the Crawford County Library System.  Leta will be injured if the Availability Provision or the Challenge Procedure goes into effect because she will be deprived of access to books that she would like to peruse, read, check out, or buy, and which would otherwise be available.

19.     Adam Webb is an American Library Association-accredited Librarian and Certified Public Library Administrator. He lives in Garland County and has worked at the Garland County Library ("GCL") for more than sixteen years, including, since 2019, as GCL's Executive Director. In his capacity as the Executive Director of GCL, Mr. Webb plans and directs the provision of library services, which means that he is primarily responsible for ensuring that GCL complies with Act 372. Mr. Webb believes that some of the approximately 160,000 items in GCL's collection, though constitutionally protected, could be deemed harmful to minors or inappropriate for minors and therefore subject to the Availability Provision or Challenge Procedure. Mr. Webb is also concerned about criminal liability arising from GCL's practice of offering volunteer positions to students in Garland County, many of whom are under 18 years of age, because those volunteers must have access to GCL's entire collection to do their work. Mr. Webb does not believe that GCL will be able to make the drastic and prohibitively expensive changes to its floor plan that would be necessary to fully segregate all possible covered materials in the library's collection. Accordingly, Mr. Webb is concerned that—in the course of his work and consistent with best practices for library administration—he might be charged with a misdemeanor offense for violating Act 372. Mr. Webb will thus be irreparably injured if the Availability Provision and Challenge Procedure are not enjoined. Mr. Webb sues on his own behalf and in his individual capacity.

20.     The Arkansas Library Association ("ArLA") is an Arkansas nonprofit corporation formed under Section 501(c)(3) of the Internal Revenue Code as a professional association for libraries and individuals who work in them throughout Arkansas. Its mission is to further the professional development of all library staff members; to foster communication and cooperation among librarians, trustees, and friends of libraries; to increase the visibility of libraries among the general public and funding agencies; and to serve as an advocate for librarians and libraries. ArLA has more than 400 members, comprised of both individuals employed by libraries and public library facilities located all across Arkansas, including in Crawford County. There exists at least one active and dues paying member of ArLA in each judicial district in Arkansas in which Act 372 will be enforced. ArLA sues on its own behalf and on behalf of its members. ArLA suffers irreparable injury to the interest of its members, as well as independently to its own organization interest. The First and Fourteenth Amendment rights of ArLA members and their patrons will thus be infringed unless the Availability Provision and Challenge Procedure are enjoined for all the following reasons:

a.      ArLA suffers irreparable injury to the interests of its members because many of its member libraries or its member librarians' workplaces carry materials that, though constitutionally protected, could be deemed harmful to minors and therefore subject to the Availability Provision, or inappropriate and therefore subject to the Challenge Procedure.

b.      Most of the libraries that are members of ArLA or at which ArLA members work serve small local communities. These libraries maintain their collections on open shelves, organized by type of book and subject matter, which patrons may access without requesting assistance from library staff. These libraries also serve patrons that range in age

9

from toddlers to the elderly. Many of these libraries do not have the financial or staff resources to review their entire collections, such that they can identify material that will need to be physically segregated under Act 372. Similarly, many of them lack the physical space or financial resources to restructure their library to provide the segregated space they would need to prevent any risk of availability to minors. Accordingly, many of ArLA's individual members will be at risk of criminal prosecution once Act 372 goes into effect.

c.      Many of ArLA's library-members also have in their collection only a single copy of books that are likely to be challenged, meaning that, during the review required by the Challenge Procedure, the libraries will be forced to purchase an additional copy or the book will be unavailable to patrons. Moreover, ArLA's member-libraries are frequently visited by families that include children too young to be left unattended while the parents peruse, either as a matter of library policy or parental judgment. In such a case, the chaperoning parent would be unable to access books segregated in an area of the library where their children are prohibited from entering.

d.      On information and belief, families will be less inclined to visit ArLA member-libraries if Act 372 prevents them from perusing books together. Indeed, on information and belief, adult visitors to ArLA member-libraries will generally be less inclined to peruse books available only in an adults-only sections, as those books will be stigmatized and less attractive to many readers.

e.      ArLA is also injured by the Challenge Procedure's viewpoint discrimination between those who support and oppose the availability of particular books. If the Challenge Procedure permitted participation by those who favor keeping a challenged book in circulation, ArLA or its members would participate to advocate for

books remaining available. Similarly, if the Challenge Procedure allowed appeals from a library's decision to segregate or remove a challenged book, ArLA or its members would avail themselves of that recourse.

      f.    ArLA also suffers irreparable injury in its own right and to its organizational interests because, to counteract the harm that ArLA's members will suffer, it has been forced to divert organizational resources—including staff time and money—to respond to Act 372 through public education campaigns, and development of training materials to help its members understand what compliance with Act 372 would require. The Availability Provision and Challenge Procedure thus impede ArLA's overall mission by forcing ArLA to divert resources from projects and activities in which it would have otherwise engaged.

