### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF ARKANSAS
### FAYETTEVILLE DIVISION

FAYETTEVILLE PUBLIC LIBRARY, a political subdivision
in the City of Fayetteville, State of Arkansas;
EUREKA SPRINGS CARNEGIE PUBLIC LIBRARY;
CENTRAL ARKANSAS LIBRARY SYSTEM;
NATE COULTER; OLIVIA FARRELL; JENNIE KIRBY,
as parent and next friend of HAYDEN KIRBY;
LETA CAPLINGER; ADAM WEBB;
ARKANSAS LIBRARY ASSOCIATION;
ADVOCATES FOR ALL ARKANSAS LIBRARIES;
PEARL'S BOOKS, LLC;
WORDSWORTH COMMUNITY BOOKSTORE LLC
d/b/a WORDSWORTH BOOKS;
AMERICAN BOOKSELLERS ASSOCIATION;
ASSOCIATION OF AMERICAN PUBLISHERS, INC.;
AUTHORS GUILD, INC.;
COMIC BOOK LEGAL DEFENSE FUND; and
FREEDOM TO READ FOUNDATION                                    **Plaintiffs**

### Case No. 5:23-cv-05086-TLB

CRAWFORD COUNTY, ARKANSAS;
CHRIS KEITH, in his official capacity
as Crawford County Judge;
TODD MURRAY; SONIA FOTICIELLA;
DEVON HOLDER; MATT DURRETT;
JEFF PHILLIPS; WILL JONES;
TERESA HOWELL; BEN HALE;
CONNIE MICHELL; DAN TURNER;
JANA BRADFORD; FRANK SPAIN;
TIME BLAIR; KYLE HUNTER;
DANIEL SHUE; JEFF ROGERS;
DAVID ETHREDGE; TOM TATUM, II;
DREW SMITH; REBECCA REED MCCOY;
MICHELLE C. LAWRENCE; DEBRA BUSCHMAN;
TONY ROGERS; NATHAN SMITH;
CAROL CREWS; KEVIN HOLMES;
CHRIS WALTON; and CHUCK GRAHAM,
each in his or her official capacity as a
prosecuting attorney for the State of Arkansas            **Defendants**

## THE PROSECUTING ATTORNEYS' RESPONSE TO
## THE PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Arkansas Act 372 of 2023, as relevant here, does two things. First, it prohibits furnishing minors with obscenity. The Plaintiffs disagree with that goal and ask this Court to create a constitutional right to provide obscenity to minors. But the Supreme Court has long held that obscenity is not protected by the Constitution and that States may bar minors' access to it.

Second, Act 372 allows people to hold libraries accountable to the library's own rules for selecting materials for the public. Again, the Plaintiffs disagree and ask this Court to find a new constitutional limit on requiring public libraries from adhering to their own rules. But the curation of libraries' collections is government speech, which falls outside First Amendment analysis. Thus, the State may impose whatever rules it wishes on libraries' selection criteria, including creating an avenue for people to hold libraries accountable.

## Facts

During the 2023 Regular Session, the Arkansas General Assembly passed Act 372, and the Governor signed it into law. *See* 2023 Ark. Acts 372. As relevant here, the law does two things. First, it criminalizes furnishing obscenity to children ("Obscenity Section"). *Id.* § 1(b)(1). Second, it allows people to hold public libraries accountable to their own rules for selecting material to provide to library patrons ("Accountability Section"). *Id.* § 5. The Act goes into effect on August 1, 2023. *See* Op. Ark. Att'y Gen. No. 2023-031.

The Plaintiffs are an assortment of Arkansas libraries and their employees (collectively, "Library Plaintiffs"), a few Arkansas library patrons ("Patron Plaintiffs"), some Arkansas bookstores, and out-of-state associations.

2

### 1.  The Obscenity Section

The Obscenity Section, which the Plaintiffs call the Availability Provision, makes it illegal for a person to "knowingly . . . furnish[], present[], provide[], make[] available, give[], lend[], show[], advertise[], or distribute[] to a minor an item that is harmful to minors" if the person "know[s] the character of the item involved." 2023 Ark. Acts 327, § 1(b)(1). The Obscenity Section provides a carveout for "the transmission or sending of items over the internet." *Id.* § 1(c)(1).

The word "item" is given a limited definition in Act 372, applying only to "a material or performance that depicts or describes nudity, sexual conduct, sexual excitement, or sadomasochistic abuse, as those terms as defined in § 5-68-501." *Id.* § 1(a)(4)(A). The Plaintiffs misread the law when they claim that the word "'item' encompasses every form of expressive material." Br. Supp. Mot. Prelim. Inj. 21 [hereinafter, "Pls.' Br."].

The phrase "harmful to minors" means obscene materials lacking any literary, artistic, or scientific value, or as the statute puts it:

> any description, exhibition, presentation, or representation, in whatever form, of nudity, sexual conduct, sexual excitement, or sadomasochistic abuse, when the material or performance, taken as a whole, has the following characteristics:
>
> (A) The average person eighteen (18) years of age or older applying contemporary community standards would find that the material or performance has a predominant tendency to appeal to a prurient interest in sex to minors;
>
> (B) The average person eighteen (18) years of age or older applying contemporary community standards would find that the material or performance depicts or describes nudity, sexual conduct, sexual excitement, or sadomasochistic abuse in a manner that is patently offensive to prevailing standards in the adult community with respect to what is suitable for minors; and
>
> (C) The material or performance lacks serious literary, scientific, medical, artistic, or political value for minors.

