IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


FAYETTEVILLE PUBLIC LIBRARY, a political
subdivision in the City of Fayetteville, State of
Arkansas; EUREKA SPRINGS CARNEGIE PUBLIC
LIBRARY; CENTRAL ARKANSAS LIBRARY
SYSTEM; NATE COULTER; OLIVIA FARRELL;
JENNIE KIRBY, as parent and next friend of HAYDEN
KIRBY; LETA CAPLINGER; ADAM WEBB;
ARKANSAS LIBRARY ASSOCIATION;
ADVOCATES FOR ALL ARKANSAS LIBRARIES;
PEARL'S BOOKS, LLC; WORDSWORTH
COMMUNITY BOOKSTORE LLC d/b/a
WORDSWORTH BOOKS; AMERICAN
BOOKSELLERS ASSOCIATION; ASSOCIATION OF
AMERICAN PUBLISHERS, INC.; AUTHORS
GUILD, INC.; COMIC BOOK LEGAL DEFENSE
FUND; FREEDOM TO READ FOUNDATION                    PLAINTIFFS


V.                        NO. 5:23-CV-05086-TLB

CRAWFORD COUNTY, ARKANSAS; CHRIS
KEITH, in his official capacity as Crawford County
Judge; TODD MURRAY; SONIA FONTICIELLA;
DEVON HOLDER; MATT DURRETT; JEFF
PHILLIPS; WILL JONES; TERESA HOWELL; BEN
HALE, CONNIE MITCHELL, DAN TURNER, JANA
BRADFORD; FRANK SPAIN; TIM BLAIR; KYLE
HUNTER; DANIEL SHUE; JEFF ROGERS; DAVID
ETHREDGE; TOM TATUM, II; DREW SMITH;
REBECCA REED MCCOY; MICHELLE C.
LAWRENCE; DEBRA BUSCHMAN; TONY
ROGERS; NATHAN SMITH; CAROL CREWS;
KEVIN HOLMES; CHRIS WALTON; and CHUCK
GRAHAM, each in his or her official capacity as a
prosecuting attorney for the State of Arkansas;         DEFENDANTS

1

## PLAINTIFFS' BRIEF IN OPPOSITION TO CRAWFORD COUNTY'S MOTION TO DISMISS

### INTRODUCTION

Plaintiffs have alleged that Section 5 of Act 372 of 2023 ("Act 372") creates a sweeping, vague, and unaccountable new procedure (the "Challenge Procedure") that will drown Arkansas libraries in an endless and virtually standardless cycle of book challenges, compulsory reviews, and removal decisions that discriminate on the basis of viewpoint. The Challenge Procedure, which county governments and county officials—including Defendants Crawford County and Judge Chris Keith (the "County Defendants")—are charged with implementing, empowers book critics and censorious officials to achieve via administrative mischief the objectives that they would struggle to achieve through an outright book ban. And it denies supporters of particular books any voice in, or judicial review of, this unlawful process. The Challenge Procedure is thus a clear affront to the Plaintiffs' rights under the First Amendment and the Due Process Clause.

The County Defendants argue that the Court should dismiss the Plaintiffs' Complaint because the Plaintiffs lack standing to sue the County Defendants over the Challenge Procedure and because the conduct the Plaintiffs allege would not violate their First or Fourteenth Amendment rights. *See generally* Separate County Defs.' Br. ISO MTD ("County MTD Brief") (Doc. 36); Separate County Defs.' MTD ("County MTD") (Doc. 35). As explained more fully below, the County Defendants' motion should be denied because the Plaintiffs have alleged that the County Defendants are likely to undertake conduct that will cause classic injuries to core constitutional rights, which is all that is required at this early phase.

## BACKGROUND

### I.    Section 5 of Act 372 (the "Challenge Procedure")

Governor Sanders signed Act 372 into law on March 31, 2023, and it is scheduled to go into effect on August 1, 2023. Compl. at ¶ 8 (Doc. 2). The Plaintiffs allege that two portions of Act 372 are unlawful: Section 1 (the "Availability Provision") and Section 5 (the "Challenge Procedure"). *See id.* at ¶¶ 83-103. As to the County Defendants, only the Challenge Procedure is at issue.[1]

The Challenge Procedure requires public libraries to establish a process through which any "person affected by [] material" in the library's collection can challenge the "appropriateness" of that material's inclusion in the library's main collection. Act 372 § 5(c)(1). The term "appropriate" is not defined by the statute. *See generally id.* The Challenge Procedure neither limits the number of times that a particular item can be challenged, nor the number of challenges that any one person may bring. *See id.* The process begins with an informal meeting between the challenger and the library staff. *Id.* § 5(c)(3). If the challenger is unsatisfied by the outcome of the meeting, he or she may submit a formal written challenge seeking an internal review by a committee of library employees (the "Library Committee"), which is tasked with determining "if the material being challenged meets the criteria of selection." *Id.* §§ 5(c)(5)-(7). During the pendency of the challenge, however long that takes, the "library shall decide if material being challenged shall remain available throughout the challenge process." *Id.* § 5(c)(2).

