**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FORT SMITH DIVISION**

**FAYETTEVILLE PUBLIC LIBRARY,** *et al*                                    **PLAINTIFFS**

**vs.**                                        **No. 5:23-cv-5086-TLB**

**CRAWFORD COUNTY, ARKANSAS,** *et al,*                                    **DEFENDANTS**

<u>**REPLY IN SUPPORT OF MOTION TO DISMISS**</u>

COME NOW Separate Defendants, Crawford County, Arkansas, and Crawford County Judge Chris Keith, in his official capacity ("Crawford County"), by and through their undersigned counsel, and for their Reply in Support of their Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), state as follows:

**INTRODUCTION**

Plaintiffs' response to Crawford County's Motion to Dismiss is a shift in their narrative. At first, Plaintiffs' case was just a facial challenge to Act 372. *Doc. 2* at ¶1. Plaintiffs simply wanted Act 372 declared facially unconstitutional and Crawford County was included only for context. Now, Plaintiffs conflate their facial challenge into an as-applied challenge by explaining that their "Crawford County" facts are to show that Crawford County is "likely to undertake conduct that will cause classic injuries to core constitutional rights." *See Doc. 43* at 2. Plaintiffs' case is either a statewide facial challenge or it is not; Plaintiffs catch their mistake by asking this Court for permission to "amend those claims" should Crawford County prevail in its Motion to Dismiss. *Doc. 43* at 19–22.

In shifting the narrative as to what they want this case to be (as opposed to what this case actually is), Plaintiffs assert that Crawford County is "wrong on the law and the facts." *Doc. 43* at 14. Crawford County replies to correct Plaintiffs' hyperbolic assertion.

1

## ARGUMENT

### I.  Sticking to the *Relevant* Facts and Standards

Plaintiffs' opposition to Crawford County's' Motion to Dismiss is twenty-two pages, yet their Complaint only contains a page-and-a-half of facts as to Crawford County.  *Compare Doc. 43 with Doc. 2* at 25–26.  And almost all of those twenty-two pages are spent attempting to rewrite the facts they chose to allege when they filed their claims.  *See Doc. 43*.  Plaintiffs are the master of their case; they chose to bring this case as a facial challenge and allege only five paragraphs as to Crawford County.  *Doc. 2*. Crawford County replies with the obvious: a Motion to Dismiss based upon the facts lodged in Plaintiffs' Complaint. Those facts do not chin the bar as to what is required in a facial challenge.  *Turkish Coal. of Am., Inc. v. Bruininks*, 678 F.3d 617, 623 (8th Cir. 2012); *Phelps-Roper v. City of Manchester, Mo.*, 697 F.3d 678, 685 (8th Cir. 2012).

**Plaintiffs' Facts.** In their Response, Plaintiffs allege actions taken by Crawford County prior to Act 372's passage and few about Crawford County's current policy and use of Social Sections. *Doc. 2* at ¶78–81.  Those allegations, even accepted as true, do not move the needle on whether Act 372 is facially constitutional under the First or Fourteenth Amendment.   The remaining paragraph is Plaintiffs' allegation that Crawford County will engage in viewpoint discrimination—segregating LGBTQ+ themed material—under the veil of Act 372:

> "On information and belief, Crawford County intends to adopt a policy that materials containing LGBTQ themes or discussing other "social issues" might harm the innocence of children and that, on that basis, any such material *must* be segregated based on viewpoint contained therein once Act 372 goes into effect on August 1." *Doc. 2* at ¶82.

Plaintiffs argue that this allegation is "plausible" based on Crawford County's prior actions, current policies, and use of social sections.[1]  *Doc. 43* at 5–6.

---

[1] Actions, policies, and sections that are the subject of another lawsuit and that Plaintiffs have conceded do not belong in this case. *See Docs. 29, 33*.

