# In The Matter Of:
*Fayetteville Public Library, et al v.*
*Crawford County, Arkansas, et al*

*County Judge Christopher Lee Keith*
*March 26, 2024*
*CERTIFIED ORIGINAL/COPY*

*Michelle Satterfield, CCR*
*1955 Little River Drive*
*Conway, Arkansas 72034*
*(501)336-7414*
*Satterfield@conwaycorp.net*

Original File Judge Christopher Lee Keith.txt
Min-U-Script® with Word Index

1

```
 1        IN THE UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF ARKANSAS
 2                FAYETTEVILLE DIVISION

 3   FAYETTEVILLE PUBLIC LIBRARY, a political
     subdivision in the City of Fayetteville,
 4   State of Arkansas; EUREKA SPRINGS CARNEGIE
     PUBLIC LIBRARY; CENTRAL ARKANSAS LIBRARY
 5   SYSTEM; NATE COULTER; OLIVIA FARRELL;
     HAYDEN KIRBY;MIEL PARTAIN, in her own capacity
 6   and as parent and next friend of MADELINE PARTAIN;
     LETA CAPLINGER; ADAM WEBB;
 7   ARKANSAS LIBRARY ASSOCIATION; ADVOCATES FOR
     ALL ARKANSAS LIBRARIES; PEARL'S BOOKS, LLC;
 8   WORDSWORTH COMMUNITY BOOKSTORE, LLC, d/b/a
     WORDSWORTH BOOKS; AMERICAN BOOKSELLERS ASSOCIATION;
 9   ASSOCIATION OF AMERICAN PUBLISHERS,INC.; AUTHORS
     GUILD, INC.; COMIC BOOK LEGAL DEFENSE FUND
10   and FREEDOM TO READ FOUNDATION,          PLAINTIFFS

11   vs.                              NO. 5:23-CV-05086-TLB

12   CRAWFORD COUNTY, ARKANSAS; CHRIS KEITH, in his
     official capacity as Crawford County Judge;
13   TODD MURRAY; SONIA FONTICIELLA; DEVON HOLDER;
     MATT DURRETT; JEFF PHILLIPS; WILL JONES; TERESA
14   HOWELL; BEN HALE; CONNIE MITCHELL; DAN TURNER;
     JANA BRADFORD; FRANK SPAIN; TIM BLAIR; KYLE HUNTER;
15   DANIEL SHUE; JEFF ROGERS; DAVID ETHREDGE; TOM TATUM,
     II; DREW SMITH; REBECCA REED MCCOY; MICHELLE C.
16   LAWRENCE; DEBRA BUSCHMAN; TONY ROGERS; NATHAN SMITH;
     CAROL CREWS; KEVIN HOLMES; CHRIS WALTON; and CHUCK
17   GRAHAM, each and in his or her official capacity as a
     prosecuting attorney for the State of Arkansas, DEFENDANTS
18

19
                        ORAL DEPOSITION
20
                              OF
21
                JUDGE CHRISTOPHER LEE KEITH
22

23   ***** THE ABOVE-STYLED MATTER was reported by Michelle R.
     Satterfield, CCR, LS Certificate No. 570, at the Wahlmeier
24   Law Firm, located at 1101 Walnut, Van Buren, Arkansas,
     commencing on the 26th day of March 2024, at 2:33 p.m.
25   *****
```

```
 1                     I N D E X
 2       TOPIC                                              PAGE
 3    APPEARANCES                                           2-3
 4    STIPULATIONS                                            5
 5    WITNESS SWORN:  Judge Christopher Lee Keith             6
 6             Examination by Mr. Adams                       6
 7             Examination by Mr. Watson                     69
 8             Examination by Mr. McLelland                  74
 9             Further Examination by Mr. Adams              85
10             Further Examination by Mr. Watson             92
11             Further Examination by Mr. McLelland          94
12    WITNESS SIGNATURE PAGE                                 97
13    ERRATA SHEET                                           98
14    REPORTER'S CERTIFICATE                                 99
15                     E X H I B I T S
16    NUMBER                DESCRIPTION                    PAGE
17    Exhibit 1     Copy of Act 372                          40
18    Exhibit 5     Hamby Letter dated 11/10/22              15
19    Exhibit 8     Bates No. CrawfordCo_000068              62
20    Exhibit 9     Bates No. CrawfordCo_000067              87
21    Exhibit 10    Bates Nos. CrawfordCo_000023-000030      10
22    Exhibit 11    Bates Nos. CrawfordCo_000036-000039      38
              (COPIES OF EXHIBITS SCANNED INTO ETRANSCRIPT)
23
24
25
```

