# In The Matter Of:
*Fayetteville Public Library, et al v.*
*Crawford County, Arkansas, et al*

---

*Leta Jo Caplinger, Esq.*
*December 11, 2023*
*CERTIFIED COPY*

---

*Michelle Satterfield, CCR*
*1955 Little River Drive*
*Conway, Arkansas  72034*
*(501)336-7414*
*Satterfield@conwaycorp.net*

Original File Leta Jo Caplinger, Esq..txt
Min-U-Script® with Word Index

```
         IN THE UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF ARKANSAS
                  FAYETTEVILLE DIVISION

FAYETTEVILLE PUBLIC LIBRARY, a political
subdivision in the City of Fayetteville,
State of Arkansas; EUREKA SPRINGS CARNEGIE
PUBLIC LIBRARY; CENTRAL ARKANSAS LIBRARY
SYSTEM; NATE COULTER; OLIVIA FARRELL;
JENNIE KIRBY, as parent and next friend of
HAYDEN KIRBY; LETA CAPLINGER; ADAM WEBB;
ARKANSAS LIBRARY ASSOCIATION; ADVOCATES FOR
ALL ARKANSAS LIBRARIES; PEARLS BOOKS, LLC,
d/b/a WORDSWORTH BOOKS; AMERICAN BOOKSELLERS
ASSOCIATION; ASSOCIATION OF AMERICAN PUBLISHERS,
INC.; COMIC BOOK LEGAL DEFENSE FUND; FREEDOM TO
READ FOUNDATION,                               PLAINTIFFS

vs.                             NO. 5:23-CV-05086-TLB

CRAWFORD COUNTY, ARKANSAS; CHRIS KEITH, in his
official capacity as Crawford County Judge;
TODD MURRAY; SONIA FONTICIELLA; DEVON HOLDER;
MATT DURRETT; JEFF PHILLIPS; WILL JONES; TERESA
HOWELL; BEN HALE; CONNIE MITCHELL; DAN TURNER;
JANA BRADFORD; FRANK SPAIN; TIM BLAIR; KYLE HUNTER;
DANIEL SHUE; JEFF ROGERS; DAVID ETHREDGE; TOM TATUM,
II; DREW SMITH; REBECCA REED MCCOY; MICHELLE C.
LAWRENCE; DEBRA BUSCHMAN; TONY ROGERS; NATHAN SMITH;
CAROL CREWS; KEVIN HOLMES; CHRIS WALTON; and CHUCK
GRAHAM, each and in his or her official capacity as a
prosecuting attorney for the State of Arkansas,  DEFENDANTS


                      ORAL DEPOSITION

                           OF

                  LETA JO CAPLINGER, ESQ.



***** THE ABOVE-STYLED MATTER was reported by Michelle R.
Satterfield, CCR, LS Certificate No. 570, at the Wahlmeier
Law Firm, located at 1101 Walnut, Van Buren, Arkansas,
commencing on the 11th day of December 2023, at 9:08 a.m.
*****
```

I N D E X

| TOPIC | PAGE |
|---|---|
| APPEARANCES | 2-3 |
| STIPULATIONS | 5 |
| WITNESS SWORN: Leta Jo Caplinger, Esq. | 6 |
|     Examination by Mr. McLelland | 8 |
|     Examination by Mr. Watson | 46 |
|     Examination by Ms. Brownstein | 65 |
|     Examination by Mr. Adams | 68 |
|     Examination by Ms. Parker | 71 |
|     Further Examination by Mr. McLelland | 71,80 |
|     Further Examination by Mr. Watson | 75 |
| REPORTER'S CERTIFICATE | 82 |

E X H I B I T S

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| Deft's 1 | Copy of Complaint | 21 |
| Deft's 2 | Copy of Senate Bill 81 | 32 |
| Deft's 3 | Bates Nos. CrawfordCo_000023-000030 | 39 |
| Deft's 4 | Bates Nos. CrawfordCo_000003-000004 | 42 |

(COPIES OF EXHIBITS SCANNED INTO ETRANSCRIPT)

* * * *

1   A    Yes.

2   Q    Okay.  And, also, with bookstores, you mentioned that

3 they would have to remodel.  You no longer work at a

4 bookstore, correct?

5   A    Uh-huh.

6   Q    Or the Books-A-Million specifically that you had

7 mentioned?

8   A    No.

9   Q    So that's just your best guess about what they would

10 have to do?

11           MS. BROWNSTEIN:  I object to the form of

12        the question.  You can answer.

13   A    Yes.

14   Q    Okay.

15   A    Based upon my experience in that industry and

16 retailing.

17   Q    Have you spoken to anyone at Books-A-Million?

18   A    I have not.

19   Q    Okay.  You also mentioned that you believe that

20 Section 1 might inhibit your ability to access certain

21 books, and then later on you said -- you were talking

22 about having to remodel and move things.  Are those two

23 connected?

24   A    Yes, they are connected.  If, based on fear and

25 trying to avoid controversy, the libraries choose the

    option of moving those sections to another room or even a locked area, then that would impede my access to those books.

    I would have to ask the librarian for access, which, again, it -- one, I don't like having to ask the librarian for access to books that are not wrong for me to look at, no matter what else is in there.

