IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**FAYETTEVILLE PUBLIC LIBRARY**, a political subdivision
in the City of Fayetteville, State of Arkansas; et al.                                    Plaintiffs

Case No. 5:23-cv-05086-TLB

**CRAWFORD COUNTY, ARKANSAS**; et al.                                                    Defendants

**THE PROSECUTING ATTORNEYS'
STATEMENT OF UNDISPUTED MATERIAL FACTS**

The Prosecuting Attorneys, for their statement of undisputed material facts pursuant to Local Rule 56.1, state:

1. Arkansas Act 372 of 2023 became effective on August 1, 2023. *See* Ark. Att'y Gen. Op. 2023-031 (calculating the effective date of acts without an emergency clause that were enacted by the 2023 Regular Session of the Arkansas General Assembly).

2. Before August 1, 2023, the Court preliminarily enjoined Sections 1 and 5 of Act 372. Doc. 53.

## Section 1

3. In short, Section 1 makes it unlawful for a person to furnish to a minor an item that is obscene to minors. Ark. Code Ann. § 5-27-212(b).

4. Under the statute, whatever is "harmful to minors," as defined, is obscenity for minors. Ark. Code Ann. § 5-27-212(a)(1), (b).

5. The Central Arkansas Library System already applies a "harmful to minors" standard when it provides Internet services. Ex. 1, at 78:17–19 (Coulter Depo.).

6. CALS applies that standard in the same way it alleges is unconstitutional here—that is, by treating all minors as a single class. Ex. 1, at 87:4–8 (Coulter Depo.).

7. Section 1's "variable obscenity" formulation is almost identical to two laws upheld by the U.S. Supreme Court and the Eighth Circuit. *Ginsberg v. New York*, 390 U.S. 629 (1968); *Upper Midwest Bookseller Ass'n v. City of Minneapolis*, 780 F.2d 1389 (8th Cir. 1985).

8. Arkansas has a legitimate interest in protecting children from items that are obscene as to them. *E.g.*, *Ginsberg*, 390 U.S. at 640.

9. The Plaintiffs have not identified any items that they believe are "harmful to minors," as defined for Section 1, that they possess, want to furnish to children, or want to possess. *See* Ex. 11, at 4–6 (CALS Written Disc. Resp.); Ex. 12, at 1–2 (FPL Written Disc. Resp.); Ex. 13, at 4–5 (ESCPL Written Disc. Resp.); Ex. 14, at 6, 8 (Wordsworth Written Disc. Resp.); Ex. 15, at 6–8 (Pearl's Written Disc. Resp.); Ex. 16, at 6–9 (FTRF Written Disc. Resp.); Ex. 17, at 6–9 (CBLDF Written Disc. Resp.); Ex. 18, at 6–8 (Authors Guild Written Disc. Resp.); Ex. 19, at 6–9 (ABA Written Disc. Resp.); Ex. 20, at 6–9 (AAP Written Disc. Resp.); Ex. 21, at 4–6 (ArLA Written Disc. Resp.); Ex. 22, at 3–4 (Webb Written Disc. Resp.); Ex. 23, at 5–6 (AAAL Written Disc. Resp.); Ex. 24, at 2 (Farrell Written Disc. Resp.); Ex. 25, at 2 (Miel Partain Written Disc. Resp.); Ex. 26, at 2 (Madeline Partain Written Disc. Resp.); Ex. 27, at 2 (Caplinger Written Disc. Resp.).

10. In fact, the Patron Plaintiffs have expressly rejected knowing of any item covered by Section 1 that they want to view. Ex. 8, at 48:11–22 (Miel Partain Depo.); Ex. 9, at 34:19–35:1 (Madeline Partain Depo.); Ex. 10, at 56:7–15 (Caplinger Depo.).

11. Moreover, the adult Patron Plaintiffs would still be able to view any item they wanted. *See* Ex. 10, at 54:20 (Caplinger Depo.).

## Section 5

12. Section 5 requires public libraries to establish criteria for the selection of physical materials in their collections. Ark. Code Ann. § 13-2-106(a).

13. Section 5 does not provide any requirements for the criteria of selection. *Id.*

14. Even without Act 372, public libraries have already established criteria of selection. *See* Ex. 2, at 1–4 (CALS Production); Ex. 3, at 1–15 (FPL Production); Ex. 4, at 1–3 (ESCPL Production); Ex. 5, at 1–4 (Webb Production); Ex. 1, at 42:12–14 (Coulter Depo.).

15. The Library Plaintiffs' current policies, which are unrelated to Act 372, explicitly allow viewpoint and content discrimination. *See* Ex. 3, at 2 (FPL Production) (allowing librarians to deliberately, instead of "automatically," "include[] or exclude" materials based on "[t]he race religion, nationality, gender, gender expression, sexual orientation, or political views of an author; the use of frank or coarse language; the controversial content of an item; or the endorsement or disapproval of an individual or group in the community"); *id.* at 4 (allowing ""[i]ndividual bias and interest" to be a factor in removing materials from the collection, so long as the bias or interest does not "dominate" the removal decision); Ex. 5, at 3 (Webb Production) (explicitly discrimination against religious minorities by "exclud[ing] [materials] from the collections" if the material "is of a religious nature not of general interest").

