IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

FAYETTEVILLE PUBLIC LIBRARY, et al.　　　　　　　　　PLAINTIFFS

v.　　　　　　　　　　　　　NO. 5:23-cv-5086

CRAWFORD COUNTY, ARKANSAS, et al.　　　　　　　　　DEFENDANTS

## DECLARATION OF JUDY CALHOUN

I, Judy Calhoun, hereby declare under penalty of perjury as prescribed in 28 U.S.C. § 1746:

1. The facts contained in this declaration are based on my personal knowledge and I can testify competently to them if called upon to do so. I submit this sworn declaration in support of Plaintiffs' Motion for Summary Judgment.

2. I am the Regional Director of the Southeast Arkansas Regional Library (SEARL), which is a regional public library system serving five counties across nine regional library branches across Southeast Arkansas. I have served in this role since 2012. Prior to Regional Director, I served as Assistant Director of SEARL from 2008 until 2012. I have worked at SEARL for 31 years.

3. I am also a member of the Arkansas Library Association (ArLA), a past president of ArLA, and a current member of ArLA's conference committee. I have also previously served as the president of the Association for Small & Rural Libraries.

4. I hold a master's degree in Library Science from Florida State University and have more than 30 years of professional experience in that field.

5. As Regional Director of SEARL, I oversee the operation of our nine library branches across five counties: Dermott, Dumas, Eudora, Hermitage, Lake Village, McGehee,

Monticello, Star City, and Warren. In addition, SEARL services twelve nursing homes and assisted living facilities, and operates four "little free libraries."

6. SEARL serves a predominantly rural population in Southeast Arkansas. The largest town served by SEARL is Monticello, with a population of around 8,400. Hermitage is our smallest town, with a population of under 600.

7. To the best of my knowledge, SEARL's service area lacks a single bookstore; for one of our customers to access a bookstore, they would need to drive over an hour and a half to a larger city like Little Rock or Monroe. As a result, SEARL's collection is a crucial lifeline in our region for accessing materials to read for pleasure or for education or school.

8. In addition to providing access to books to a population that is far from any similar resources, SEARL's libraries also serve as a crucial access point for residents in our service area to use computers. Many residents in SEARL's extremely rural service area have little-to-minimal access to computers and rely on SEARL when they need access to computers for work, life, or school.

9. The Eudora branch, for example, is a single, long rectangular room with computers roughly in the center of it. The entire branch is roughly 1,500 square feet in area, and the computers are frequently used by students completing schoolwork.

10. The libraries in SEARL carry books and other materials in their general collections that are constitutionally protected for adults and older minors but may be considered by some to be harmful to younger minors, for instance, because they contain some description of sexual conduct. If those books are maintained in our general collection, they could be a basis for criminal liability for me and my staff under Section 1 of Act 372 of 2023.

11.     Similarly, libraries in SEARL also have books in circulation that people will argue are inappropriate and that will be challenged under Section 5 of Act 372 of 2023. Indeed, if Act 372 goes into effect, I expect that some of these disfavored books will be challenged repeatedly, which will strain our limited resources.

12.     Collections in SEARL branches are maintained on open shelves and the books are organized by type of book and subject matter, so that patrons can easily find books of interest through them, including by browsing, without requiring assistance from a library staff member. Our patrons range in age from toddlers to the elderly.

13.     SEARL's libraries are all quite small, with open floor plans and minimal extra space or rooms. The smallest SEARL library, for example, is in Hermitage, and I estimate the entire area of the branch to be 800 square feet.

14.     SEARL does not have the financial or staff resources to preemptively review its entire collection in order to identify all of the material that might put us at risk of criminal liability under Section 1 of Act 372 if it is made "available" to a minor, or that might draw a challenge under Section 5 of Act 372, based on its "appropriateness" for inclusion in our general collection. That sort of review would require our staff to, at a minimum, review each item in our collection closely enough to have an understanding of the content of the items and context in which any sensitive content is presented to the reader or viewer.

15. Even if SEARL had the resources to do that kind of exhaustive review, we would still need to segregate any books identified to an area where they are not "available" to minors under Section 1 and "not accessible to minors" under Section 5. That suggests to me that SEARL would need to create a secure, physically separate space in each of our nine library branches. None of SEARL's libraries currently have that sort of physically secure, segregated space. While SEARL organizes its books by section and actively seeks to keep the children's sections distanced within the libraries from sections that might contain inappropriate material, SEARL does not have physically segregated collections within its spaces and does not have staff resources to designate someone to monitor where our patrons are browsing.

16. Substantial changes to the physical layout of SEARL libraries (for example, creating new rooms) are extremely challenging to implement. SEARL does not own the buildings in which its libraries are housed, SEARL leases space from cities and counties in Southeast Arkansas. Any changes to the physical space of SEARL's libraries would need to be implemented by those cities and counties, not SEARL. Even if SEARL's landlords were willing to undertake construction to reconfigure SEARL's spaces, the costs would likely be prohibitive, either for the local budgets or for SEARL in the event local governments sought to pass them on to us.

17. Even if SEARL had the resources and control over its facilities to create new, fully-segregated facilities, creating the kinds of adults-only sections that Sections 1 and 5 of Act 372 require violates the basic purpose of a library to create a welcoming and inviting environment, where readers can freely peruse a wide range of offerings in the collection. Adults-only sections instead create stigma and embarrassment and may deter patrons from accessing materials they are interested in or need, such as books on their physical or mental health.

18. Complying with Sections 1 and 5 of Act 372 leaves SEARL with no good choices. Without the resources and flexibility to redesign our physical spaces to segregate materials, SEARL's librarians will have to choose between facing potential criminal liability under Act 372 or denying minors access to our libraries entirely. The effects of Act 372 on small and rural libraries will be very deeply felt.

19. Moreover, SEARL branches are frequently visited by families that include children too young to be left unattended while a parent or older sibling peruses our collections. SEARL requires that children under eight years old have an adult chaperone. In such a case, the chaperoning adult would be unable to access books segregated in an area of the library where the younger minor is prohibited from entering.

20. Based on my professional experience as a librarian and library administrator, and my understanding of the community that is served by SEARL, I anticipate that families will be less inclined to visit SEARL branches if Act 372 prevents them from perusing books together. Similarly, I believe that adult visitors to SEARL branches will generally be less inclined to peruse any books made available only in an adult-only section, as those books will have a stigma attached and will be less attractive to many readers for that reason.

I declare under penalty of perjury that the foregoing is true and correct.

Executed May 14, 2024 in Monticello, Arkansas.

*Judy Calhoun*
Judy Calhoun
Regional Director
Southeast Arkansas Regional Library System