IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

FAYETTEVILLE PUBLIC LIBRARY, et al.                    PLAINTIFFS

v.                                  NO. 5:23-cv-5086

CRAWFORD COUNTY, ARKANSAS, et al.                    DEFENDANTS

## DECLARATION OF CAROL COFFEY

I, Carol Coffey, hereby declare under penalty of perjury as prescribed in 28 U.S.C. § 1746:

1. The facts contained in this declaration are based on my personal knowledge and I can testify competently to them if called upon to do so. I submit this sworn declaration in support of Plaintiffs' motion for summary judgment.

2. I am currently the Past-President of the Arkansas Library Association (ArLA), which is an Arkansas-based nonprofit corporation formed under Section 501(c)(3) of the Internal Revenue Code. I served as the President of ArLA in 2023.

3. I hold a Master's Degree in Library & Information Science from Louisiana State University, which is a program accredited by the American Library Association (ALA). I have more than 30 years of professional experience in that field. For the past 27 years, I have worked in various capacities for the Central Arkansas Library System, where I am currently employed as the Strategic Data Manager.

4. I am familiar with the American Library Association's (ALA) Code of Ethics and Library Bill of Rights and the manner in which the principles described in those documents inform how public libraries manage and display of materials in its collection. Broadly speaking, based on my experience and training, I believe that public libraries should take into account the various

1

interests and needs of the patrons the libraries serve. That means that libraries should try to have materials in their collections that represent the broad range of human experience and reflect the diversity of the region and the world. Works should not be excluded or included in the collection based solely on subject matter or on political, religious, or ideological grounds.

5. ArLA is a professional association for libraries and individuals who work in them throughout Arkansas. Its mission is to further the professional development of all library staff members; to foster communication and cooperation among librarians, trustees, and friends of libraries; to increase the visibility of libraries among the general public and funding agencies; and to serve as an advocate for librarians and libraries.

6. ArLA has more than 400 members, including both individuals and institutions. ArLA's individual members include those who are employed full- or part-time by a library or library-related institution. ArLA's institutional members include public libraries.

7. ArLA's members are physically located across Arkansas. ArLA has at least one active and dues-paying member in 58 of 75 counties in Arkansas, including Crawford County, and has at least one active member in all but one judicial circuit in the state.[1]

---

[1] In a prior declaration, I stated that ArLA has an active member in 56 counties and in every judicial circuit in Arkansas. *See* Declaration of Carol Coffey (Doc. 22-4) at ¶ 7. After reviewing ArLA's membership roster, however, I learned that ArLA has an active member in 58 counties but does not currently have an active member in the Eleventh Judicial District – East. ArLA had an active member in the Eleventh Judicial District – East as recently as 2022 and I expect that ArLA will have active members in that area in the future.

**Act 372 Causes Irreparable Injury to ArLA's Members**

8. Act 372 causes irreparable injury to the interests of ArLA's members in the following ways:

9. ArLA suffers irreparable injury to the interests of its members because many of its member libraries or its member librarians' workplaces carry materials in their general collections that, though constitutionally protected, may be considered harmful to younger minors. If those libraries continue to include those materials in their main collections, their staff could be subjected to the threat of prosecution under Section 1 of Act 372 or might have to contend with repeated challenges to the appropriateness of those materials under Section 5 of Act 372.

10. Many of our member libraries have books that have been inaccurately and unfairly described as containing material that is obscene or otherwise inappropriate for inclusion in a public library. The following list contains just some of the books that appear in the main collections of libraries that are ArLA members, or at which ArLA members work, and have been scrutinized or unfairly characterized as containing material that is legally obscene or otherwise inappropriate for inclusion in a public library, including by a member of the State Library Board.[2] In reality, these books are not obscene and are constitutionally protected for older minors and adults even if some have content that could be deemed inappropriate for some younger, less mature minors.