  21.    Advocates for All Arkansas Libraries ("AAAL") is a nonprofit corporation formed under Arkansas law as a membership organization whose mission is to advocate for the preservation and improvement of libraries and library services across the state, and to educate the public, state leaders, and legislators of the value and importance of libraries in Arkansas. Its dues-paying members are libraries, library staff, and library patrons, including both adult and minor patrons. AAAL sues on behalf of itself and its 118 members. AAAL suffers irreparable injury to the interests of its members, as well as independently to its own organizational interests, for the following reasons:

      a.    AAAL suffers irreparable injury to the interests of its members because, many of the libraries that are members of AAAL or at which AAAL members work, carry materials that, though constitutionally protected, could be deemed harmful to minors and therefore subject to the Availability Provision, or inappropriate and therefore subject to the Challenge Procedure.

b.      AAAL's library-members also serve patrons of all ages, from small children to older adults. Few have the financial or staff resources to review their entire collections, such that they can identify and segregate material that might be covered by the Availability Provision. Accordingly, many of AAAL's individual members will be at risk of criminal prosecution once the Availability Provision goes into effect.

c.      Moreover, many of these smaller libraries have only a single copy of some of the books that are likely to be challenged, meaning that, during the pendency of the challenge process, the libraries will be forced to purchase an additional copy or the book will be unavailable to the patrons. AAAL's member-libraries are also frequently visited by families that include children too young to be left unattended while the parents peruse, either as a matter of library policy or parental judgment. In such a case, the chaperoning parent would be unable to access books segregated in an area of the library where their children are prohibited from entering.

d.      On information and belief, families will be less inclined to visit AAAL member-libraries if Act 372 prevents them from perusing books together. Indeed, on information and belief, adult visitors to AAAL member-libraries will generally be less inclined to peruse books available only in an adults-only sections, as those books will be stigmatized and less attractive to many readers.

e.      AAAL is also injured by the Challenge Procedure's viewpoint discrimination between those who support and oppose the availability of different books. The Challenge Procedure does not require a library review committee to hear the reasons of a person wanting to keep a challenged material in circulation. It does not permit such a person to appeal a library's decision to segregate the material to a local government body.

12

If the Challenge Procedure permitted participation by those who favor keeping a challenged book in circulation, AAAL's members would participate to share that view. Similarly, if the Challenge Procedure allowed appeals from a library's decision to segregate or remove a challenged book, AAAL or its members would avail themselves of that recourse.

f.     AAAL also suffers irreparable injury in its own right and to its organizational interests because, prior to enactment of the Availability Provision, AAAL focused its organizational resources on developing educational programming on library services for library para-professionals and providing consultation services to library directors regarding best practices for library management. Since the Availability Provision was signed into law, however, AAAL has been consumed by the need to respond to the legitimate concerns of its members about Act 372's requirements, including both the high financial costs that AAAL's member-libraries face to comply with the law, as well as the potential that AAAL members will face criminal liability. AAAL has thus diverted organizational resources, including staff time and money, to develop training and educational resources for its members about the steps library staff must take to comply with Act 372. For instance, AAAL has hired an attorney to help develop model policies that member libraries can use in implementing the processes required by the Challenge Procedure. These expenses, which AAAL would not have otherwise incurred or would have spent on other organizational priorities, cannot be recouped.

22.     Pearl's Books, LLC is an independent bookstore that sells new books and gifts just off the downtown square in Fayetteville, Arkansas. Pearl's Books also hosts reading and writing events for readers of all ages.

13

23.    Wordsworth Community Bookstore LLC, d/b/a WordsWorth Books, is an independent bookstore that sells new books and gifts in the historic Heights neighborhood in Little Rock, Arkansas. WordsWorth Books sells books for people of all ages, and regularly hosts author events and children's story time events.

24.    The American Booksellers Association ("ABA") was founded in 1900 and is a national not-for-profit trade organization that works to help independently owned bookstores grow and succeed. ABA represents over 2,100 member companies operating in over 2,500 locations. ABA's core members are key participants in their communities' local economy and culture. To assist them, ABA provides education, information dissemination, business products, and services; creates relevant programs; and engages in public policy, industry, and local-first advocacy. The ABA has 17 members located in Arkansas who are subject to Act 372.