Ark. Code Ann. § 5-68-501(2); *see also* 2023 Ark. Acts 327, § 1(a)(1). Indeed, this "variable ob-scenity" statute is almost identical to the one that was held constitutional by the United States Supreme Court in *Ginsberg v. New York*, 390 U.S. 629 (1968).

The Plaintiffs do not identify any obscene item they have that they want to give to children. *See generally* Compl. 1–33; Pls.' Br. 1–37. Nevertheless, they argue that it is their constitutional right to do so. Pls.' Br. 18.

## 2.  The Accountability Section

Similarly, the scope of the Accountability Section, which the Plaintiffs call the Challenge Procedure, is more limited than the Plaintiffs argue. The Accountability Section has several com-ponents, but it boils down to three steps. First, libraries must adopt "a written policy" for "the selection, relocation, and retention of physical materials" in the library. 2023 Ark. Acts 327, § 5(a). Second, libraries must have a policy that allows "affected" people to "challenge the appropriate-ness of material available in the . . . library." *Id.* § 5(c)(1). Third, the library must determine if the challenged material is appropriate under the library's "criteria of selection." *Id.* § 5(c)(7)(A). If the library recognizes that it did not follow its own selection criteria, the book should be relocated to an area inaccessible to children. *Id.* § 5(c)(11)(A). In no case, however, can the relocation be based on viewpoint. *Id.* § 5(c)(7)(B)(i).

In other words, the Accountability Section allows people affected by a library's failure to follow its own selection criteria to bring that failure to the library's attention. And if the library fails to follow its own rules, the challenger may appeal to the appropriate governing body to make it do so. *Id.* § 5(c)(12).

The Plaintiffs did not sue any libraries, which are the entities that will adopt the selection criteria and challenge policies. And no Defendant is charged with establishing or implementing

any policies under the Accountability Section. Instead, the Library Plaintiffs will be the entities establishing and implementing the policies.

## Analysis

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Benisek v. Lamone*, 138 S. Ct. 1942, 1943 (2018) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). The Plaintiffs bear the burden of proving they are entitled to such an extraordinary remedy. *MPAY Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1015 (8th Cir. 2020). That burden is made even more difficult to bear when, as here, the Plaintiffs seek to pre-liminarily enjoin "a duly enacted state statute." *Planned Parenthood Minn., N.D, S.D. v. Rounds*, 530 F.3d 724, 730 (8th Cir. 2008) (en banc). The Plaintiffs must make a "rigorous threshold show-ing" that they are "likely to prevail on the merits." *Id.*

Even if the Plaintiffs make that showing, "a preliminary injunction does not follow as a matter of course." *Benisek*, 138 S. Ct. at 1944. They must also establish three other factors: (1) a likelihood of irreparable harm without the injunction, (2) the balance of equities is in their favor, and (3) the public interest is on their side. *Dakotans for Health v. Noem*, 52 F.4th 381, 388 (8th Cir. 2022).

### 1. The Plaintiffs lack Article III standing.

Standing under Article III of the U.S. Constitution is a threshold jurisdictional issue that the Plaintiffs have the burden of establishing. *Ojogwu v. Rodenburg L. Firm*, 26 F.4th 457, 461 (8th Cir. 2022). Under Article III, the Plaintiffs must show: (1) "an injury in fact that is concrete, particularized, and actual or imminent," (2) "the injury was likely caused by the defendant"—i.e., traceable, and (3) "the injury would likely be redressed by judicial relief." *Id.* (quoting *TransUnion*

*LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2022)). Failure to allege any one of these requirements independently defeats the Court's jurisdiction.

### 1.1.   The Obscenity Section does not injure the Plaintiffs in fact because they have not alleged that they possess or intend to furnish any obscene items covered by the statute.

*The Plaintiffs fail to show an injury in fact.* Act 372 does not go into effect until August 1, 2023. *See* Op. Ark. Att'y Gen. No. 2023-031. So, in this case, the Plaintiffs seek to stop a future injury, not a present one. "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (cleaned up). This means that the Plaintiffs must "allege[] 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Id.* at 159 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

In *Virginia v. American Booksellers Ass'n, Inc.*, the Supreme Court considered standing in a preenforcement challenge by booksellers to a variable-obscenity statute. 484 U.S. 383, 392–93 (1988). The Court found there was an injury in fact because the booksellers identified "16 books they believed were covered by the statute." *Susan B. Anthony List*, 573 U.S. at 160 (construing *Am. Booksellers Ass'n*, 484 U.S. 383).

Here, the Plaintiffs have not identified a single item in their collections that they believe is obscene under the Obscenity Section and that they wish to furnish to minors. Instead, the Plaintiffs' declarations contend the exact opposite, saying that the libraries' items are "constitutionally protected." *See, e.g.*, Pls.' Mot., Ex. 9, at ¶ 7; *id.*, Ex. 16, at ¶ 4. In other words, the Plaintiffs don't believe that they have obscene items. *See, e.g.*, *United States v. Williams*, 553 U.S. 285, 287 (2008) (explaining that obscenity is not constitutionally protected).