---

[1] The County Defendants' motion does not distinguish between the Availability Provision and Challenge Procedure. For clarity, Plaintiffs are not asserting their Availability Provision claims against the County Defendants; Counts I through IV lie only against the Prosecuting Attorneys.

After reviewing the challenged item "in its entirety," and permitting the challenger "to present his or her request [for segregation or removal]," the Library Committee meets "to discuss the materials being challenged." *Id.* §§ 5(c)(7)-(10). The Library Committee then "vote[s] to determine whether the material being challenged shall be relocated within the library's collection to an area that is not accessible to minors under the age of eighteen (18) years." *Id.* § 5(c)(11)(A). The Library Committee may decide to remove the challenged item based on "the viewpoints expressed within the challenged material," so long as that viewpoint is not the "*sole*[]" reason for its decision. *See id.* § 5(c)(7)(B)(i) (emphasis added). "[A]ccessible to minors" is not defined by the law, nor does the Challenge Procedure contain any practical guidance on how that standard can be met by libraries. *See generally id.*

Once the Library Committee votes, the challenger will receive a written summary of the reasons for the committee's decision in a "reasonable" but unspecified amount of time. *See id.* §§ 5(c)(8), (11). If the Library Committee votes to segregate or remove the challenged material, that will end the matter; the Challenge Procedure provides no appeal or other recourse to anyone who believes the material should remain available in the main collection. *See id.* § 5(c). If the Library Committee denies the challenge, the challenger may appeal that decision to the city council or quorum court of the city or county primarily supporting the public library. *See id.* § 5(c)(12).

The executive head is charged with receiving an appeal and presenting it for vote of the local governing body. *See id.* On appeal, that local governing body is directed to consider five pieces of information before rendering its decision: (1) the material being challenged; (2) the challenger's request that the material be relocated; (3) the committee's decision; (4) a written summary of the reasons for the committee's decision; and (5) a recommendation from the executive head of the county or city if the executive chooses to include one. *See id.* There is no

requirement in the Challenge Procedure that the local governing body publicly explain or document its reasons for approving or reversing the decision of the library committee. *See id.*

The process draws to a close when, within thirty (30) days of receiving the appeal and as required by the Challenge Procedure, the city council or quorum court issues a "final" decision. *See id.* §§ 5(c)(12)(C)(i)-(ii). Act 372 provides no mechanism for judicial review of that decision, nor does it provide any opportunity for supporters of an item's continued inclusion in a library's collection to express that view, either to the Library Committee or on appeal to the quorum court or city council. *See generally id.* § 5.

## II.  The County Defendants' Efforts to Segregate Library Materials on the Basis of Viewpoint

Over the past year, a small but vocal group of Crawford County residents have imposed their political viewpoints on the Crawford County Library's ("CCL") main collection. Compl. at ¶ 78. Their efforts are epitomized by a November 10, 2022 letter sent by Crawford County residents Jeffrey and Tammi Hamby, which alleged that library staff were "normalizing and equating homosexual and transexual lifestyles with heterosexual . . . family units." *Id.* The Hambys demanded greater participation in CCL's selection of library materials. *See id.*

Responding to this pressure, the County Defendants appointed Tammi Hamby and two others to the CCL Board of Directors in December 2022, which created an avowedly anti-LGBTQ majority voting bloc on the five-member board. *Id.* at ¶ 79. Shortly thereafter, on January 10, 2023, CCL staff announced that all branches of the CCL had "moved their LGBTQ children's books out of the children's section into a new area within their respective adult sections." *Id.* at ¶ 79 n.3 (citing Thomas Saccente, *Crawford County Library Board Looks to Create New A Public Comment Policy After Increased Engagement At Meetings*, N.W. Ark. Democrat Gazette (May 14,

2023), https://tinyurl.com/29mvtzbp). Books discussing racial justice and other social progress themes were also targeted for removal. *See id.* at ¶¶ 79, 82.

When Crawford County residents demanded that CCL stop segregating books containing LGBTQ themes, the County Defendants, through their attorney, declined to do so. Compl. at ¶ 80. Instead, the County Defendants, through counsel, reiterated their intention to "protect[] children from exposure to materials" that they believe "might harm their innocence," including by segregating materials that, in the County Defendants' judgment, "might" be harmful to some minors. *Id.*; Compl. Ex. 2. Critically, they also noted that they expected to take further action to implement Act 372 by continuing to "modify[] and chang[e] the library system's policies and procedures," including by creating "a section that is not accessible to minors" and "hear[ing] appeals on relocation of books." Compl. at ¶ 81; Compl. Ex. 2; *see also* Compl. Ex. 3.