But Plaintiffs' attempt to use allegations to build up to a plausible injury of viewpoint discrimination is easily remedied by looking at Act 372. The Act provides in Section 5, Subsection (c)(7)(B)(i)–(ii) that material being challenged "shall not be withdrawn solely for the viewpoints expressed within the material." *Doc. 2-1* at 8. So, even assuming Plaintiffs' allegation that Crawford County might engage in viewpoint discrimination, Crawford County could not engage in such conduct pursuant to Act 372. And Plaintiffs' opposition also makes it clear that they only take issue with Crawford County as to Section 5. *Doc. 43* at 2–5. Therefore, even in a favorable light, Plaintiffs' singular relevant allegation fails to provide a basis to sue Crawford County because Section 5 of Act 372 forecloses any hypothetical viewpoint discrimination from the start.

In trying to rewrite their own facts and claims, Plaintiffs attempt to rewrite the standards the law requires of them. Crawford County replies to set those standards straight.

**The Legal Standards.** Plaintiffs' five allegations, in the context of the First Amendment claims, must show there is no factual context for Crawford County to implement Act 372 in a constitutional manner, unless "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Josephine Havlak Photographer, Inc. v. Vill. of Twin Oaks*, 864 F.3d 905, 912 (8th Cir. 2017) (citing *U.S. v. Stevens*, 559 U.S. 460, 473 (2010)).

But that carveout—a substantial number of applications—is known as the overbreadth doctrine, and it is of no use for Plaintiffs as to Crawford County because it only applies when there is a "realistic danger that the *statute itself* will significantly compromise recognized First Amendment protections of parties not before the court." *Id.* (citing *Jacobsen v. Howard*, 109 F.3d 1268, 1274 (8th Cir. 1997)) (emphasis added). Plaintiffs' opposition makes clear that their facts and First Amendment claims against Crawford County are not based on Act 372 "itself" but

Crawford County's conduct which shows they "are likely to undertake conduct that will cause classic injuries to core constitutional rights." *Doc. 43* at 2.

The speculative nature of Plaintiffs' First Amendment claims are why facial challenges are disfavored and difficult:

> "'Facial challenges are disfavored' because they 'often rest on speculation.... [and] raise the risk of 'premature interpretation of statutes on the basis of factually barebones records.'" *Phelps-Roper v. City of Manchester, Mo*., 697 F.3d 678, 685 (8th Cir. 2012) (citing *Wash. State Grange v. Wash. State Republican Party et al.*, 552 U.S. 442 450 (2008)).

> "'A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully....' *United States v. Salerno*, 481 U.S. 739, 745 (1987). 'To succeed challengers [must] establish that no set of circumstances exists under which [the Act] would be valid, or that the statute lacks any plainly legitimate sweep.'" *Phelps-Roper v. Ricketts*, 867 F.3d 883, 891–92 (8th Cir. 2017) (internal citations omitted).

Plaintiffs' five paragraphs only speak to a "premature interpretation," application and outcome of Act 372 by looking backwards to speculate forward as to Crawford County. Plaintiffs chose the difficult task of a facial challenge, and their five paragraphs of allegations as to Crawford County do not go towards whether Act 372 is constitutional on its face under the First Amendment.

In the context of the Fourteenth Amendment claims, Plaintiffs task is the same—these five paragraphs must show no set of circumstances where Act 372 can be found constitutional:

> "[A] plaintiff bringing a facial challenge must 'establish that no set of circumstances exists under which the [law] would be valid, or show that the law lacks a 'plainly legitimate sweep." *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021) (internal citations omitted).

Thus, under either constitutional claim, Plaintiffs' five allegations against Crawford County must speak to Act 372's inability to accommodate a single factual context where the Act is unconstitutional. Plaintiffs' own favored case—*Shipley v. Long*—agrees this is the standard. 454 F. Supp.2d 819, 831 (E.D. Ark. Nov. 16, 2004). In *Shipley*, Judge Eisele did not find the entire

4

statute unconstitutional because "it can be constitutionally interpreted in some factual contexts." *Id.*

This standard is what Plaintiffs chose when they chose to bring a facial challenge. *Doc. 2* at ¶1. Plaintiffs chose to allege only five paragraphs against Crawford County. *Doc. 2* at ¶¶78–82. Plaintiffs chose to base the entirety of their claims on the speculative accusation that "Crawford County intends to adopt a policy" that allows "viewpoint" discrimination, despite Act 372 not allowing such discrimination. *Doc. 2* at 82; *Doc. 2-1* at 8. Plaintiffs had a choice, but the law dictates the outcome.