1   BY MR. WATSON:
2   Q    I just have a couple of questions following up.
3   Hopefully it will be very quick.
4   A    Yes, sir.
5   Q    First, I just want to quickly go back to yours and
6   Mr. Adams discussion of pornography in the library and
7   after that December meeting it was your understanding that
8   there might have been some materials that were
9   pornographic in the library.
10   A    Yes, sir.
11   Q    Did I understand you correctly that you weren't aware
12   of any specific book that met that description, though?
13   A    No, sir, I was not.
14   Q    Okay.  Next, you and Mr. Adams talked a lot about
15   [Exhibit 1](), which is Act 372, and some of the specifics of
16   how that operates.
17       First of all, Judge Keith, are you a lawyer?
18   A    No, sir.
19   Q    So any of your comments on the operation of the Act
20   were you giving a legal opinion?
21   A    No, sir.
22   Q    With that caveat, I'm going to do the same thing that
23   I am sort of saying doesn't matter.  So if you could pull
24   [Exhibit 1]() out and I just want to ask a couple of questions
25   about that.

CERTIFIED ORIGINAL/COPY

1  A    Okay.

2  Q    So Page 7 is where I'm going to start.

3  A    Okay.

4  Q    So in your conversation with Mr. Adams, there was a
5  lot of focus on the word appropriateness, which is Line 18
6  on Page 7.  It may not be a total surprise, since there's
7  a lawsuit, Mr. Adams and I have a slightly different
8  interpretation of how the statute works.

9       Since he took you through his interpretation, I just
10 want to take you through mine and see if that changes any
11 of your opinions.

12 A    Okay.

13 Q    So if we look at Subsection 8, it starts there on
14 Line 8, and I'll just read it.  So each county or
15 municipal library shall have a written policy to establish
16 guidelines for the selection, relocation, and retention of
17 physical materials that are available to the public.

18      Did I read that correctly?

19 A    Yes, sir.

20 Q    Then if you will skip to Page 8.  Once again, I'm
21 going to start on Line 10.  In between what I just read
22 and Line 10, though, tell me if this characterization is
23 correct.  If a person comes and challenges a book, the
24 appropriateness, then it goes eventually to a library
25 committee who will review that and then make a

CERTIFIED ORIGINAL/COPY

73

1  determination.
2      Is that more or less how you understand that?
3  A    Yes, sir.
4  Q    So starting at Line 10 on Page 8, it says that that
5  committee established under subdivision (c)(6)(A) of this
6  section shall determine if the material being challenged
7  meets the criteria of selection.
8      Do you see any other basis that the committee is
9  allowed to make its decision on, other than the criteria
10 of selection that the library established?
11 A    No, sir.
12             MS. BROWNSTEIN:  I object to the form.  I
13         mean, obviously it's not as you stated.
14             MR. MCLELLAND:  What was the question on
15         the table?  I knew you objected.
16             MR. WATSON:  So the question was do you
17         see, in the Act, any other basis for the
18         committee -- the library committee to, you know,
19         place a book, move a book from the general
20         circulation to what is later described as an
21         area prohibited from access for minors?
22             MS. BROWNSTEIN:  I object to form.  On the
23         other -- any other basis other than what?
24 BY MR. WATSON:
25 Q    Other than the criteria of selection in Line 10

```
 1   through 12 on Page 8.
 2   A    Are you waiting on me?
 3   Q    I think so.
 4   A    So what was the question?
 5   Q    So are there any other reasons that this library
 6   committee may move a material, other than what's in Lines
 7   10 through 12, being that the challenged material meets
 8   the criteria of selection that was established, as we just
 9   read, by the libraries in Subsection A?
10   A    No, sir.
11   Q    Okay.  So then on Page 9, Line 8, this is (12)(A).
12   This is the provision -- and I'll give you a moment to
13   read over that, but that's the part that there's an appeal
14   up to the Quorum Court.
15   A    Okay.
16   Q    Based on what we just discussed, what do you think
17   the basis of the review of the Quorum Court would be?
18   A    Well, I think it should be based on the same things,
19   the criteria of selection.
20   Q    So you don't think the Quorum Court could just
21   change, essentially, everything that happened before in
22   the process and go a totally different way?
23   A    No.
24   Q    And then my last question, you know, a lot of the
25   factual issues that we talked about with Ms. Grzymala and
```