    People's understanding, because unfortunately there's been a great deal of push in the community that somehow these books are obscene and that they are going to cause people to harm children and I have not found that to be accurate, but that is the public perception.

Q    So you would still have access to those books, though, if things were rearranged like you were describing?

A    I hope so.

Q    Okay. So I'm just trying to understand that, because at first you said it would impede your access, but now you've said you'd still have access to it?

A    Technically I would have access. The difficulty of that access, I do not know what it would be.

Q    Okay. So it's just a guess at this point?

A    Yes.

Q    Okay. I also want to come back to the statement you said that from what you've been able to tell, these books

1  and materials, whatever, are not obscene, right?
2  A    Yes.
3  Q    So I'm not asking for your opinion about what it
4  means, but you have had a chance to look over Section 1, I
5  believe, today or in the past?
6  A    Yes.
7  Q    Are there any books, that you are aware of, that you
8  wanted to have access to, that would fall under Section 1?
9  A    I don't know.
10 Q    Okay.  Are there any other materials you might check
11 out at a library that fall under Section 1?
12 A    I don't know.
13 Q    Okay.  And would any books from bookstores that you
14 might want to purchase fall under Section 1?
15 A    I don't know.
16 Q    I'm just making sure I check all the boxes.  And
17 other materials you might purchase from a bookstore that
18 would fall under Section 1?
19 A    I don't know.
20 Q    So as we sit here today, you're unaware of anything
21 that you would want to access that is regulated by Section
22 1?
23 A    The problem is application by those in charge of
24 providing those items.
25 Q    So it's not the law itself, it is just how that may

CERTIFIED COPY

56

```
 1  be applied?
 2  A    It's both.  The law exists, then people try to apply
 3  it.  So if the law didn't exist, there wouldn't be a
 4  problem with the application.
 5  Q    Fair enough.  I'm just making sure I understand.  But
 6  you just told me that there's nothing you know of that you
 7  want to access that falls under Section 1.  So I'm just
 8  confused about how the law is a problem, as opposed to the
 9  application.  I'm just trying to figure that one out.
10  A    The reason I do not know, is because if this is
11  interpreted widely, they might choose books, even classic
12  books, that are of a very mature subject matter, shall we
13  say, that I might choose to want to read at some point in
14  the future.  You know, I don't know what I'm going to want
15  to read next year.
16  Q    And when you say "they," who do you mean?
17  A    The purchasers of such books or the library personnel
18  who choose such books.
19  Q    Okay.  And I think that's all I'll ask about
20  Section 1.  I promise I'm getting close to wrapping up.
21  A    You're fine.
22  Q    I'd like to, very quickly, move on to Section 5,
23  which is the section that's certain procedures that
24  libraries must adopt.  Are you aware of any current
25  requirements regarding library challenges to books that
```

1  exist?
2  A    Yes, under -- the library has a policy to allow
3  patrons to challenge a book and that policy ends with the
4  librarian's decision.  So it is not as complicated as it
5  would be under this statute if the statute went into
6  effect.
7       The statute also brings in people who are not
8  qualified, in my opinion, to make a decision about these
9  books by referring it to the city directors and the quorum
10 court.  They have limited time, and certainly for the
11 quorum court, it's not in their job description in any
12 way, shape or form, whether they have adequate education
13 to make those decisions, and the political implications of
14 the pressure that could be placed upon them to not return
15 a book.
16      I believe that's why the statute has been written
17 this way, because it's putting public pressure on the
18 elected officials.  Otherwise there's no reason for it to
19 be that way.  It's always been a judicial question.  It is
20 a jury question whether a book is obscene or not.
21      This changes all of that and puts people who have far
22 better things to do, as far as the public's interest to
23 take care of, rather than completely reading any book that
24 the person who's challenging it does not accept the
25 librarian's decision.

                    C E R T I F I C A T E

STATE OF ARKANSAS   }
                    }
COUNTY OF FAULKNER  }

RE:   ORAL DEPOSITION OF LETA JO CAPLINGER, ESQ.

I, Michelle R. Satterfield, CCR, a Notary Public in and for Faulkner County, Arkansas, do hereby certify that the transcript of the foregoing deposition accurately reflects the testimony given; and that the foregoing was transcribed by me, or under my supervision, on my Eclipse computerized transcription system from my machine shorthand notes taken at the time and place set out on the caption hereto, the witness having been duly cautioned and sworn, or affirmed, to tell the truth, the whole truth and nothing but the truth.

I FURTHER CERTIFY that I am neither counsel for, related to, nor employed by any of the parties to the action in which this proceeding was taken; and, further that I am not a relative or employee of any attorney or counsel employed by the parties hereto, nor financially interested, or otherwise, in the outcome of this action.

In accordance with the Arkansas Rules of Civil Procedure, Rule 30(e), review of the foregoing transcript by the witness was not requested by the deponent or any party thereto.

GIVEN UNDER MY HAND AND SEAL OF OFFICE on this the 27th day of December 2023.

_____
Michelle R. Satterfield, CCR
LS Certificate No. 570
Notary Public in and for
Faulkner County, Arkansas