16. Section 5 also requires public libraries to establish a policy by which certain people can challenge materials in the library's collection. Ark. Code Ann. § 13-2-106(b).

17. Section 5 requires the challenge policies to "provide, at a minimum," certain procedural requirements, and public libraries are free to provide more procedure than Section 5 requires. *Id.* § 13-2-106(c).

18. Again, this is something libraries already do, at their discretion. *See* Ex. 2, at 5 (CALS Production); Ex. 3, at 16–17 (FPL Production); Ex. 4, at 4–5 (ESCPL Production); Ex. 5,

at 6–8 (Webb Production); Ex. 1, at 54:5–7 (Coulter Depo.); *see also* Ex. 6, at 106:13–15 (White Depo.).

19. Under Section 5, a challenge to material can be successful only if the material does not meet the library's criteria of selection. Ark. Code Ann. § 13-2-106(c)(7).

20. The Plaintiffs favor this interpretation. Ex. 1, at 61:24–64:11 (Coulter Depo.).

21. The Library Plaintiffs' current challenge procedures are similar to Section 5's minimum requirements. *See* Ex. 3, at 16–17 (FPL Production); Ex. 5, at 6–7 (Webb Production); Ex. 2, at 5 (CALS Production); Ex. 4, at 4–5 (ESCPL Production).

22. The Plaintiffs are unaware of anyone who intends to challenge material because of Section 5. Ex. 11, at 7 (CALS Written Disc. Resp.); Ex. 12, at 3 (FPL Written Discovery Disc. Resp.); Ex. 21, at 7 (ArLA Written Disc. Resp.); Ex. 22, at 6 (Webb Written Disc. Resp.); Ex. 23, at 8 (AAAL Written Disc. Resp.); Ex. 1, at 120:2–5 (Coulter Depo.).

23. Although the Library Plaintiffs challenge the word "appropriate" in Section 5 as vague, their own policies use the word "appropriate," or its derivatives, 27 times. Ex. 2, at 1, 3, 6, 7, 15, 18, 19, 23, 25 (CALS Production); Ex. 3, at 3, 4, 5, 10, 17, 19, 20 (FPL Production); Ex. 4, at 6, 8 (ESCPL Production).

## Nature of Public Libraries

24. Public libraries are "governmental agenc[ies]" that engage in "government[al] actions." Ex. 5, at 34 (Webb Production); *see also* Ex. 6, at 101:4 (White Depo.) (calling the Crawford County Public Library System "a county department").

25. Public-library employees are "government employee[s]." Ex. 1, at 34:23–35:12 (Coulter Depo.).

26. The Library Plaintiffs have self-identified as a "political subdivision," Doc. 75, at ¶ 12; "a municipal public library," *id.* at ¶ 13; and "a body . . . politic," *id.* ¶ 14.

27. The governing bodies of the municipalities creating libraries hold control over the library. *See* Ex. 1, at 158:2–6 (Coulter Depo.) (explaining that the CALS Library Board "serves at the pleasure of the appointing entities"—that is, counties and cities); Ex. 4, at 31 (ESCPL Production) (placing the Madison County and Carrol County Quorum Courts at the pinnacle of the organizational chart).

28. Public libraries are publicly funded. Ex. 1, at 28:20–22 (Coulter Depo.).

29. Public libraries are subject to constitutional restraints on government entities and must comply with the Arkansas Freedom of Information Act. Ex. 1, at 28:22–23, 33:12 (Coulter Depo.).

## Crawford County

30. The events in Crawford County alleged in the Plaintiffs' complaint predate Act 372's introduction to the General Assembly. *See* Ex. 7, at 74:24–75:3 (Keith Depo.).

31. The events in Crawford County alleged in the Plaintiffs' complaint have nothing to do with Act 372. Ex. 7, at 75:4–8, 80:15–17, 96:20–25 (Keith Depo.); Ex. 6, at 107:3–6 (White Depo.).

        Respectfully submitted,

        TIM GRIFFIN
        Attorney General

By:    Noah P. Watson
        Ark. Bar No. 2020251
        Deputy Attorney General

        John Payne
        Ark. Bar No. 97097
        Deputy Attorney General

        Christine A. Cryer
        Ark. Bar No. 2001082
        Senior Assistant Attorney General

        Arkansas Attorney General's Office
        323 Center Street, Suite 200
        Little Rock, Arkansas 72201
        (501) 682-1019
        (501) 682-2591 fax
        noah.watson@arkansasag.gov
        john.payne@arkansasag.gov
        christine.cryer@arkansasag.gov

        *Attorneys for Defendants*