- "It's Perfectly Normal: Changing Bodies, Growing Up, Sex, and Sexual Health" by Robie Harris
- "Sex is a Funny Word" by Cory Silverberg
- "This Book Is Gay" by Juno Dawson
- "Out of Darkness" by Ashley Hope Perez
- "All Boys Aren't Blue" by George M. Johnson
- "Lawn Boy" by Jonathan Evison

---

[2] Debra Hale-Shelton, *Jason Rapert Crowns Himself the 'Conscience of the State Library Board,' Wants Security at Meetings*, Ark. Times (Feb. 14, 2024), https://arktimes.com/arkansas-blog/2024/02/14/jason-rapert-calls-himself-the-conscience-of-the-state-library-board-and-wants-security-at-board-meetings.

- "Jack of Hearts" by L.C. Rosen
- "Lucky" by Alice Sebold
- "A Court of Mist and Fury" by Sarah J. Maas
- "Gender Queer" by Maia Kobabe
- "Milk and Honey" by Rupi Kaur
- "The Handmaid's Tale: A Graphic Novel" by Margaret Atwood
- "What Girls Are Made Of" by Elana Arnold
- "The Perks of Being a Wallflower" by Stephen Chbosky
- "The Nowhere Girls" by Amy Reed
- "The Glass Castle" by Jeannette Walls
- "Fallout" by Ellen Hopkins
- "What We Saw" by Aaron Hartzler
- "The Exact Opposite of Okay" by Laura Steven
- "Asking For It" by Louise O'Neill

11. I expect that some of these books will, at a minimum, be the subject of repeated, burdensome challenges under Act 372. Indeed, a number of our member-libraries have already received demands that these books, and others dealing with similar themes, be removed from their collections; and at least one other library has faced backlash for featuring a gay pride-themed display, resulting in a major loss of funding. The challenge procedure required by Section 5 will surely cause demands to remove or suppress such materials to increase.

12. Most of the libraries that are members of ArLA or at which ArLA members work serve small communities. I am aware, because of ArLA's work serving and supporting these members, that these libraries often maintain their collections on open shelves, which are organized by type of book and subject matter and designed so that patrons may locate materials of interest without requiring assistance from library staff. These libraries serve patrons that range in age from toddlers to the elderly.

13. Many of these libraries do not have the financial resources or staffing to do a review of their entire collections in order to identify all material that might be deemed harmful to a younger minor and would need to be physically segregated away from the general collection under

Act 372. That kind of effort would require library staff to review each item in the library's collection closely enough to have an understanding of the content and context in which that content is presented to the reader or viewer.

14. Similarly, many of these libraries have open floor plans and would need to restructure their library or add some walls and doors in order to securely segregate materials that might violate Section 1, if accessed by younger minors. These libraries do not have the physical space or financial resources to undertake that kind of project.

15. For instance, Yell County Library in Danville, Arkansas is one of the smaller library branches represented among ArLA's membership, and it is the smallest in the Arkansas River Valley Regional Library System. Yell County Library's space already limits its ability to do basic programming for its patrons, so it certainly does not have space to create a secure, adults-only area. *See* Exhibit A (photos of Yell County Library).

16. Franklin County Library in Ozark, Arkansas is contained on a single floor that has an open layout with no separate space from the main collection and no interior walls to create division. *See* Exhibit B (photos depicting Franklin County Library).

17. Logan County Library in Booneville, Arkansas is similarly situated and also has a single-floor open-layout, no space that is separate from the main collection, and no interior walls to create division. *See* Exhibit C (Logan County Library).

18. Even if these libraries had the resources to restructure their physical layout, doing so would violate the basic purpose of these libraries: creating a welcoming and inviting environment, where readers can freely peruse the curated offerings in their library's collection and discover materials of interest.

19. I think most libraries in Arkansas will struggle to create the kind of secure, adult-only spaces that seem necessary to avoid criminal liability under Section 1 of Act 372 and are required by Section 5 of Act 372. That is certainly true for ArLA's member libraries.

20. Given that reality, ArLA's member libraries feel like Act 372 forces them to choose between exposing their employees to criminal liability, denying adults and older minors access to material that is appropriate for their age and reading level, or denying children access to the library entirely. Those options are not acceptable to ArLA's members.