25.    The Association of American Publishers ("AAP"), a not-for-profit organization, represents the leading book, journal, and education publishers in the United States on matters of law and policy, advocating for outcomes that incentivize the publication of creative expression, professional content, and learning solutions. AAP's members range from major commercial book and journal publishers to small, non-profit, university, and scholarly presses, as well as leading publishers of educational materials and digital learning platforms. AAP's members publish a substantial portion of the general, educational, and religious books produced in the United States, including critically acclaimed, award-winning literature for adults, young adults, and children. AAP represents an industry whose very existence depends on the free exercise of rights guaranteed by the First Amendment.

26.    The Authors Guild, Inc. ("Guild") was founded in 1912 and is a national non-profit association of more than 10,000 professional, published writers of all genres, 32 of whom are

located in Arkansas. The Guild counts historians, biographers, academicians, journalists, and other writers of non-fiction and fiction as members. The Guild works to promote the rights and professional interest of authors in various areas, including copyright, freedom of expression, and taxation. Many Guild members earn their livelihoods through their writing. Their work covers important issues in history, biography, science, politics, medicine, business, and other areas; they are frequent contributors to the most influential and well-respected publications in every field. The ability to write on topics of their choosing and to have their work available through bookstores and libraries is vital to their ability to make a living in their chosen profession.

27.    The Comic Book Legal Defense Fund ("CBLDF") is a nonprofit organization dedicated to protecting the legal rights of the comic arts community. With a membership that includes creators, publishers, retailers, educators, librarians, and fans, the CBLDF has defended dozens of First Amendment cases in courts across the United States and let important educational initiatives promoting comics literacy and free expression.

28.    Freedom to Read Foundation ("FTRF") is a nonprofit membership organization established in 1969 by the American Library Association to promote and defend First Amendment rights, to foster libraries as institutions fulfilling the promise of the First Amendment for every citizen, to support the rights of libraries to include in their collections and make available to the public any work they may legally acquire, and to set legal precedent for the freedom to read on behalf of all citizens. FTRF's membership includes organizations, libraries, librarians, and library patrons. FTRF members in Arkansas will suffer irreparable injury because many of the libraries that are members of FTRF or at which FTRF members work, carry materials that, though constitutionally protected, could be deemed harmful to minors and therefore subject to the Availability Provision. These same materials might be challenged as inappropriate pursuant to

15

the Challenge Procedure at significant cost to the libraries. FTRF's members who are library patrons in Arkansas will suffer irreparable injury if the Availability and Challenge Provisions go into effect because they will be deprived of access to books that they would like to peruse, read, or check out, and which would otherwise be available.

29.     Crawford County, Arkansas is a county organized under the laws of the State of Arkansas. It oversees the Crawford County Library ("CCL"). On information and belief, it is the policy of Crawford County to implement Act 372 to the fullest extent possible.

30.     Chris Keith is the County Judge for Crawford County, Arkansas. He is being sued in his official capacity only, as the chief executive of the local government body responsible for overseeing the CCL under the laws of the State of Arkansas. Judge Keith serves as the chief executive of Crawford County, and in that capacity, appointed a majority of the Crawford County Library Board of Directors. He is responsible for the implementation of Act 372, including the Challenge Procedure, in Crawford County. Actions that Judge Keith has taken or will take to implement Act 372 in Crawford County are made under color of law and are attributable to Crawford County.

31.     Todd Murray is the Prosecuting Attorney for the First Judicial District. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, like Act 372.

32.     Sonia Fonticiella is the Prosecuting Attorney for the Second Judicial District. She is sued in her official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which she acts under color of law to enforce Arkansas's criminal laws, like Act 372.

33.     Devon Holder is the Prosecuting Attorney for the Third Judicial District. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, like Act 372.

34.     Matt Durrett is the Prosecuting Attorney for the Fourth Judicial District. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, like Act 372.

35.     Jeff Phillips is the Prosecuting Attorney for the Fifth Judicial District. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, like Act 372.

36.     Will Jones is the Prosecuting Attorney for the Sixth Judicial District. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, like Act 372.

37.     Teresa Howell is the Prosecuting Attorney for the Seventh Judicial District. She is sued in her official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which she acts under color of law to enforce Arkansas's criminal laws, like Act 372.

38.     Ben Hale is the Prosecuting Attorney for the Eighth Judicial District - North. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, like Act 372.