Therefore, the Plaintiffs have not alleged an intention to give minors obscenity, so they have not alleged an injury in fact.

### 1.2.   The Plaintiffs' alleged injury from the Accountability Section is speculative at best, will not be caused by the Defendants, and cannot be redressed by the Court.

*The Plaintiffs fail to show an injury in fact.* The Plaintiffs' alleged injury regarding the Accountability Section is "wholly speculative," and thus not an injury in fact. *Animal Legal Def. Fund v. Vaught*, 8 F.4th 714, 719 (8th Cir. 2021) (quoting *Susan B. Anthony List*, 573 U.S. at 160). In *Mitchell v. Dakota County Social Services*, former Minnesota residents challenged Minnesota statutes as facially unconstitutional and claimed they had standing "because they might one day return to Minnesota." 959 F.3d 887, 896 (8th Cir. 2020). This single-step hypothetical was too speculative to establish an injury in fact, so the court lacked jurisdiction. *Id.*

Here, the Plaintiffs give the Court a five-step hypothetical that supposedly establishes an injury in fact. According to the Plaintiffs, *if* someone challenges library materials under a library's established guidelines, 2023 Ark. Acts 372, § 5(a); *and if* the review process ultimately relocates the library material, *id.* § 5(c)(12)(C)(ii); *and if* that decision violated the statute by relocating the library material based on viewpoint, *id.* § 5(c)(7)(B)(i); *and if* that library material happens to be something that a Plaintiff wants to view; *and if* the library material is not outside of First Amendment protection; *then* the Library Plaintiffs will have to relocate the material and the Patron Plaintiffs will have to walk to a different location in the library. That is the very definition of speculation, and it is insufficient to establish an injury in fact.

*The alleged injury is not traceable to any of the Defendants.* "Traceability requires proof of causation, showing that the injury resulted from the actions of the defendant and not from the independent action of some third party not before the court . . . ." *McGowen, Hurst, Clark & Smith,*

*P.C. v. Com. Bank*, 11 F.4th 702, 709 (8th Cir. 2021) (quoting *Miller v. Thurston*, 967 F.3d 727, 735 (8th Cir. 2020)). Here, the problem boils down to this: libraries—not the Defendants—implement the Accountability Section.

The Accountability Section first requires "county [and] municipal librar[ies]" to adopt "a written policy" for the "selection, relocation, and retention of physical materials." 2023 Ark. Acts 372, § 5(a). Next, it requires the libraries' policies to allow "affected" people to "challenge the appropriateness of material available in the . . . library." *Id.* § 5(c)(1). Finally, it requires libraries to determine if the challenged material is appropriate under "the criteria of selection." *Id.* § 5(c)(7)(A). Although a challenger can appeal the library's decision that the challenged material meets the library's criteria of selection to the governing body of the county or city, the library's criteria of selection are still what governs the outcome. *Id.* § 5(c)(12).

Thus, if there is ever any injury to a Plaintiff, it will result from the public library's selection criteria. It will not be because of the prosecutors, and it will not be because of Crawford County. The Plaintiffs' alleged injury is not traceable to the Defendants.

*The Court cannot redress the Plaintiffs' alleged injury.* "To determine whether an injury is redressable, a court will consider the relationship between 'the judicial relief requested' and the 'injury' suffered." *California v. Texas*, 141 S. Ct. 2104, 2115 (2021) (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)). Here, the Plaintiffs seek to enjoin the Defendants from implementing the Accountability Section. Compl. 32. As explained above, the Defendants do not implement the Accountability Section. And "[i]n the absence of any specific party" to enjoin, an injunction cannot "simply operate 'on the legal rules in the abstract.'" *California*, 141 S. Ct. at 2115 (quoting *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1486 (2018) (Thomas, J., concurring)). Thus, an injunction in this case cannot redress the alleged injury.

8

That leaves the Plaintiffs' request for declaratory relief. Compl. 32. But a "declaratory judgment . . . is the very kind of relief that cannot alone supply" Article III's requirement that the "remedy . . . will redress the individual plaintiffs' injuries." *California*, 141 S. Ct. at 2116.

There is no remedy the Court can order that will redress the Plaintiffs' alleged injuries.

**2. This case is unripe for judicial review because there is no guarantee that the Act will ever affect the Plaintiffs, and if it does, there is no way to know if the effect will be unconstitutional.**

"The doctrines of standing and ripeness 'originate' from the same Article III limitation." *Susan B. Anthony List*, 573 U.S. at 157 n.5 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006)). The difference is that "[r]ipeness is peculiarly a question of timing and is governed by the situation at the time of review, rather than the situation at the time of the events under review." *Iowa League of Cities v. EPA*, 711 F.3d 844, 867 (8th Cir. 2013) (citing *Neb. Pub. Power Dist. v. MidAm. Energy Co.*, 234 F.3d 1032, 1039 (8th Cir. 2000)). It is the Plaintiffs' burden to show their case is ripe for review by showing "both 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 608 (8th Cir. 2022) (quoting *Sch. of the Ozarks, Inc. v. Biden*, 41 F.4th 992, 998 (8th Cir. 2022)). A case is unfit for review if it "would . . . benefit from further factual development [or] poses a purely legal question . . . contingent on future possibilities." *Id.* (quoting *Sch. of the Ozarks*, 41 F.4th at 998).