The County Defendants say in their motion that they will not implement Act 372 if it is enjoined. County MTD Br. at 5-6. But this amounts merely to announcing that they will not disobey this Court, which ought to go without saying. They do not deny what they have already said and cannot dispute what the Complaint plausibly alleges: that they intend to implement Act 372 if it goes into effect. *See* Compl. at ¶¶ 81-82; Compl. Ex. 2. Thus, without action by the Court, it is undisputed that the County Defendants will implement the Challenge Procedure. And, for the purposes of the present motion, it must be taken as true—based on the plausible allegations of the County Defendants' viewpoint discrimination to date and their belief that material acknowledging the existence of LGBTQ+ individuals may harm minors—that the County Defendants will exercise their discretion under the Challenge Procedure in a similarly discriminatory manner. Compl. at ¶ 82.

## STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When the sufficiency of a pleading is challenged under Rule 12(b), the Court takes "all factual allegations in the pleadings [as] true and interpret[s] them in the light most favorable to the nonmoving party." *Bell v. Pfizer, Inc.*, 716 F.3d 1087, 1091 (8th Cir. 2013) (internal quotation omitted) (quoting *Murphy v. Aurora Loan Servs., LLC*, 669 F.3d 1027, 1033 (8th Cir. 2012) (citation omitted)) (considering motion made under Rule 12(b)(6)); *see also Young Am. Corp. v. Affiliated Comput. Servs., Inc.*, 424 F.3d 840, 843 (8th Cir. 2005) (applying same standard for motion challenging standing).[2]

The County Defendants contend, under Rule 12(b)(1), that the Complaint fails to allege facts that support the Plaintiffs' standing. On such a facial challenge, "the court reviews the pleadings and affords the non-moving party the same protections it would receive on a Rule 12(b)(6) motion to dismiss," and "must draw all reasonable inferences in the non-moving party's favor." *Stafford v. Bath Planet of Arkansas, LLC*, No. 6:20-CV-6005-RTD, 2020 WL 6878345, at *2 (W.D. Ark. Nov. 23, 2020) (first citing *See Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir. 1990), and then citing *United States v. Stoltz*, 327 F.3d 671, 674 (8th Cir. 2003)).

Under Rule 12(b)(6), the Court's task is to decide whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face and should survive a motion to dismiss "when the

---

[2] In addition to the factual allegations contained in the complaint, the Court may also consider "exhibits attached to the complaint and documents that are necessarily embraced by the pleadings." *Holt v. Deer-Mt. Judea Sch. Dist.*, 135 F. Supp. 3d 898, 901 (W.D. Ark. 2015) (citing *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n. 4 (8th Cir. 2003)).

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plaintiffs need not provide "'detailed factual allegations'" to successfully state a claim, however. *Id.* (quoting *Twombly*, 550 U.S. at 555). Rather, the facts alleged need only "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

**ARGUMENT**

The County Defendants argue for dismissal on two grounds. First, they contend that dismissal is required under Rule 12(b)(1) because the Plaintiffs lack standing to sue them over the Challenge Procedure in light of the fact that the County Defendants have "not yet implemented any policies compliant with Act 372." *See* County MTD Brief at 5. Second, the County Defendants assert that dismissal is warranted under Rule 12(b)(6) because (1) the First Amendment does not protect the right to access books in a public library and, even if it does, the Plaintiffs have not alleged that they have, as yet, been denied access to books in CCL, *id.* at 12-13; and (2) the County Defendants are not proper defendants for the Plaintiffs' Fourteenth Amendment claims because they did not draft or enact Act 372, *see id.* at 13-14.

For the reasons given below, the Court must reject each of these arguments, which misstate the law and overlook the Plaintiffs' factual allegations.

## I.    The Library Plaintiffs have standing to sue the County Defendants.

To start, the Library Plaintiffs[3] have standing to sue the County Defendants to enjoin the implementation of the Challenge Procedure. As alleged in the Complaint and discussed below, the

---

[3] The "Library Plaintiffs" are Plaintiffs Fayetteville Public Library, Eureka Springs Carnegie Public Library, Central Arkansas Library System, Nate Coulter, Olivia Farrell, Hayden Kirby, Leta Caplinger, Adam Webb, Arkansas Library Association ("ArLA"), Advocates for All Arkansas Libraries ("AAAL"), and Freedom to Read Foundation. *See* Compl. at 2 n.1. The Court need only conclude that one Library Plaintiff has standing for each claim, in order for their claims

8

County Defendants intend to implement the Challenge Procedure once Act 372 takes effect and, by doing so, will violate the Library Plaintiffs' First and Fourteenth Amendment rights. *See* Compl. ¶¶ 7, 68-82, 96-104.