**The Outcome.** First, Plaintiffs' alleged injury that Crawford County *might* engage in viewpoint discrimination based on *past* conduct does not establish an injury-in-fact, for Article III standing, that is not hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiffs opposition states that they need not wait for Act 372 to take effect for standing to be conveyed to them:

> "Plaintiffs need not wait for a statute to take effect to seek relief from the court, so long as 'the named defendants…possess authority to enforce the complained-of provision.'" *Doc. 43* at 9 (citations omitted).

Crawford County refutes Plaintiffs' characterization of its authority under the Act, but assuming its true, the complained of provision—Section 5 of Act 372—explicitly says Crawford County cannot engage in the viewpoint discrimination that Plaintiffs allege is their imminent injury.[2] The Act forecloses Plaintiffs' worries from the start, making their alleged injury nothing more than a hypothetical worry. This leaves Plaintiffs with no Article III injury-in-fact, which leaves this Court without subject matter jurisdiction over Plaintiffs' claims as to Crawford County. *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007).

---

[2] Plaintiffs do not argue in their opposition that any other section of Act 372 is at issue as to Crawford County, conceding that it is only Section 5 at issue with Crawford County. *Doc. 43* at 2–5.

Second, neither Plaintiffs' Complaint nor their opposition "demonstrate[s] standing for each claim [they] seek to press and for each form of relief that is sought" as to Crawford County. *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017). As the Supreme Court has made clear—"standing is not dispensed in gross." *Id.*  Plaintiffs make hasty mention of Separate Plaintiff Leta Caplinger and the collective Library Plaintiffs. *Doc. 43* at 11; *Doc. 2* at 2 n.1.  But Plaintiffs make no attempt to prove standing, in their opposition or Complaint, for each and every Plaintiff who asserts a claim against Crawford County on the facial validity of Section 5 of Arkansas's Act 372.  Standing is not a one-size-fits-all inquiry.

As to Plaintiff Caplinger, Library Plaintiffs, and the Organization ArLA, Plaintiffs argue in their opposition that they have standing based on the future viewpoint discrimination and ability to access material. *See Doc. 43* at 11.  The viewpoint discrimination as to all Library Plaintiffs is foreclosed by the Act itself. *Doc. 2-1* at 8. As to access of material, Caplinger's allegation is a conclusion that *both* the Challenge Procedure (Section 5) and Availability Procedure (Section1) will "depriv[e]" her of access to books. *Doc. 2* at ¶18.  Plaintiffs' murky allegation is not clear as to how the Challenge Procedure alone, and not the Availability Procedure, would affect access. *Id.*; *see also Doc. 43* at 11.  Regarding Organization ArLA, Plaintiffs conclude based on their allegations that that ArLA has a member in Crawford County, but provide no legal authority in their opposition that requires ArLA's members from around Arkansas have the ability to participate in the challenge process in Crawford County, an inhibition Plaintiffs say is injurious to all its members. *Doc. 43* at 11.  Plaintiffs' opposition, and most importantly their Complaint, do not demonstrate standing for each Plaintiff, for each claim, and for each form of relief.

Third, Plaintiffs' barebones five-paragraph-facts do not show on the face of the Complaint, in the most favorable light, how Section 5 of Act 372 cannot be applied constitutionally in any factual

context. *See Doc. 2* at ¶78–82.  This is the standard by which Plaintiffs must state a viable claim because they chose to bring a facial challenge. *Doc. 2* at ¶1; *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021).  Plaintiffs' Complaint and their opposition does not account for factual contexts where Crawford County creates more protective rules under Section 5 because as the Act states—the Challenge Procedures set by Act 372 are "minimum" requirements. *Doc. 2-1* at 4.  Thus, Plaintiffs have not removed all doubt as to how Act 372 can be implemented.

Despite the new theories laid out in their opposition, Plaintiffs are bound by their Complaint. And the five factual allegations asserted by Plaintiffs do not satisfy the difficult task of proving a facial challenge as to Crawford County.