1  the competing factions and all of that, did that predate
2  Act 372?
3  A    Yes.
4  Q    And this morning when we were deposing Ms. White, I
5  asked her if she thought all of these issues were
6  unrelated to Act 372 and she said yes.
7       Do you agree with that?
8  A    I do agree with that.
9  Q    That's all I have.  Thank you.
10              MR. MCLELLAND:  I need a break and then
11         I'll ask my questions.
12              (Brief recess was taken.)
13                       EXAMINATION
14 BY MR. MCLELLAND:
15 Q    Judge Keith, I've got a couple of follow-up questions
16 and then that may prompt some questions from the other
17 attorneys and then we're going to go round-robin until we
18 run out of questions.
19 A    Okay.
20 Q    I'm going to start back kind of towards the beginning
21 of you and Mr. Adams' conversation.
22      Is the Crawford County Quorum Court responsible for
23 implementing library policy?
24 A    No, sir.
25 Q    Okay.  In the creation of the Social Section, who

CERTIFIED ORIGINAL/COPY

1  selected the books that were moved to the Social Section?
2  A    Deidre Grzymala, which was the Library Director at
3  the time.
4  Q    Are you aware whether she made that -- or do you know
5  if she made those determinations for those books based
6  upon Act 372?
7  A    No, she did not.
8  Q    She did not?
9  A    She did not.
10 Q    Act 372 wasn't a factor in her decision?
11 A    Correct.
12 Q    Do you remember discussing the severance agreement
13 with Mr. Adams earlier that dealt with Deidre?
14 A    Yes.
15 Q    Okay.  Were you aware that at the time that
16 Deidre's -- were you aware that she was represented by an
17 attorney in those negotiations?
18 A    Yes.
19 Q    And did you participate in any of those negotiations
20 individually?
21 A    No.
22 Q    Okay.  Are you aware that in this case -- well,
23 you're aware in this case that you filed -- or your
24 attorneys filed an Affidavit on your behalf that stated
25 that Crawford County would implement Act 372.

100

1  C E R T I F I C A T E

2

3  STATE OF ARKANSAS }
   }
   COUNTY OF FAULKNER}

4

5  RE: ORAL DEPOSITION OF JUDGE CHRISTOPHER LEE KEITH

   I, Michelle R. Satterfield, CCR, a Notary Public in and
6  for Faulkner County, Arkansas, do hereby certify that the
   transcript of the foregoing deposition accurately reflects
7  the testimony given; and that the foregoing was
   transcribed by me, or under my supervision, on my Eclipse
8  computerized transcription system from my machine
   shorthand notes taken at the time and place set out on the
9  caption hereto, the witness having been duly cautioned and
   sworn, or affirmed, to tell the truth, the whole truth and
10 nothing but the truth.
   I FURTHER CERTIFY that I am neither counsel for, related
11 to, nor employed by any of the parties to the action in
   which this proceeding was taken; and, further that I am
12 not a relative or employee of any attorney or counsel
   employed by the parties hereto, nor financially
13 interested, or otherwise, in the outcome of this action.
   In accordance with the Arkansas Rules of Civil Procedure,
14 Rule 30(e), review of the foregoing transcript by the
   witness was not requested by the deponent or any party
15 thereto.
   GIVEN UNDER MY HAND AND SEAL OF OFFICE on this the 31st
16 day of March 2024.

17

18  

19

20

21  _____
    Michelle R. Satterfield, CCR
22  LS Certificate No. 570
    Notary Public in and for
    Faulkner County, Arkansas

23

24

25