21. Many of ArLA's library-members also have only one copy of books that are likely to be challenged under Section 5 of Act 372. For example, I am aware that North Little Rock Public Library only has one copy of the sex-education book "It's Perfectly Normal" by Robie Harris, which has been repeatedly challenged and banned elsewhere. If a library only has one copy of a book that is challenged, it will need to either remove the book from circulation in order to review the book and respond to the challenge or pay for an additional copy of the challenged book. That means that, during the review required by Section 5, libraries with only one copy of challenged books will be forced to choose between paying to acquire additional copies or allowing the submission of a challenge to render the book unavailable to their patrons.

22. ArLA's member-libraries are also frequently visited by families that include children too young to be left unattended while a parent or older sibling peruse, either as a matter of library policy or parental judgment. In those cases, the chaperoning adult or older minor would be unable to access books segregated in an area of the library where the younger minor is prohibited from entering. They could browse the children's section with the younger minor but might not be able to access materials of interest to them.

23. Based on my work with ArLA's members, and in my professional experience as a librarian and library administrator, families will be less inclined to visit ArLA member-libraries if Act 372 prevents them from perusing books together. Similarly, I believe that adult visitors to ArLA member-libraries will generally be less inclined to peruse any books made available only in an adults-only section, as those books have a stigma attached and are less attractive to many readers for that reason.

**Act 372 Causes Injury to ArLA's Organizational Interests**

24. Act 372 also causes irreparable injury to ArLA's organizational interests in the following ways:

25. Section 5 of Act 372 discriminates between those who support a particular book and believe it is appropriate for inclusion in a public library's main collection and those who oppose a particular book and would challenge it as inappropriate for inclusion. While a book's opponents are afforded multiple, formal opportunities to advocate for the book's removal or segregation, the book's supporters are given no similar right or ability to advocate for the book's continued inclusion in the library's collection.

26. If Section 5 permitted those who favor keeping a challenged book in circulation to have input, ArLA or its members would participate to advocate for books remaining available. Similarly, if Section 5 allowed appeals from a library committee's decision to segregate or remove a challenged book, ArLA or its members would avail themselves of that recourse.

27. ArLA also suffers irreparable injury to its organizational interests because, to counteract the harm that ArLA's members will suffer from Act 372, it has been forced to divert organizational resources, including staff time and money, to respond to Act 372 through public

7

education campaigns, media training, and development of reference and training materials to help its members understand what compliance with Act 372 would require.

28. For instance, when Act 372 was being debated by the Arkansas Legislature, ArLA put out action calls to its members, which resulted in members attending legislative hearings, speaking out against the bill, and contacting their representatives to voice their opposition.

29. In addition, ArLA expended time and effort to develop training and professional development offerings that were responsive to member concerns related to Act 372, including by producing a panel on intellectual freedom, developing a workshop for library paraprofessionals that included a session on the impact of Act 372, and shifting a large portion of its annual conference to cover how libraries will respond to Act 372.

30. Since Act 372 was signed into law, ArLA has received numerous questions from its members, who are concerned about being prosecuted under Act 372 and about the impact the new law will have on their jobs and libraries. I have spent time reading and responding to the dozens of messages that have been posted on ArLA's discussion boards. I know that other ArLA board members have spent a considerable amount of their personal time trying to provide guidance to concerned members about Act 372, as well.

31. Because ArLA is run by volunteers who are also balancing full-time obligations to their employers and families, time spent addressing Act 372 directly affects the amount of time available to spend on core organizational priorities, like professional development trainings or ArLA's annual conference.

32. Sections 1 and 5 of Act 372 thus impede ArLA's overall mission by forcing ArLA to divert unrecoverable resources from projects and activities in which it would have otherwise engaged.

I declare under penalty of perjury that the foregoing is true and correct.

Executed May 7, 2024 in Little Rock, Arkansas.

                                                  */s/ Carol Coffey*

                                                  Carol Coffey, Past-President
                                                  Arkansas Library Association

# EXHIBIT A

Yell County Library in Danville, AR



# EXHIBIT B

Franklin County Library in Ozark, AR



# EXHIBIT C

Logan County Library in Booneville, AR