39.     Connie Mitchell is the Prosecuting Attorney for the Eighth Judicial District – South. She is sued in her official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which she acts under color of law to enforce Arkansas's criminal laws, like Act 372.

40.     Dan Turner is the Prosecuting Attorney for the Ninth Judicial District – East. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, like Act 372.

41.     Jana Bradford is the Prosecuting Attorney for the Ninth Judicial District – West. She is sued in her official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which she acts under color of law to enforce Arkansas's criminal laws, like Act 372.

42.     Frank Spain is the Prosecuting Attorney for the Tenth Judicial District. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, like Act 372.

43.     Tim Blair is the Prosecuting Attorney for the Eleventh Judicial District – East. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, like Act 372.

44.     Kyle Hunter is the Prosecuting Attorney for the Eleventh Judicial District – West. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, like Act 372.

45.     Daniel Shue is the Prosecuting Attorney for the Twelfth Judicial District. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, like Act 372.

46.     Jeff Rogers is the Prosecuting Attorney for the Thirteenth Judicial District. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, like Act 372.

47.     David Ethredge is the Prosecuting Attorney for the Fourteenth Judicial District. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, like Act 372.

48.     Tom Tatum, II is the Prosecuting Attorney for the Fifteenth Judicial District. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, like Act 372.

49.     Drew Smith is the Prosecuting Attorney for the Sixteenth Judicial District. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, like Act 372.

50.     Rebecca Reed Mccoy is the Prosecuting Attorney for the Seventeenth Judicial District. She is sued in her official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which she acts under color of law to enforce Arkansas's criminal laws, like Act 372.

51.     Michelle C. Lawrence is the Prosecuting Attorney for the Eighteenth Judicial District – East. She is sued in her official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, like Act 372.

52.     Debra Buschman is the Prosecuting Attorney for the Eighteenth Judicial District – West. She is sued in her official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which she acts under color of law to enforce Arkansas's criminal laws, like Act 372.

53.     Tony Rogers is the Prosecuting Attorney for the Nineteenth Judicial District – East. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position in which he acts under color of law to enforce Arkansas's criminal laws, like Act 372.

54.     Nathan Smith is the Prosecuting Attorney for the Nineteenth Judicial District –
East. He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas,
a position in which he acts under color of law to enforce Arkansas's criminal laws, like Act 372.

55.     Carol Crews is the Prosecuting Attorney for the Twentieth Judicial District. She is
sued in her official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position
in which she acts under color of law to enforce Arkansas's criminal laws, like Act 372.

56.     Kevin Holmes is the Prosecuting Attorney for the Twenty-first Judicial District. He
is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a position
in which he acts under color of law to enforce Arkansas's criminal laws, like Act 372.

57.     Chris Walton is the Prosecuting Attorney for the Twenty-second Judicial District.
He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a
position in which he acts under color of law to enforce Arkansas's criminal laws, like Act 372.

58.     Chuck Graham is the Prosecuting Attorney for the Twenty-second Judicial District.
He is sued in his official capacity only, as a Prosecuting Attorney for the State of Arkansas, a
position in which he acts under color of law to enforce Arkansas's criminal laws, like Act 372.

59.     On information and belief, Defendants will each exercise their discretion and legal
authority to implement and enforce Act 372 when it goes into effect on August 1, 2023.

## FACTUAL ALLEGATIONS

### The Availability Provision

60.      As discussed in the Introduction above, Section 1 of Act 372 (to be codified at Ark.
Code Ann. § 5-27-212(b)(1)) establishes a Class A misdemeanor criminal offense for making
available to a minor an item "harmful to minors." Under the Availability Provision,

> [a] person commits furnishing a harmful item to a minor if, knowing the character
> of the item involved, the person knowingly. . . [f]urnishes, presents, provides,

makes available, gives, lends, shows, advertises, or distributes to a minor an item
that is harmful to minors.

61.     The term "item" encompasses every form of expressive material that one could

expect to find in a public library or bookstore, including books, magazines, and motion pictures.

*See* Ark. Code Ann. § 5-27-212(a)(4)(B) (eff. August 1, 2023).

62.     Act 372's definition of "harmful to minors" is incorporated from Arkansas' variable

obscenity statute, which defines the term to mean:

> that quality of any description, exhibition, presentation, or representation, in
> whatever form, of nudity, sexual conduct, sexual excitement, or sadomasochistic
> abuse, when the material or performance, taken as a whole, has the following
> characteristics:
>
> (A) The average person eighteen (18) years of age or older applying contemporary
> community standards would find that the material or performance has a
> predominant tendency to appeal to a prurient interest in sex to minors;
>
> (B) The average person eighteen (18) years of age or older applying contemporary
> community standards would find that the material or performance depicts or
> describes nudity, sexual conduct, sexual excitement, or sadomasochistic abuse in a
> manner that it patently offensive to prevailing standards in the adult community
> with respect to what it suitable for minors; and
>
> (C) The material or performance lacks serious literary, scientific, medical, artistic,
> or political value for minors.