In this case, the standing and ripeness issues "essentially 'boil down to the same question,'" so the analysis collapses together. *Religious Sisters*, 55 F.4th at 608 (quoting *Sch. of the Ozarks*, 41 F.4th at 998). For the Obscenity Section, the Plaintiffs have not alleged that they have obscene books nor that a prosecutor has threatened to enforce the law against them once it goes into effect. For the Accountability Section, their claim is hyper-speculative, so there is no guarantee that they

will ever be injured. Additional factual development over time would be beneficial for either chal-lenge the Plaintiffs raise because they may never be harmed in the first place. Ruling now would be addressing a legal question based on mere possibilities. The Plaintiffs' claim is unripe.

### 3.  The Plaintiffs' challenge to the Obscenity Section fails on the merits.

The Supreme Court has "long held that obscene speech—sexually explicit material that violates fundamental notions of decency—is not protected by the First Amendment." *United States v. Williams*, 553 U.S. 285, 287 (2008). That is no less true when States regulate the availability of obscene materials to children. *See Ginsberg v. New York*, 390 U.S. 629, 640 (1968) (explaining that States have "an independent interest in the well-being of [their] youth"). Instead, it is "well settled" that States "can adopt more stringent" laws when regulating obscene material available to minors than when regulating its availability to adults. *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 212 (1975). Thus, statutes regulating the furnishing of obscene materials to minors are subject to the lowest level of judicial scrutiny—rational-basis review. *Ginsberg*, 390 U.S. at 641.

Although *Ginsberg* clearly establishes rational-basis review as the appropriate level of scrutiny, the Plaintiffs urge the Court to apply strict scrutiny. The Plaintiffs are wrong. If the Court declines to apply *Ginsberg*, the highest level of scrutiny it can apply is intermediate scrutiny under the incidental-burden doctrine, which applies "when speech and nonspeech elements are combined in the same course of conduct and the government seeks to neutrally regulate the non-speech ele-ment." *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 756 (8th Cir. 2019). Here, the Obscenity Section regulates conduct—*furnishing* obscenity to minors—not speech.

### 3.1.   The Obscenity Section is not a prior restraint because it does not bar speech from occurring.

A law is only a prior restraint if it "bar[s]" future speech, instead of merely "penalizing past speech." *SOB, Inc. v. Cnty. of Benton*, 317 F.3d 856, 866 (8th Cir. 2003) (emphasis added) (quoting *Alexander v. United States*, 509 U.S. 544, 554 (1993)). The Obscenity Section doesn't bar any speech, much less future speech. Instead, speakers may say or publish anything they wish—even obscenity. *See* 2023 Ark. Act 372, § 1(b). It is only conduct *after* the speech that is proscribed—that is, furnishing obscenity to a minor. *Id.*; *see Upper Midwest*, 780 F.2d at 1397 (upholding an ordinance that "with[held] offensive expression from the young 'without restricting the expression at its source,'" which meant that the minimal effect on adults was constitutionally "[in]significant" (quoting *FCC v. Pacifica Found.*, 438 U.S. 726, 749 (1978))). The law does not "freeze[]" the Plaintiffs' speech beforehand, so it is not a prior restraint. *See CBS, Inc. v. Davis*, 510 U.S. 1315, 1317 (1994) (quoting *Neb. Press Ass'n v. Stuart*, 427 U.S. 439, 559 (1976)).

Tellingly, the Plaintiffs offer no reason why they believe the Obscenity Section is a prior restraint; they simply *ipse dixit* declare that it is one. Pls.' Br. 16. But even if the Obscenity Section could be construed as a prior restraint, prior restraints are not per se unconstitutional when related to minors. *See, e.g.*, *Henerey ex rel. Henerey v. City of St. Charles, Sch. Dist.*, 200 F.3d 1128, 1134 (8th Cir. 1999) (high school); *Bystrom ex rel. Bystrom v. Fridley High Sch., Ind. Sch. Dist. No. 14*, 822 F.2d 747, 750 (8th Cir. 1987) (same). Instead, the question is whether the alleged restraint on minors is otherwise "consistent with the First Amendment." *Bystrom*, 822 F.2d at 749. For the reasons explained below, the Obscenity Section is constitutional.

### 3.2.    The Obscenity Section isn't overbroad.

"Facial challenges are disfavored," requiring the Court to "speculat[e]" and "risk . . . premature[ly] interpret[ing]" the law. *Josephine Havlak Photographer, Inc. v. Vill. of Twin Oaks*, 864 F.3d 905, 912 (8th Cir. 2017) (quoting *Phelps-Roper v. City of Manchester*, 697 F.3d 678, 685 (8th Cir. 2012)). It is the Plaintiffs' burden to show they are entitled to a prescription for this "strong medicine." *Id.* (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008)).