To maintain an action in federal court, plaintiffs must show: (1) an injury-in-fact, *i.e.*, "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent"; (2) that the injury is "fairly . . . trace[able] to the challenged action of the defendant"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (cleaned up). In the context of a First Amendment challenge, the "standing inquiry is lenient and forgiving," particularly with regard to "the doctrine's first element: injury-in-fact." *Dakotans for Health v. Noem*, 52 F.4th 381, 386 (8th Cir. 2022) (cleaned up) (quoting *Cooksey v. Futrell* 721 F.3d 226, 235 (4th Cir. 2013). "[W]hen . . . threatened enforcement effort[s] implicate[] First Amendment rights, the [standing] inquiry tilts dramatically toward a finding of standing." *Id.* (cleaned up) (quoting *Ariz. Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003)). Plaintiffs need not wait for a statute to take effect to seek relief from the court, so long as "the named defendants . . . possess authority to enforce the complained-of provision.'" *Digit. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 957-58 (8th Cir. 2015) (quoting *Bronson v. Swensen*, 500 F.3d 1099, 1110 (10th Cir. 2007), and citing *Okpalobi v. Foster,* 244 F.3d 405, 426 (5th Cir. 2001) (en banc)).

### A.    The Library Plaintiffs have suffered and will suffer cognizable injuries from the Challenge Procedure.

The County Defendants assert that "there is no injury-in-fact to Plaintiffs that is concrete

---

to proceed. *See Ark. United v. Thurston*, 626 F.Supp.3d 1064, 1077 n.10 (W.D. Ark. 2022) (Brooks, J.) (citing *Horne v. Flores*, 557 U.S. 433, 446-47 (2009)).

and particularized to Crawford County," but make only two arguments to advance that claim. *See* County MTD Brief at 5-6.[4] Both arguments are unavailing.

First, the County Defendants contend that the "Plaintiffs have failed to allege that any action undertaken by Crawford County will chill their speech." County MTD Brief at 5 (citing *Noem*, 52 F.4th at 386). But Plaintiffs do allege that the Challenge Procedure chills speech because it enables and requires the County Defendants to "segregate into a secure, 'adults only' area a substantial amount of material that is protected as to adults and older minors but which someone may allege is inappropriate for the public library's youngest, least mature reader." Compl. at ¶ 5. Doing so will attach a stigma to those segregated materials, which will make those books "less attractive to many readers." *Id.* at ¶ 20(d).

In addition to the stigmatic harm that will block access to library materials, the Challenge Procedure will also require libraries to either remove certain books entirely, or securely segregate those books to ensure they remain inaccessible to minors. *See id.* at ¶ 5. That will cause library patrons, like CCL patron, Leta Caplinger, to lose "access to books that [they] would like to peruse, read, [or] check out, . . . and which would otherwise be available." *See id.* at ¶ 18; *see also id.* at ¶ 5. Older minors, and parents who visit the library with their minor child in tow, will also be barred outright from accessing materials segregated into an adults only area. *See id.* at ¶ 17; *see also id.* at ¶ 20(c) (describing how the guardians of children too young to be left unattended while they peruse will be denied access to books kept in the segregated section, where their young children would not be allowed). At a minimum, the ability of patrons freely to peruse will be burdened by the disorganization that will result from the Challenge Procedure, which requires that

---

[4] The County also argues that the Plaintiffs cannot plead taxpayer standing. *See* County MTD Brief at 7-8. The Plaintiffs do not rely on a theory of taxpayer standing.

certain library materials be confusingly organized by their appropriateness for the library's youngest visitors, instead of by type of book and subject matter, as library best practices would dictate. *See id.* at ¶ 20(b) (describing the approach taken by ArLA member libraries). Patrons can also expect difficulty accessing items of interest whenever a challenge is brought to an item of which the library has only a single copy. *See id.* at ¶¶ 20(c), 21(c).

The County Defendants do not engage with any of these factual allegations of burdened access, which numerous courts have found to constitute an injury-in-fact. *See Counts v. Cedarville Sch. Dist.*, 295 F. Supp. 2d 996, 999 (W.D. Ark. 2003) (finding that impediments to access, even if "relatively small, constitute a sufficient allegation" of injury to establish standing); *see also Sund v. City of Wichita Falls,* 121 F.Supp.2d 530, 541 (N.D. Tex. 2000) (finding injury based on a "significant burden on the Library patron's ability to gain access to the Books"); *id.* at 550 (recognizing that First Amendment rights were burdened by a policy permitting children's books to be segregated into an adult section because families would struggle to find those items).