## II.  The Jurisprudence of *Sund*, *Counts*, and *Shipley*

Plaintiffs rely on three primary cases in arguing that they have suffered an injury and stated a viable facial First Amendment claim:  (1) *Sund v. City of Wichita Falls*, 121 F. Supp.2d 530, 541 (N.D. Tex 2000);  (2) *Counts v. Cedarville Sch. Dist.*, 295 F. Supp.2d 996 (W.D. Ark. 2023); and (3) *Shipley*, 454 F. Supp.2d 819 (E.D. Ark 2004). *See Doc. 43*. Plaintiffs equate these cases to the case at bar. But the particulars of *Sund, Counts, and Shipley* reveal how they are inapposite with Plaintiffs' case.

Beginning with *Sund v. City of Wichita Falls*, the Northern District of Texas enjoined a Wichita Falls library ordinance because it violated not only the U.S. Constitution but the Texas Constitution's "right to receive information." 121 F. Supp.2d at 547.  The district court's basis for the U.S. Constitution's right to receive information was based solely on the Supreme Court's plurality opinion of *Bd. of Educ. v. Pico*, 457 U.S. 853 (1982).

Plaintiffs' claims and alleged injuries are not synonymous with *Sund*, and their reliance on *Sund* here is imprecise.  Plaintiffs and Defendants are Arkansans litigating legislation enacted by

7

the State of Arkansas. *Doc. 2* at ¶1–8. To the extent a Texas district court holds that the Texas Constitution grants a right to receive information, such a holding and right does not extend across Arkansas's border. The court in *Sund* relied on the Supreme Court's plurality opinion in *Pico* to assert that the U.S. Constitution's First Amendment grants a right to receive information from a public library. 121 F. Supp.2d at 547–548. But the Fifth Circuit holds that *Pico*'s plurality right of access is limited to the facts of the case and that Justice White's concurrence in *Pico* is the narrowest grounds for which *Pico* can be held as precedent. *Chiras v. Miller*, 432 F.3d 606, 619–620 (5th Cir. 2005); *Muir v. Alabama Educ. Television Comm'n*, 688 F.2d 1033, 1045 n.30 (5th Cir. 1982). Thus, the holding in *Sund* is contrary to clear Fifth Circuit precedent, perhaps because the Texas Constitution's ceiling goes further than the floor of the U.S. Constitution. *Compare id. with Sund*, 121 F. Supp.2d at 547–548. Nonetheless, to the extent that *Sund* goes further than the facts of its case and the concurrence of Justice White in *Pico*, it both is against Fifth Circuit precedent and is of non-precedential value here. Thus, the claims and harms in *Sund* are not dispositive with respect to Plaintiffs' alleged harm.

Second, in *Counts v. Cedarville Sch. Dist.*, Judge Hendren ruled that the school's policy of locating only Harry Potter books to "where they are highly visible, yet not accessible to the students unless they are checking them out" violated the plaintiff-student's First Amendment right to receive information, pursuant to *Pico*. 295 F. Supp.2d. at 1001, 1005. The school's policy required: (1) the books to be placed outside of the student's typical access, (2) students to have parental permission slips on file to check out the books, and (3) students could only access the books with the assistance of a librarian. *Id.* at 999. The court in *Counts* took issue with the fact that student-plaintiff needed parental permission and could not "simply walk into the library and

[review a passage in one of the books]." *Id.* However, the *Counts* court does not explain *Pico*'s limited use nor its narrowest grounds when citing to it. 295 F. Supp.2d. at 989–99.

Crawford County and its library system have not taken any action similar to what happened in *Counts*. The books in Crawford County's libraries remain readily accessible by any library patron, no library patron requires parental permission to retrieve a book off the shelf or check one out, and any library patron can walk up to the Social Section and retrieve a book from it to "review a passage in one of the books." *Counts*, 295 F. Supp.2d. at 999. As to the future that Plaintiffs worry about, Crawford County could not remove or segregate books based on their viewpoint, like the school in *Counts* only segregating Harry Potter books, because Act 372 does not allow viewpoint discrimination. *Doc. 2-1* at 8. Therefore, Plaintiffs' alleged injury and claims are not synonymous to that in *Counts*.