Ark. Code Ann. § 5-68-501(2).

63.     An earlier 2003 statute, Ark. Code Ann. § 5-68-502, made it a Class B misdemeanor

to: "[d]isplay material that is harmful to minors in such a way that the material is exposed to the

view of a minor as part of the invited general public," Ark. Code Ann. § 5-68-502(1)(A) (the

"Display Provision").

64.     In a 2004 case brought by some of the Plaintiffs to this action, the United States

District Court for the Eastern District of Arkansas (Eisele, J.) found that the Display Provision

was "facially unconstitutional under the First and Fourteenth Amendments to the United States

Constitution because such provisions are overbroad and impose unconstitutional prior restraints on the availability and display of constitutionally protected, non-obscene materials to both adults and older minors." *Shipley, Inc.*, 454 F. Supp. 2d at 831. The Court entered a declaratory judgment that the Display Provision was void and of no effect. *Id*.

65.     Nevertheless, Arkansas has enacted a content-based restriction very similar to the one found void in *Shipley*. The Availability Provision seeks to criminalize "mak[ing] available," "providing[ing]" or "show[ing]", in a retail establishment or library, material harmful to minors of any age, *i.e.* from newborns to 17-year-olds – the same category of material the State cannot, consistent with the First Amendment, criminalize "display[ing]."

66.     There is no available narrowing construction that may be employed to reduce the scope of the Availability Provision's sweeping regulation of expressive material. The Arkansas Supreme Court has definitively interpreted the definition of "minor" in the context of "harmful to minor" laws to refer to all minors, not just younger minors. *See Shipley, Inc. v. Long*, 359 Ark. 208, 216, 195 S.W.3d 911, 915 (2004) (addressing a certified question from the federal court and finding that "[b]ecause the statute defines a minor as 'any person under the age of eighteen,' the statute is obviously intended to protect *all* minors from exposure to material deemed 'harmful to minors.'").

67.     The Availability Provision of Act 372 regulates the display and dissemination of constitutionally protected non-obscene materials. It is not narrowly drawn to further a legitimate government purpose and violates the First and Fourteenth Amendments in that it:

      a.     imposes an unconstitutional prior restraint on the availability, display, distribution, receipt, and perusal of constitutionally protected, non-obscene material to both adults and older minors;

    b.    is unconstitutionally overbroad; and

    c.    is unconstitutionally vague.

## The Challenge Procedure

68.    Section 5 of Act 372 (Ark Code 6-25-106) provides that Arkansas public libraries must establish a policy governing the selection, relocation, and retention of physical materials that are available to the public. This policy must provide a method whereby a library employee or a "person affected by the material to be challenged" can challenge the "appropriateness" of material in the library.

69.    The Challenge Procedure begins with an informal meeting between the challenger and the library staff. If the challenger is unsatisfied by the outcome of the meeting, he or she may submit a formal written challenge seeking an internal review by a committee of library employees.

70.     The Challenge Procedure does not define "appropriateness" or set forth criteria beyond "appropriateness" for libraries to use in deciding whether to relocate challenged materials from the main collection to an area inaccessible to minors.

71.    This administrative process includes an opportunity for the challenger to present his or her case in person.  There is no provision permitting those who believe the material should remain available in the main collection to present a countervailing case. The committee then votes to determine whether the material should be relocated to an adults-only section of the library. The challenger receives a written summary of the reasons for the committee's decision in a "reasonable" but unspecified amount of time.

72.    The Challenge Procedure fails to define "not accessible to minors" or set forth any criteria to be used in evaluating whether that standard has been met.

73.     If the committee decides to relocate the material, the Challenge Procedure provides no appeal or other recourse to anyone who believes the material should remain available in the main collection. If the committee decides not to relocate the material, the challenger may elect to appeal to the city board or quorum court of the city or county primarily supporting the public library.

74.     That local governing body is directed to consider five pieces of information before rendering its decision: (1) the material being challenged; (2) the challenger's request that the material be relocated; (3) the committee's decision; (4) a written summary of the reasons for the committee's decision; (5) a recommendation from the executive head of the county or city if the executive chooses to include one.