To meet that burden when challenging a law directed at conduct with allegedly incidental effects on speech, the Plaintiffs must show that the Obscenity Section's overbreadth is "both 'real' and 'substantial' in relation to its 'plainly legitimate sweep.'" *Id.* (quoting *Minn. Majority v. Mansky*, 708 F.3d 1051, 1056 (8th Cir. 2013)). And if "third parties will [not] be affected in any manner differently from" the Plaintiffs, then a facial challenge is "inappropriate to entertain." *Id.*

The Plaintiffs do not speculate about the different effects of the Obscenity Section on anyone other than themselves. *Compare* Pls.' Br. 22 (speculating about the effect of only a single word—"advertising"—on "an Arkansas bookseller"); *with* Mot. Prelim. Inj., Ex. 10 (declaration of the co-owner of Plaintiff Pearl's Books, an Arkansas bookstore), *and* Mot. Prelim. Inj., Ex. 16 (declaration of the co-owner of Plaintiff WordsWorth Books, an Arkansas bookstore).

Thus, the Plaintiffs "present[] no allegedly unconstitutional scenarios affected by the [Obscenity Section] beyond [their] own commercial [bookselling], so [the Court] will limit [its] analysis to the [law's] application to [the Plaintiffs]." *Twin Oaks*, 864 F.3d at 912.

### 3.3.    The phrase "makes available" is not vague.

To analyze the Plaintiffs' vagueness challenge, the Court must only consider "the particular facts at issue" in this case because "a plaintiff whose speech is clearly proscribed cannot raise a

successful vagueness claim." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010). There is "no exception" to that rule "for . . . speech." *Id.* at 20. Instead, a law is not vague if "a person of ordinary intelligence" has "fair notice of what is prohibited" and so long as the law does not "authorize[] or encourage[] seriously discriminatory enforcement." *Id.* at 18. The law need not give "perfect clarity and precise guidance," even if it "restrict[s] expressive activity." *Id.* at 19.

The Plaintiffs challenge only one phrase as vague—"mak[es] available." Pls.' Br. 22–23. That phrase isn't vague.

First, laws with "knowledge requirement[s] . . . reduce[] any potential for vagueness." *Humanitarian Law Project*, 561 U.S. at 21; *see also Duhe v. City of Little Rock*, 902 F.3d 858, 864 (8th Cir. 2018). The Obscenity Section includes two such requirements: (1) knowledge that the relevant item is obscene as to minors and (2) knowingly "mak[ing] available" the obscene item "to a minor." 2023 Ark. Acts 372, § 1(b)(1). So the Plaintiffs' argument begins on its back foot.

Second, people of ordinary intelligence can understand the phrase "makes available." There's "no guess[ing]" required. *Duhe*, 902 F.3d at 864 (alteration in original) (quoting *Cameron v. Johnson*, 390 U.S. 611, 616 (1968)). It means to make "accessible" or "attainable." *Available*, Merriam-Webster Online.[1] In fact, the phrase "make available" is so understandable that the First Circuit, with no additional explanation, used it as a definition for "provide." *United States v. Gelin*, 712 F.3d 612, 619 (1st Cir. 2013).

Finally, the Plaintiffs' two hypotheticals don't change this analysis. They first posit a situation where a library segregates proscribed items into a room but does not guard the door. They next offer the situation of a third party checking out a proscribed book, and the third party then

---

[1] https://www.merriam-webster.com/dictionary/available (last visited June 26, 2023).

giving the book to the minor. But "[w]hatever force these arguments might have in the abstract, they are beside the point here. Plaintiffs do not propose" that these hypotheticals are real situations that would apply to them. *Humanitarian Law Project*, 561 U.S. at 22. Without the "asserted vagueness" being "directly implicated by the facts before the Court," the Plaintiffs' vagueness challenge fails. *Id.* at 23. Moreover, in neither hypothetical did the library *knowingly* make available an obscene item to a minor. Both hypotheticals assume that a third party would independently violate either the library's rules or the law. Without more to the hypothetical, the library cannot know—that is, be "practically certain"—that a third party would independently violate the library's rules or state law. Ark. Code Ann. § 5-2-202(2)(B); *id.* § 5-1-102(8)(A).

### 3.4.    The First Amendment allows States to treat all minors equally.

The Obscenity Section applies to minors, which are defined as anyone under 18 years of age. Ark. Code Ann. § 5-68-501(7). The Plaintiffs take issue with this and argue throughout their briefing that variable-obscenity statutes must consider "the context of the age and maturity of the specific minor." Pls.' Br. 17. They cite only one case for this supposed minor-by-minor requirement—*Shipley, Inc. v. Long*, 454 F. Supp. 2d 819 (W.D. Ark. 2004). As far as the Defendants can tell, *Shipley* is the only case to have ever held such a thing. And that's just not the law.

Less than 20 years before *Shipley*, the Eighth Circuit decided *Upper Midwest Booksellers Ass'n v. City of Minneapolis*, 780 F.2d 1389 (8th Cir. 1985). There, the plaintiffs argued that a city ordinance, almost identical to the law in *Shipley*, that regulated the display of variable obscenity was unconstitutional under the First Amendment because it "impermissibly limit[ed] the access of adults to materials that are constitutionally protected as to them." *Id.* at 1391. The court disagreed and upheld the ordinance. *Id.* at 1399.