The Court could end its inquiry there and find that Plaintiffs have standing to pursue their Challenge Procedure claims, based on the clear-cut injury to Ms. Caplinger's ability to access protected materials at CCL, her local library. *See* Compl. at ¶ 18; *see also Ark. United*, 626 F.Supp.3d at 1077 n.10. But the Library Plaintiffs also allege that the Challenge Procedure discriminates based on viewpoint, by giving preferential input only to those who favor removing library materials. *See id.* at ¶¶ 20(e), 21(e) (alleging that ArLA and AAAL, as well as their respective members, "would participate to advocate for books remaining available," if the Challenge Procedure permitted such input). ArLA has members all across Arkansas, including in Crawford County, so will be specifically harmed by its inability to have input on book challenges being heard by the County Defendants. *See id.* at ¶ 20. The County Defendants do not address, let

alone dispute, these injuries to the Library Plaintiffs' First Amendment rights. *See Turner Broadcasting Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642-43 (1994) (applying "the most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens on speech because of its content").

Second, as a fallback, the County Defendants contend that Plaintiffs lack standing because "[t]here is no 'sufficiently imminent' threat from Crawford County that it will implement policies under Act 372 *if the Act is enjoined*." MTD Brief at 5 (emphasis added) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)). But the standing analysis looks at what defendants will do *absent* an injunction; plaintiffs need not show that defendants would violate an injunctive or declaratory order that could hypothetically be issued against other defendants. *See infra* at 12-13; *see also Susan B. Anthony List*, 573 U.S. at 158 (finding that the threat of enforcement amounts to an Article III injury in fact). The Library Plaintiffs plausibly allege, and the County Defendants do not dispute, that the County Defendants have already "acted to segregate constitutionally protected materials" and will do so in the future as part of their implementation of the Challenge Procedure once that law goes into effect on August 1, 2023. *See* Compl. at ¶¶ 7, 78-82; *see id.* at ¶ 82 (alleging that the County Defendants "intend[] to adopt a policy that materials containing LGBTQ themes or discussing other 'social issues'" that members of the Crawford County Quorum Court think "might harm the innocence of children" shall be "segregated based on the viewpoint contained therein"). No more is required.

**B.    The Library Plaintiffs' injuries are fairly traceable to the County Defendants and an order from this Court will provide redress.**

As the County Defendants acknowledge, the final elements of standing—traceability and redressability—typically "center around" the injury-in-fact inquiry. *See* County MTD Brief at 4

(citing *Lujan*, 504 U.S. at 560-61). That is true here and, accordingly, the Court need not linger on these elements.

The crux of the County Defendants' argument on traceability is that they "do[] not possess the authority to enforce Act 372," which they contend lies only with "the prosecutors that have been sued by Plaintiffs and with the Attorney General, who is charged to enforce and defend Arkansas' laws." County MTD Brief at 6. That might be true with respect to the Availability Provision, but it is plainly incorrect with respect to the Challenge Procedure. Indeed, Act 372 vests all of the authority and discretion to implement the Challenge Procedure in local libraries, quorum courts, and city councils. *See* Act 372 § 5. And Plaintiffs have alleged that the County Defendants intend to exercise that authority in a manner that will injure constitutional rights. *See* Compl. at ¶¶ 29-30, 81-82. Nothing more is needed to meet the traceability prong of the standing analysis. *Digital Recognition Network, Inc.*, 803 F.3d at 957-58 ("[W]hen a plaintiff brings a pre-enforcement challenge to the constitutionality of a particular statutory provision, the causation element of standing requires the named defendants to possess authority to enforce the complained-of provision." (internal quotation marks omitted)).[5]

---

[5] The possibility that the County Defendants will be prevented, as a result of a different lawsuit, from continuing to segregate books into a so-called "Social Section" does not defeat the Plaintiffs' claim to standing or mean that an order of this Court will have no effect. *See* County MTD Brief at 6. The Plaintiffs' concern is that the County Defendants will implement the Challenge Procedure once the law takes effect on August 1. The fact that Act 372 gives them a statutory basis to engage in unlawful conduct similar to the constitutionally suspect actions they have previously taken voluntarily is all the more reason for the Court to grant relief. The County Defendants have not suggested that an injunction of the Social Section or a declaration that it is unconstitutional would have any effect on their implementation of the Challenge Procedure. And the Court has already rejected the argument that the Plaintiffs' challenge to the legality of the Challenge Procedure overlaps with the separate litigation against the Social Section. *See* Order on Mot. Transfer Case at 1 (Doc. 41).