Lastly, Plaintiffs point to *Shipley* as a basis for their alleged injury and claims against Crawford County. But Plaintiffs again miss the mark. *Shipley* is about a book segregation statute passed by Arkansas in the early 2000s. 454 F. Supp. 2d 819. The *Shipley* plaintiffs brought their case as a facial challenge. *Id*. But Plaintiffs here fail to make mention, or draw the parallel, that the statute in *Shipley* was not struck completely because it could be applied constitutionally in some factual contexts. *Id.* at 831. Here, Plaintiffs fail to state enough facts to show how Act 372 cannot be applied constitutionally in any setting. Nor how their hypothetical worry that Crawford County will engage in viewpoint discrimination under Act 372, *see Doc. 2*, amounts to an injury when Act 372 does not allow such discrimination and could be applied by Crawford County constitutionally in some factual settings.

With respect to Crawford County, Plaintiffs' injury on this facial challenge of Act 372 is non-existent. Plaintiffs' hypothetical worry that Crawford County will engage in viewpoint

9

discrimination, *see Doc. 2* at ¶82, is not synonymous with *Sund*, *Counts, Shipley*, or *Pico*. Plaintiffs Complaint thus failed to state a claim and fails to assert standing; the Complaint should be dismissed.

### III. Crawford County is not a Conduit for the State of Arkansas

"The proper defendants to a facial challenge are the parties responsible for creating or enforcing the challenged law or policy." *Buchanan v. Alexander*, 919 F.3d 847, 854 (5th Cir. 2019); *see also Łujan*, 504 U.S. at 560  ("...there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.") (cleaned up). Where Plaintiffs mount a facial challenge to an unconstitutional statute passed by the legislature, the proper party defendant would be "the executive branch state officer charged with enforcing that statute." *Leclerc v. Webb*, 270 F. Supp. 2d 779, 794 (E.D. La. 2003), *aff'd*, 419 F.3d 405 (5th Cir. 2005).  Cities and counties in Arkansas "are creatures of the legislature," so they "have no inherent powers" but "have only the power bestowed upon them by statute or the Arkansas Constitution." *White Cnty. v. Cities of Judsonia, Kensett, and Pangburn*, 251 S.W.3d 275, 279 (Ark. 2007).

In arguing that Crawford County could or might engage in unconstitutional behavior, Plaintiffs conflate enforcement with implementation.  Although it is required to implement Act 372 when the act goes into effect, Crawford County has no power to enforce any of Act 372's provisions.  Enforcement is the act of compelling someone to obey a rule or law. It involves using authority or power to ensure compliance. Implementation, on the other hand, means to put a plan into action. It involves the practical steps taken to make something happen. Enforcement is typically used when there is a need to ensure compliance with a rule or law, while implement is

used when there is a need to put a plan or policy into action. Enforcing a rule or law means that there are consequences for not following it, such as fines, penalties, or legal action.  Crawford County invites the Court to take a close reading of Act 372. There is no enforcement mechanism reserved for counties. Instead, they are merely charged with implementing a plan to effect the Challenge Policy.  If a county does not implement the policy to the state's satisfaction, the state will likely sue to enjoin the county—thereby enforcing Act 372.

In sum, Crawford County is a creature of the state, but it did not draft Act 372 or sign Act 372 into law.  Act 372 imposes requirements on Arkansas counties—the counties must implement those policies.  Enforcement rests with the state.

WHEREFORE, Separate Defendants Crawford County, Arkansas, and County Judge Chris Keith, in his official capacity, pray that the claims against Crawford County in Plaintiffs' Complaint, *Doc. 2*, be dismissed with prejudice; that Defendants recover their fees, costs and disbursements incurred in defending this action; and for such other and further relief as the Court may deem just and proper.


Dated: July ___, 2023                          Respectfully Submitted,

**PPGMR Law, PLLC**

James D. Rankin III, AR Bar #93197
Forrest C. Stobaugh, AR Bar #2018186
Samuel S. McLelland, AR Bar #2020101
P.O. Box 3446
Little Rock, AR 72203
Telephone: (501) 603-9000
Facsimile: (501) 603-0556
E-mail: Jim@ppgmrlaw.com
        Forrest@ppgmrlaw.com
        Sam@ppgmrlaw.com

*Attorneys for Separate Defendants Crawford County, Arkansas, and Crawford County Judge Chris Keith, in his official capacity*