75.     The Challenge Procedure has no requirement that the local governing body publicly explain or document its reasons for approving or reversing the decision of the library committee. There is no limit on the number of materials appeals that a quorum court or city council must hear. Act 372 requires a decision of the city board or quorum court within 30 days and describes that decision as "final."

76.     Under the Challenge Procedure as set forth in the statute, libraries may choose to leave materials available pending a challenge or remove the materials while the process plays out. Unless libraries purchase additional copies of the materials for use by the review committees and local governing bodies, the library will be forced provide its copies to reviewers and the materials will be unavailable to library patrons for an indefinite period of time as a result of the Challenge Procedure.

77.     The Challenge Procedure of Act 372 violates the First and Fourteenth Amendment in that it:

a.      imposes an unconstitutional prior restraint on the availability, display, distribution, receipt, and perusal of constitutionally protected, non-obscene material to both adults and older minors;

b.      is a de facto licensing scheme that relieves local governing bodies of their responsibility to seek judicial review before imposing a final restraint on expression, denies aggrieved library patrons an adequate opportunity to obtain prompt judicial review of local governing bodies' orders to relocate library materials to an area that is not accessible to minors under the age of eighteen years, and vests undue discretion in local governing bodies to make these decisions without objective criteria or a record of their reasoning; and

c.      is unconstitutionally vague.

### Crawford County

78.     Over the past year, a dispute about materials in the Crawford County Library ("CCL") led to the departure of the library's executive director. In a November 10, 2022, letter, Crawford County residents Jeffrey and Tammi Hamby alleged that the then-CCL Director Deidre Grzymala and her employees were "normalizing and equating homosexual and transexual lifestyles with heterosexual lifestyles with heterosexual family units" and sought greater participation in material selection.

79.     In December 2022, Defendant Chris Keith appointed Tammi Hamby and two others to CCL Board of Directors, forming a majority bloc on the five-member board. On January 10,

CCL staff announced that all branches of the CCL had "moved their LGBTQ children's books out of the children's section into a new area within their respective adult sections."[3]

80.     When some Crawford County residents demanded that CCL stop segregating books containing LGBTQ themes, Crawford County, through its attorney, declined to do so. Instead, Crawford County insisted that it was within its rights to "protect[] children from exposure to materials that might harm their innocence" by segregating materials that, in Crawford County's judgment, "might" be harmful to some minors.[4]

81.     The letter from Crawford County has also signaled that more changes are coming to CCL. It previewed, through its lawyer, that "Act 372 will make it necessary to continue modifying and changing the library system's policies and procedures." The County Attorney wrote to the CCL that among its "obligations to come into compliance with the new laws by August 1, 2023" is "creat[ing] a section that is not accessible to those under eighteen."[5]

82.     On information and belief, Crawford County intends to adopt a policy that materials containing LGBTQ themes or discussing other "social issues" might harm the innocence of children and that, on that basis, any such materials *must* be segregated based on the viewpoint contained therein once Act 372 goes into effect on August 1.

---

[3] Tomas Saccente, *Crawford County Library Board Looks to Create New A Public Comment Policy After Increased Engagement At Meetings*, N.W. Ark. Democrat Gazette (May 14, 2023), https://tinyurl.com/29mvtzbp.

[4] The response letter is attached to this Complaint at Exhibit 2.

[5] The letter to the CCL is attached to this Complaint as Exhibit 3.

## CLAIMS FOR RELIEF

## COUNT I – ALL PLAINTIFFS
## RESTRICTIONS ON ADULT ACCESS
## TO CONSTITUTIONALLY PROTECTED MATERIALS

83.     Under the First and Fourteenth Amendments to the U.S. Constitution, adults have the right to view, browse through and purchase material protected by the First Amendment to the U.S. Constitution, including material with sexual content that is not obscene. Booksellers have the constitutional right freely to display and disseminate such materials to adults. Adult bookstore customers and library patrons have the right to view such materials.

84.     It is not possible, under the Availability Provision, to restrict the display of materials covered by the Availability Provision to juveniles without also restricting such access by adults. The Availability Provision effectively requires booksellers, other retailers and librarians either to: (a) remove from their shelves and place in a segregated "adults only" section (or to remove from the establishment entirely) substantial amounts of constitutionally-protected matter because it may be "harmful" to younger or less mature readers, or (b) have an establishment carrying only material not "harmful" to any child, in both cases thereby restricting the voluntary viewing by, access to and sale of such material to adults.