Instead of treating *Upper Midwest* as binding precedent, the *Shipley* court decided it wasn't controlling. *Shipley*, 454 F. Supp. 2d at 831. It did so without analysis or direction from a higher court. *See* Bryan A. Garner et al., *The Law of Judicial Precedent* 29 (1st ed. 2016) ("Lower courts are bound even by old and crumbling high-court precedent—until the high court itself changes direction.").[2] And it did so by citing a case that did "not attempt to decide the constitutional issues." *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988). So this Court can't rely on *Shipley*.

Instead, the Court must follow the Supreme Court's *Ginsberg* decision and the Eighth Circuit's *Upper Midwest* decision, both upholding laws directed uniformly at all minors—younger and older. Thus, the State acts well within the First Amendment when it "accord[s] minors under 1[8] a more restricted right than that assured to adults," even with a one-size-fits-all-minors approach. *Ginsberg*, 390 U.S. at 637. In fact, the Plaintiffs give away their argument, admitting that the law "tracks the definition of obscenity as to minors approved of by *Ginsberg*." Pls.' Br. 28. The Supreme Court and Eighth Circuit have it right: The Obscenity Section is constitutional.

### 4. The Plaintiffs' challenge to the Accountability Section fails on the merits.

Next, the Plaintiffs allege that the Accountability Section is a prior restraint and void for vagueness, but they skip over first principles. The Court must first answer this question: Whose speech is at issue in the curation of library materials?

---

[2] *See also Xiong v. State*, 195 F.3d 424, 426 (8th Cir. 1999) ("Eighth Circuit holdings on issues bind all district courts in the circuit and district courts must follow those holdings until reversed by the Eighth Circuit en banc or the Supreme Court."), *abrogated on other grounds by Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28 (2002).

### 4.1.   Curation of library materials is government speech because libraries are purely creatures of the State.

The selection of library materials is government speech, which is not limited by the First Amendment's Free Speech Clause, so the "rules against viewpoint discrimination" do not apply. *Shurtleff v. City of Boston*, 142 S. Ct. 1583, 1589 (2022). In fact, the Supreme Court has already "appl[ied] the government speech doctrine to 'a public library's exercise of judgment in selecting the material it provides to its patrons." *Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 330 (1st Cir. 2009) (citing *United States v. Am. Library Ass'n*, 539 U.S. 194 (2003) (plurality opinion)).

Courts weigh three factors to determine whether speech is government speech: (1) "the history of the expression at issue," (2) "the public's likely perception as to who (the government or a private person) is speaking," and (3) "the extent to which the government has actively shaped or controlled the expression." *Shurtleff*, 142 S. Ct. at 1589–90.

*First, Arkansas public libraries are creatures of the State, so the State has historically had the right to modify public libraries' collections.* Cities and counties in Arkansas "are creatures of the legislature," so they "have no inherent powers" but "have only the power bestowed upon them by statute or the Arkansas Constitution." *White Cnty. v. Cities of Judsonia, Kensett, and Pangburn*, 251 S.W.3d 275, 279 (Ark. 2007). Thus, the State, "at its pleasure, may modify or withdraw all such powers." *Pritchett v. City of Hot Springs*, 514 S.W.3d 447, 449 (Ark. 2017) (quoting *Hunter v. City of Pittsburgh*, 207 U.S. 161, 178–79 (1907)).

Among counties' and municipalities' limited powers is the power to establish public libraries. *See* Ark. Code Ann. § 13-2-401 (county libraries); *id.* § 13-2-501 (city libraries); *id.* §§ 13-2-407, 13-2-903 (regional libraries). Thus, the Accountability Section is an unremarkable use of the State's right to modify that limited power. *See* 2023 Ark. Acts 372, § 5 (to be codified at Arkansas Code Annotated § 13-2-106, the "Libraries" chapter of the Arkansas Code). As the Supreme Court

has explained, States have "broad discretion to decide what material to provide to their [libraries'] patrons" and by no means are required "to provide universal coverage." *Am. Library Ass'n*, 539 U.S. at 204 (plurality opinion) (cleaned up). Instead, the States are free to decide what they believe to be "requisite and appropriate" to include. *Id.* (cleaned up). And when "selecting the material it provides to its [libraries'] patrons," States can make "content-based" decisions, *id.* at 205, and even viewpoint-based ones. *Shurtleff*, 142 S. Ct. at 1589.

The State's ability to curate public libraries' collection has been long established. Thus, this factor supports that the selection of library materials is government speech.

*Second, there is no risk that the State's curation of library materials will be perceived as private speech.* As explained above, even a general understanding of the structure of Arkansas's government (and Supreme Court caselaw) belies the perception that *public* libraries are engaged in *private* speech when they curate material for their collection. Even the Plaintiffs recognize that libraries are public institutions. *See, e.g.*, Pls.' Mot., Ex. 5, at ¶ 4 (explaining that CALS is "a public body"); *id.*, Ex. 9, at ¶ 9 (explaining that the Fayetteville Public Library is a "municipal public library" and "quasi-political subdivision in the City of Fayetteville, Arkansas"). Thus, there is no risk that a library's selection of materials will be perceived as private speech.