Finally, with respect to redressability, the County Defendants' assurances that they will not implement Act 372 if it is enjoined are irrelevant to whether Plaintiffs have standing to seek relief against them. *See* County MTD Brief at 6-7. They cite no cases holding that a defendant can be relieved from a suit simply by promising to desist if the Court rules adversely against another defendant. Their own words settle the redressability inquiry: "[I]f this Court enjoins [Act 372], then Crawford County will not implement [Act 372]." *See* County MTD Brief at 7. As these words confirm, it is "likely, as opposed to merely speculative, that the injury"—stemming from the County Defendants' implementation of the Challenge Procedure—"will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal quotation marks omitted).

## II.     The Library Plaintiffs Have Stated Plausible Claims That the Challenge Procedure Violates the First and Fourteenth Amendments.

### A.      The Library Plaintiffs have stated plausible First Amendment claims against the County Defendants.

The County Defendants hang their entire argument that Plaintiffs have failed to state claims under the First Amendment on the theory that there is no right to receive information enshrined in that Amendment and that, if there is, Plaintiffs do not allege that they have yet been denied access to materials pursuant to the Challenge Procedure. *See* County MTD Brief at 9-11. The County Defendants are wrong on the law and the facts.

As the County Defendants' partial survey of applicable cases reflects, numerous courts, including one in this district, have found that the First Amendment protects a right to access information. *See id.* For instance, in *Counts*, a case holding that requiring a parental permission slip to check out certain books from a school library was an impermissible burden on student's First Amendment rights, Judge Hendren stated that "[t]he right to read a book is an aspect of the right to receive information and ideas, an 'inherent corollary of the rights of free speech and press

14

that are explicitly guaranteed by the Constitution.'" *Counts*, 295 F. Supp. 2d at 999 (quoting *Bd. of Educ. v. Pico*, 457 U.S. 853, 857 (1982)). The conclusion that the First Amendment protects the right to access certain information is also inherent in Judge Eisele's ruling that a statute restricting adults and older minors from accessing information that was constitutionally protected as to them was facially unconstitutional. *See Shipley, Inc. v. Long*, 454 F. Supp. 2d 819, 831 (E.D. Ark. 2004). This is precisely the harm that Plaintiffs allege will occur as a result of the County Defendants' implementation of the Challenge Procedure. *See supra* at 8-10.

Courts outside the Eighth Circuit have reached similar conclusions. In *Sund v. City of Wichita Falls*, a case not mentioned by the County Defendants, the United States District Court for the Northern District of Texas forcefully held that "[t]he First Amendment to the United States Constitution . . . indisputably protect[s] the right to receive information." 121 F.Supp.2d at 547; *see also Reno v. ACLU*, 521 U.S. 844, 874 (1997) (acknowledging "that adults have a constitutional right to receive and to address to one another"). In *Sund*, a city adopted a rule allowing 300 library card holders the right to have books removed from the children's section of the municipal public library and placed in the adult book section. 121 F.Supp.2d at 549. Rejecting the city's argument that the First Amendment was not implicated because the books were moved rather than removed, the district court found a "significant burden on the Library patron's ability to gain *access to the Books*." *Id.* at 541 (emphasis added). The United States District Court for the Western District of Texas reaffirmed the vitality of this First Amendment right earlier this year. *See  Little v. Llano Cnty.*, No. 1:22-CV-424-RP, 2023 WL 2731089, at *5 (W.D. Tex. Mar. 30, 2023) (finding that "the infringement on [a library user's] *right to access information* is a 'continuing, present adverse effect[ ]' that qualifies as an injury for Article III purposes" (emphasis added) (quoting *Lujan*, 504 U.S. at 564)).

The County Defendants assert that finding a right to access information here impermissibly *expands* the right beyond the schoolhouse walls and applies it in a novel manner to public libraries. *See* County MTD Brief at 10. But finding that the First Amendment protects the rights of public library users to access protected materials contained therein is hardly an expansion of the right. Rather, because the state's ability to regulate First Amendment activity is heightened within schools, a right to access information within a public library is a *more limited* application of First Amendment protections. *See Counts*, 295 F.Supp.2d at 1003 (finding that First Amendment protected right to access information, even in school context). "[T]he right to access information . . . has 'even greater force when applied to public libraries,' since public libraries are 'designed for freewheeling inquiry,' and the type of discretion afforded to school boards is not implicated." *Little*, 2023 WL 2731089, at *8 (quoting *Sund*, 121 F.Supp.2d at 548 (quoting *Pico*, 457 U.S. at 915 (Rehnquist, J., dissenting)).[6]

Moreover, even where courts have found that a decision to remove or restrict access to school library materials did not constitute a First Amendment violation, they nevertheless acknowledged that libraries cannot engage in viewpoint discrimination when doing so. Even the cases cited by the County Defendants acknowledge that "the First Amendment impose[s] some degree of limitations upon the discretion of the removal of books from a public-school library." *C.K.-W. ex rel. T.K.*, 619 F.Supp.3d at 914. Indeed, on this point, the *Pico* Court was unanimous: the Justices all agreed that removing books because they contain a disfavored viewpoint is unlawful. *See Pico*, 457 U.S. at 870-71 (explaining that discretion to determine the content of