85.     In addition, such adults-only sections carry opprobrium and discourage many persons from entering therein. The restrictions of the Availability Provision have a chilling effect upon the exercise of rights guaranteed by the First and Fourteenth Amendments of the Constitution in that they inhibit and discourage the browsing, possession, sale and distribution of materials, the possession, sale and distribution of which are and ought to be protected under the U.S. Constitution.

## COUNT II – ALL PLAINTIFFS
## RESTRICTIONS ON OLDER MINORS' ACCESS
## TO CONSTITUTIONALLY PROTECTED MATERIALS

86.     Under the First and Fourteenth Amendments to the U.S. Constitution, minors have the right to view and purchase any material that is not obscene as to them.

87.     The Availability Provision is unconstitutional because it prohibits retail establishments and libraries from displaying any material with sexual content that contains visual or written representations of material "harmful to minors" and from allowing all minors to view such material, despite the fact that such material may be "harmful" only to younger minors, based on their developmental maturity.

88.     The Availability Provision severely inhibits and effectively precludes access by older, more mature, minors to material constitutionally protected as to them. Thus, the Availability Provision violates plaintiffs' right of free expression under the First and Fourteenth Amendments to the U.S. Constitution.

## COUNT III – ALL PLAINTIFFS
## RESTRICTION ON SPEECH
## (PRIOR RESTRAINT)

89.     The Availability Provision requires the removal of constitutionally protected materials from readily viewed and accessible areas and proscribes having these materials accessible to minors. The Availability Provision forces people and organizations that trade in material covered by the provision and to which minors are lawfully entitled to exclude minors from their establishment, to place such material out of the reach of minors, or simply not to carry such constitutionally protected non-obscene materials.

90.     Many bookstore customers and library patrons will not enter an adults-only section or will have to specifically request an item that has been held behind a counter to make it inaccessible to minors.

91.     The restrictions imposed by the Availability Provision necessarily will result in the removal from circulation and accessibility of large quantities of materials constitutionally protected as to adults and as to older minors in violation of the First and Fourteenth Amendments to the U.S. Constitution. The restrictions imposed by the Availability Provision will entail substantial monitoring costs for libraries, booksellers and other retailers. Further, in light of the difficulty of determining what material is harmful to minors, Plaintiffs' First Amendment rights will be chilled because they will restrict access to any material that could potentially be implicated by the statute.

92.     The Availability Provision imposes unreasonable obligations on merchants selling printed materials, encourages such merchants to exclude from their establishments all persons under the age of 18, and restricts and chills the rights of the plaintiffs to make available and the rights of adults and persons under the age of 18 to view, browse through and purchase materials that are constitutionally protected as to minors or as to adults.

93.     The Availability Provision imposes unreasonable obligations on libraries and other establishments to review their many books to ensure that they are not knowingly "making available" material that may be deemed harmful to minors by allowing persons under the age of 18 to browse the bookshelves unmonitored.

## COUNT IV – ALL PLAINTIFFS
## DUE PROCESS
## (VAGUENESS)

94.     The Availability Provision contains language purporting to describe criminalized acts which is vague and indefinite and subject to different meanings such that it fails to provide adequate notice to booksellers and librarians of violations of the Availability Provision, including the meaning of "presents," "provides," and "makes available" in Ark. Code Ann. § 5-27-212(b)(1).

95.     The Availability Provision is unconstitutionally vague because it fails to provide clear notice as to what acts are criminalized, in violation of the First Amendment and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

## COUNT V – LIBRARY PLAINTIFFS
## RESTRICTION ON SPEECH
## (PRIOR RESTRAINT)

96.     The Challenge Procedure permits libraries to remove materials from circulation for long periods of time while materials challenges are pending.

97.     Because any person "affected by" a library item can mount a challenge to its availability to minors under the Challenge Procedure, Act 372 effectively empowers any person "affected by" library materials to cause those materials to be unavailable to library patrons for a time while the challenges are processed.

98.     The Challenge Procedure creates an unconstitutional prior restraint on First Amendment-protected activity.

**COUNT VI – LIBRARY PLAINTIFFS**
**DUE PROCESS**
**(VAGUENESS)**

99.    The Challenge Procedure contains language purporting to describe mandated acts, which are vague and indefinite and subject to different meanings such that it fails to provide adequate notice to librarians and library patrons of violation of the Challenge Procedure, including the meaning of "appropriateness" and "not accessible to a minor" in section Ark. Code Ann. § 13-2-106 (eff. August 1, 2023).