*Third, the State takes an active role in curating libraries' materials and even provides protection from viewpoint discrimination.* It is important to identify what the Accountability Section does, instead of what the Plaintiffs claim it does. It first directs libraries to adopt "a written policy to establish guidelines for the selection, relocation, and retention of physical materials that are available." 2023 Ark. Acts 372, § 5(a). That policy should allow "affected" people to "challenge the appropriateness of" publicly available material. *Id.* § 5(c)(1). Then, the library's review committee must determine whether the challenged material is "appropriate" under the library's

own "criteria of selection." *Id.* § 5(c)(7)(A). The selection criteria "[s]hall not be" based on "the viewpoints expressed within the material." *Id.* § 5(c)(7)(B).

Although it constitutionally could be, the Accountability Section is not an unbounded expedition into every conceivable meaning of the word "appropriate." It does not ban any books. It does not discriminate based on viewpoint. Instead, it provides Arkansas citizens the opportunity to hold public libraries accountable to their own rules for the selection of materials.

At the end of the day, public entities exercising authority delegated by the State will still be selecting what materials to have for patrons, just like before Act 372 goes into effect.

*Conclusion.* The curation of library materials is wholly under state control and outside First Amendment analysis. The Court can end its inquiry here and rule against the Plaintiffs.

### 4.2.    There is no right to compel government speech.

The Plaintiffs argue that the library must carry materials of their choice. They say that's because they have a right to receive information. But "[t]he First Amendment does not . . . require the government to speak." *Knights of Ku Klux Klan v. Curators of Univ. of Mo.*, 203 F.3d 1085, 1093–94 (8th Cir. 2000) (quoting *Muir v. Ala. Educ. Television Comm'n*, 688 F.2d 1033, 1044 (5th Cir. 1982) (en banc)). And as such, they cannot compel libraries to select materials merely because they want them included in a collection or provided in a certain way.

To the contrary, "[n]othing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech." *Minn. Voters Alliance v. Mansky*, 138 S. Ct. 1876, 1886 (2018). Thus, States have "broad discretion to decide what material to provide to their [libraries'] patrons" and are not required "to provide universal coverage." *Am. Library Ass'n*, 539 U.S. at 204 (plurality opinion) (cleaned up). As part of the States' broad discretion, they can curate libraries to include only what the State believes to be "requisite and appropriate." *Id.*

(cleaned up). After all, the State has a "compelling" interest in protecting children "from material inappropriate for minors." *Id.* at 215 (Kennedy, J., concurring); *see also id.* at 203 (plurality opinion); *id.* at 219 (Breyer, J., concurring). And, importantly, the States' traditional control over libraries aligns with Arkansas law, under which public libraries are creatures of the State and only have the power they have been given. In sum, the State can provide whatever material it wishes in public libraries. And where, as here, the State is not banning the material but providing it to adult patrons anyway, the State's actions are not barred by the Constitution.

Indeed, only one case—and a splinted plurality opinion at that—even suggests that the right to receive information can compel government speech. That case is *Board of Education, Island Trees Union Free School District No. 26 v. Pico*, 457 U.S. 853 (1982). But on its face that decision is "narrow" and limited to "the unique role of the *school* library." *Id.* at 863, 869 (emphasis added). Here, we do not have a school library. Instead, this case is about non-school public libraries. And based on the voting lineup, "it is not clear what, if anything, from *Pico* is binding." *C.K.-W. ex rel. T.K. v. Wentzville R-IV Sch. Dist.*, 619 F. Supp. 3d 906, 913 (E.D. Mo. 2022). The controlling opinion did not even address the constitutional question. *Pico*, 457 U.S. at 884 (White, J. concurring); *see also Marks v. United States*, 430 U.S. 188, 193 (1977) (explaining that the opinion resting "on the narrowest grounds" is the binding opinion).

*Pico*'s outcome is an outlier and not binding here (or perhaps at all). However, if the Court does look to *Pico*, under both the dissent's view and the plurality's view, the Accountability Section is constitutional. The plurality would have allowed books to be removed for any reason—other than viewpoint discrimination—such as vulgarity and "educational suitability." *Pico*, 457 U.S. at 870–72; *cf. Pratt v. Indep. Sch. Dist. No. 831*, 670 F.2d 771, 776 (8th Cir. 1982). But the Accountability Section clearly states that the "criteria of selection . . . [s]hall not be" based on "the

19

viewpoints expressed within the material." 2023 Ark. Acts 327, § 5(c)(7). Thus, the law does not allow viewpoint discrimination and is constitutional under *Pico*'s plurality. *Cf. Wentzville*, 619 F. Supp. 3d at 913–15 (upholding a school board's school-library policy that is similar to the Accountability Section). Moreover, if any items are challenged, relocated, and made inaccessible to minors, the items will still be available to adults. *See* 2023 Ark. Acts 372, § 5(c)(11)(A). The fact that the items here will still be available to adults is a "key distinction [from] *Pico*." *Turkish Coal. of Am., Inc. v. Bruininks*, 678 F.3d 617, 623 (8th Cir. 2012). Because the items will not be "substantially unavailable" to patrons, the Plaintiffs' claim cannot succeed. *Id.* at 624 (affirming dismissal of right-to-receive claim).

The *Pico* dissent's approach is even more straightforward: Any "'right to receive information and ideas' does not carry with it the concomitant right to have those ideas affirmatively provided at a particular place by the government." *Pico*, 457 U.S. at 888 (Burger, C.J., dissenting) (citations omitted). Thus, States may add and remove materials from public libraries at will.