---

[6] For the same reason, the decisions the County Defendants cite in which courts have concluded, on the facts of those cases, that students were not deprived of a right to access information, are inapplicable to this case. *See* County MTD Brief at 9 (citing *C.K.-W. ex rel. T.K. v. Wentzville R-IV Sch. Dist.*, 619 F. Supp. 3d 906 (E.D. Mo. 2022)).

libraries "may not be exercised in a narrowly partisan or political manner") (plurality opinion); *id.* at 907 (Rehnquist, J., dissenting) ("cheerfully conced[ing]" this point); *id.* at 883 (White, J., concurring) (noting that the trial court should determine "the reason or reasons underlying the school board's removal of the books").[7]

The County Defendants do not argue that the First Amendment allows them to remove or relocate books pursuant to the Challenge Procedure based on their viewpoint. *See* County MTD Brief at 8-11. Rather, they assert that the LGBTQ-themed books they have singled out for segregation into CCL's so-called "Social Section" are, in fact, "unrestricted and accessible to all [CCL] patrons." *See id.* at 11. A motion to dismiss is not the time to dispute the truth of Plaintiffs' factual allegations, of course. *See Iqbal*, 556 U.S. at 678. And, as Plaintiffs have already explained, facts concerning the constitutionally suspect "Social Section" are relevant only to provide a concrete basis for Plaintiffs' further allegation that the County Defendants will carry that viewpoint discrimination forward through their implementation of the Challenge Procedure once that law goes into effect on August 1, 2023. *Supra* at 4-5, 11-12 (citing Compl. at ¶ 82). It is undisputed that Act 372 requires a greater restriction of disfavored material than even the Social Section entails. *See* Compl. at ¶ 81; Compl. Ex. 2 (Crawford County Attorney stating that "[Act 372's] effect will be to require libraries to have a section that is inaccessible to minors. . . . Act 372 will make it necessary to continue modifying and changing the library system's policies and

---

[7] Mixed in with the County Defendants' attempt to cabin *Pico* is their confusing assertion that "the issue and allegations of prior restraint are a matter of state law." *See* County MTD Brief at 10. They seem to mean that injuries stemming from a prior restraint—a classic violation of the federal rights enshrined in the First Amendment—are attributable only to state defendants. *See id.* The Plaintiffs have addressed above why injuries caused by the County Defendants through implementation of the Challenge Procedure are fairly traceable to them. *See supra* at 11-13; *see also infra* at 17-18.

procedures."). So even if the "Social Section" truly leaves books accessible to all patrons, Plaintiffs have alleged that the County Defendants' Act 372 restrictions will not.

Finally, the County Defendants are wrong to assert that books must be completely removed before a violation can be established. *See* County MTD Brief at 12. In *Counts*, the court found a plausible First Amendment claim based on the plaintiff's allegations that requiring a parental permission slip to check out certain books from a school library stigmatized the books in question, and burdened her with the need to "locate the librarian, perhaps waiting her turn to consult the librarian, then ask to check the book out and wait while the librarian verifies that she has parental permission to do so, before she can even open the covers of the book." *Counts*, 295 F. Supp. 2d at 999. The court did not require the restrictive scheme to be utterly impenetrable because "[t]he loss of First Amendment rights, even minimally, is injurious." *See id.* (citing *Marcus v. Iowa Pub. Television*, 97 F.3d 1137 (8th Cir. 1996)). Plaintiffs more than meet that bar because they allege that the Challenge Procedure requires *relocation* of books to an *area* that is not accessible to minors. *See, e.g.*, Compl. at ¶¶ 7, 70; *see also Sund*, 121 F.Supp.2d at 550.

### B. Plaintiffs have stated plausible Fourteenth Amendment claims against the County Defendants.

Finally, the County Defendants attack Plaintiffs' claims under the Fourteenth Amendment—based on the Challenge Procedure's lack of judicial review and reliance on impermissibly vague statutory terms—on the grounds that they are "not the proper party for such claims" because the Challenge Procedure is "a law created by the State of Arkansas" and Plaintiffs "do not allege that Crawford County is tasked with implementing or enforcing Act 372." *See* County MTD Brief at 13. Of course, a passing glance at the Complaint reveals that Plaintiffs do, in fact, allege that the County Defendants will implement and enforce the Challenge Procedure once Act 372 takes effect. *See, e.g.*, Compl. at ¶ 29 ("[I]t is the policy of Crawford County to

implement Act 372 to the fullest extent possible."); *id.* at ¶ 30 ("Judge Keith serves as the chief executive of Crawford County, and . . . is responsible for the implementation of Act 372, including the Challenge Procedure, in Crawford County."); *id.* at ¶¶ 81-82.