100.    By delegating unfettered discretion to quorum courts and city councils to decide whether materials are "appropriate" without any definite procedural safeguards or standards, the Challenge Procedure violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

101.    The Challenge Procedure is unconstitutionally vague because it fails to provide fair notice as to what acts are mandated, in violation of the First Amendment and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

**COUNT VII – LIBRARY PLAINTIFFS**
**DUE PROCESS**
**(LACK OF JUDICIAL REVIEW)**

102.    Under Act 372, local government bodies will have 30 days to decide an appeal if the committee of librarians votes not to relocate a library item to an area inaccessible to minors. The city council or quorum court must approve or reverse the decision of the committee of librarians to keep material in the main collection. According to the Act, that decision of the local government body is "final."

103.    By relieving local governments of their constitutional obligation to obtain judicial review prior to imposing a final restraint on expression, and by precluding a judicial determination

31

of whether an item may be removed from the library's main collection, the Challenge Procedure violates the First Amendment and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

## IRREPARABLE HARM

104.   There is no adequate remedy at law for the violation of Plaintiffs' constitutional rights, and unless the requested injunctive and declaratory relief is granted, plaintiffs and their members will suffer immediate and irreparable loss. The very existence of the Availability Provision and the Challenge Procedure has a chilling effect upon the exercise of Plaintiffs' constitutional rights, causing Plaintiffs irreparable personal and economic injury every day that they are in effect.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray judgment in their favor and against Defendants, and each of them, as follows:

1.     That this matter be set for hearing on the requested preliminary injunctive relief at the earliest practical date;

2.     That the Court enter a preliminary and permanent injunction enjoining the Defendants, and each of them, and the Defendants' agents, attorneys, servants, employees, and other representatives, from enforcing the Availability Provision and the Challenge Procedure in any manner whatsoever;

3.     That the Court enter a declaratory judgment that the Availability Provision and the Challenge Procedure are unconstitutional, void and of no effect;

4.     That Plaintiffs be awarded the costs of this action;

5.      That Plaintiffs recover of Defendants their reasonable attorneys' fees pursuant to

42 U.S.C. § 1988; and

6.      That Plaintiffs be granted such other and further relief the Court deems proper.

Respectfully submitted,

/s/ Brandon B. Cate
Vincent O. Chadick
Ark. Bar No. 94075
Brandon B. Cate
Ark. Bar No. 2001203
Glenn V. Larkin
Ark. Bar No. 2020149
Attorneys for Plaintiff Fayetteville Public Library
QUATTLEBAUM, GROOMS & TULL PLLC
4100 Corporate Center Drive, Suite 310
Springdale, Arkansas 72762
Telephone: (479) 444-5200
E-Mail: bcate@qgtlaw.com
E-Mail: vchadick@qgtlaw.com
E-Mail: glarkin@qgtlaw.com


/s/ Bettina Brownstein
Bettina Brownstein
Ark. Bar No. 85019
BETTINA E. BROWNSTEIN LAW FIRM
Attorney for Olivia Farrell, Jennie Kirby,
Hayden Kirby, and Leta Caplinger
904 West 2nd Street, Suite 2
Little Rock, AR 72201
Telephone: (501) 920-1764
E-Mail: bettinabrownstein@gmail.com
On Behalf of the Arkansas Civil Liberties Union Foundation, Inc.


Will Bardwell*
Ben Seel*
Attorneys for the Arkansas Library Association, Advocates for All Arkansas Libraries, and Adam Webb, in his individual capacity
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34554
Washington, DC 20043
Telephone: (202) 448-9090
E-Mail: wbardwell@democracyforward.org
E-Mail: bseel@democracyforward.org

/s/ John T. Adams
David M. Fuqua
Ark. Bar No. 80048
John T. Adams
Ark. Bar No. 2005013
Attorneys for Plaintiffs Central Arkansas Library System, Nate Coulter, and the Eureka Springs Carnegie Public Library
FUQUA CAMPBELL, P.A.
Riviera Tower
3700 Cantrell Road, Suite 205
Little Rock, AR 72202
Telephone: (501) 374-0200
E-Mail: dfuqua@fc-lawyers.com
E-Mail: jadams@fc-lawyers.com


Michael A. Bamberger*
Kristen Rodriguez*
Rebecca Hughes Parker*
Attorneys for Pearl's Books, LLC, Wordsworth Community Bookstore LLC, American Booksellers Association, Association of American Publishers, Inc., Authors Guild, Inc. Comic Book Legal Defense Fund, and Freedom to Read Foundation
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 768-6700
E-Mail: michael.bamberger@dentons.com
E-Mail: kristen.rodriguez@dentons.com
E-Mail: rebeccahughes.parker@dentons.com


*Petition for admission pro hac vice forthcoming

34