### 4.3.   The Accountability Section is not a prior restraint because it does not bar speech from occurring.

First, this attack is based on the Plaintiffs' supposed right to receive information. But as explained above, that right (if it exists at all) is inapplicable here. Thus, this argument is dead in the water, and the Court can end this inquiry.

Second, as explained earlier, government action is only a prior restraint if it bars future speech, not if it penalizes past speech. *SOB, Inc.*, 317 F.3d at 866. Like the Obscenity Section, the Accountability Section neither bars future speech nor penalizes past speech. Instead, the Accountability Section provides no penalty at all. It merely relocates obscene speech that has already occurred and leaves that speech available to adults. 2023 Ark. Acts 327, § 5(c)(11)(A). In other

words, it does not "freeze[]" the Plaintiffs' supposed right to receive information, so it is not a prior restraint. *Davis*, 510 U.S. at 1317 (quoting *Stuart*, 427 U.S. at 559); *see also Upper Midwest*, 780 F.2d at 1397 (upholding an ordinance that "with[held] offensive expression from the young 'without restricting the expression at its source,'" which meant that the minimal effect on adults was constitutionally "[in]significant" (quoting *Pacifica Found.*, 438 U.S. at 749).

Again like the Obscenity Section, the Plaintiffs offer no analysis for why the Accountability Section is a prior restraint; they just say that it is one. Pls.' Br. 30. But caselaw is clear that prior restraints related to minors are not per se unconstitutional and need only be otherwise constitutional. *See supra* Section 3.1 (citing *Henerey*, 200 F.3d at 1134; *Bystrom*, 822 F.2d at 750).

Third, assuming the Plaintiffs have a right and that there is an unconstitutional prior restraint, the Plaintiffs' reliance on *Freedman v. Maryland*, 380 U.S. 51 (1965), is misplaced. *Freedman* dealt with a criminal prosecution for failing to comply with a licensing scheme. *Id.* at 56; *see also Thomas v. Chicago Park Dist.*, 534 U.S. 316, 321 (2002) (confirming that *Freedman* dealt with the "peculiar dangers" of "licensing" (cleaned up)). The Accountability Section does not have a criminal component nor does it involve licensing.

**5. The remaining preliminary-injunction factors—irreparable harm, the balance of the equities, and the public interest—weigh in the Defendants' favor.**

To show irreparable harm, the Plaintiffs "must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Powell v. Noble*, 798 F.3d 690, 702 (8th Cir. 2015) (quoting *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 78 (8th Cir. 2012)). Although a loss of First Amendment rights establishes irreparable harm, when a plaintiff "is unlikely to succeed in showing his First Amendment rights have been

violated"—like the Plaintiffs here—there is no "threat of irreparable harm that warrants preliminary injunctive relief." *Id.*

When balancing the equities and public interest, courts consider the alleged "harm against the 'serious[] and irreparabl[e] harm' that an injunction would inflict on the State [and the public] by 'barring the State from'" implementing a validly enacted law. *Eggers v. Evnen*, 48 F.4th 561, 567 (8th Cir. 2022) (quoting *Abbot v. Perez*, 138 S. Ct. 2305, 2324 (2018)); *see also Nken v. Holder*, 556 U.S. 418, 435 (2009) (explaining that balance-of-the-equities and public-interest "factors merge when the Government is the opposing party"). Although "[g]enerally" these factors follow the likelihood-of-success factor, this is not a usual situation. *Libertarian Party of Ark. v. Thurston*, 962 F.3d 390, 399 (8th Cir. 2020). The State has a "transcendent interest in protecting the welfare of children," particularly in protecting them from obscenity. *Upper Midwest Bookseller Ass'n v. City of Minneapolis*, 780 F.2d 1389, 1392 (8th Cir. 1985) (quoting *Ginsberg*, 390 U.S. at 640). And the Supreme Court has explained that it is in the "interest of the public" to keep minors from obscenity to preserve "the quality of life and the total community environment, the tone of commerce in the great city centers, and, possibly, the public safety itself." *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 57–58 (1973). Therefore, enjoining Act 372 will harm the State's ability to protect and the public's interest in protecting children from obscenity. Thus, neither the equities nor public interest is in the Plaintiffs' favor.

## Conclusion

The Court should deny the Plaintiffs' request to preliminarily enjoin a duly enacted state statute. The Plaintiffs do not have standing and their claims are not ripe. Moreover, they have failed to meet the rigorous threshold showing that they are likely to prevail on the merits. And

even if they could make such a showing, they will not suffer irreparable harm in the absence of an injunction, and the balance of the equities and public interest favors the Defendants.

Respectfully submitted,

TIM GRIFFIN
Attorney General

By:   John Payne
      Ark. Bar No. 97097
      Deputy Attorney General

      Christine A. Cryer
      Ark. Bar No. 2001082
      Senior Assistant Attorney General

      Noah P. Watson
      Ark. Bar No. 2020251
      Senior Assistant Attorney General

      Arkansas Attorney General's Office
      323 Center Street, Suite 200
      Little Rock, Arkansas 72201
      (501) 682-1019
      (501) 682-2591 fax
      john.payne@arkansasag.gov
      christine.cryer@arkansasag.gov
      noah.watson@arkansasag.gov

      *Attorneys for the Prosecuting Attorneys*