The balance of the County Defendants' argument—that only the state can be sued when a county government violates federal rights while acting under color of state law—merely rehashes their erroneous argument as to why Plaintiffs' injuries are not fairly traceable to them. *See supra* at 11-13. Arkansas has conferred authority and discretion to local governments, like the County Defendants, to implement the Challenge Procedure. *See* Act 372 § 5. Accordingly, the Library Plaintiffs are entitled to seek an injunction against the County Defendants under 42 U.S.C. § 1983 to prevent the violation of their federal rights. *West v. Atkins*, 487 U.S. 42, 49 (1988) ("The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'") (quoting *United States v. Classic,* 313 U.S. 299, 326 (1941).

## III.    If the Court Finds That Dismissal Is Warranted, It Should Be Without Prejudice

For the reasons set forth above, the Court should deny the County Defendants' motion. If the Court finds that dismissal is warranted, however, it should dismiss Plaintiffs' claims against the County Defendants without prejudice, so that Plaintiffs may have an opportunity to amend those claims in response to the Court's order. *See Miles v. Simmons Univ.*, 514 F. Supp. 3d 1070, 1080 (D. Minn. 2021) ("A dismissal with prejudice is typically appropriate when a plaintiff has shown 'persistent pleading failures' despite one or more opportunities to amend . . . , or when the record makes clear that any amendment would be futile") (internal citations omitted) (quoting *Milliman v. Cnty. Of Stearns*, No. 13-136, 2013 WL 5426049, at *16 (D. Minn. Sept. 26, 2013)).

The County Defendants make no argument as to why allowing Plaintiffs an opportunity to amend would be inappropriate or futile. *See* County MTD Brief at 14.

## CONCLUSION

For the foregoing reasons, the Court should deny the County Defendants' motion to dismiss (Doc. # 35).

Respectfully submitted,

/s/ John T. Adams

David M. Fuqua
Ark. Bar No. 80048
John T. Adams
Ark. Bar No. 2005013
Attorneys for Plaintiffs Central Arkansas
Library System, Nate Coulter, and the Eureka
Springs Carnegie Public Library
FUQUA CAMPBELL, P.A.
Riviera Tower
3700 Cantrell Road, Suite 205
Little Rock, AR 72202
Telephone: (501) 374-0200
E-Mail: dfuqua@fc-lawyers.com
E-Mail: jadams@fc-lawyers.com

Bettina Brownstein
Ark. Bar No. 85019
BETTINA E. BROWNSTEIN LAW FIRM
Attorney for Olivia Farrell, Jennie Kirby,
Hayden Kirby, and Leta Caplinger
904 West 2nd Street, Suite 2
Little Rock, AR 72201
Telephone: (501) 920-1764
E-Mail: bettinabrownstein@gmail.com
On Behalf of the Arkansas Civil Liberties Union
Foundation, Inc.

Will Bardwell*
Ben Seel*
Aman George*
Orlando Economos*
Attorneys for the Arkansas Library Association,
Advocates for All Arkansas Libraries, and Adam
Webb, in his individual capacity
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34554
Washington, DC 20043
Telephone: (202) 448-9090
E-Mail: wbardwell@democracyforward.org
E-Mail: bseel@democracyforward.org
E-Mail: ageorge@democracyforward.org
E-Mail: oeconomos@democracyforward.org

Vincent O. Chadick
Ark. Bar No. 94075
Brandon B. Cate
Ark. Bar No. 2001203
Glenn V. Larkin
Ark. Bar No. 2020149
Attorneys for Plaintiff Fayetteville Public
Library
QUATTLEBAUM, GROOMS & TULL
PLLC
4100 Corporate Center Drive, Suite 310
Springdale, Arkansas 72762
Telephone: (479) 444-5200
E-Mail: bcate@qgtlaw.com
E-Mail: vchadick@qgtlaw.com
E-Mail: glarkin@qgtlaw.com

Michael A. Bamberger*
Kristen Rodriguez*
Rebecca Hughes Parker*
Attorneys for Pearl's Books, LLC,
Wordsworth Community Bookstore LLC,
American Booksellers Association,
Association of American Publishers, Inc.,
Authors Guild, Inc. Comic Book Legal
Defense Fund, and Freedom to Read
Foundation
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 768-6700
E-Mail: michael.bamberger@dentons.com
E-Mail: kristen.rodriguez@dentons.com
E-Mail: rebeccahughes.parker@dentons.com

* Admitted pro hac vice

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 19, 2023, a copy of the foregoing was served upon all counsel of record contemporaneously with its filing in the CM/ECF system.

*/s/ John T. Adams*
John T. Adams
