IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

FAYETTEVILLE PUBLIC LIBRARY, a political subdivision in the City of Fayetteville, State of Arkansas; et al.

                                                                                                                       **PLAINTIFFS**

v.                                             NO. 5:23-CV-05086

CRAWFORD COUNTY, ARKANSAS; et al.

                                                                                                                       **DEFENDANTS**

## DECLARATION OF DAVID GROGAN

I, David Grogan, pursuant to 28 U.S.C.§ 1746, do declare:

1. I am the Director of the American Booksellers for Free Expression, Advocacy and Public Policy ("ABFE"), a division of the American Booksellers Association ("ABA") a plaintiff in this action. I make this declaration in support of plaintiffs' motion for summary judgment. I have been working at the ABA since 2002.

2. The ABA was founded in 1900 and is a national not-for-profit trade organization that works to help independently owned bookstores grow and succeed. The ABA represents over 2,100 member companies operating in over 2,500 locations. The ABA's core members are key participants in their communities' local economy and culture. To assist them, the ABA provides education, information dissemination, business products, and services; creates relevant programs; and engages in public policy, industry, and local-first advocacy. The ABA has 17 members located in Arkansas who are subject to Act 372.

3. Section 1 of Act 372 of 2023 ("Act 372") prohibits making books that are "harmful to minors" available to minors, forcing this large quantity of constitutionally protected materials to be restricted from adults, as I describe below.

4. The ABA and its Arkansas member bookstores and booksellers fear that they and their employees may be at risk of prosecution under Section 1 for permitting minors to view or access constitutionally protected material which might be deemed "harmful to minors" for any minor under the meaning of the statute. ABA's Arkansas members do not know how to determine what books may cross this vague line, which does not distinguish between older and younger minors.

5. Any bookstore contains hundreds of books with sexually related narrative or pictorial content that might appeal to prurient interest in sex to minors. These books fall in many literary genres, such as fiction, non-fiction, romance, photography, health, art/photography and new releases. Contemporary bestsellers like "Fifty Shades of Grey" and the "Bridgerton" series; literary classics as "Dracula," "Romeo & Juliet," "Ulysses," "Gone with the Wind," and "The Color Purple" come to mind.

6. Readers generally become acquainted with books when they are readily visible. While many customers come into ABA member bookstores asking for a specific title, many more discover a new title while browsing. If titles were hidden away, those sales would be lost. The prominent display of books shelved or displayed on tables in an orderly, easily accessible manner in an atmosphere conducive to browsing is essential for the success of ABA member bookstores.

7. To comply with Section 1 of Act 372, bookstores are faced with untenable choices.

   a. The bookstore could bar all patrons under the age of 18 from entering the bookstores. This would alter the purpose and actions of the bookstore owners. This would also dramatically affect children and young adult book sales and would

imply the store only sold "adult" books, which would be immensely detrimental to business. Further, it would prevent older minors from perusing and purchasing materials constitutionally protected as to them.

b. A bookstore could limit its inventory to books or other items not regulated by Section 1, however, that would curtail the availability of a number of very popular books, including some bestsellers, and thus, this alternative is not practically or commercially feasible. In addition, this alternative would create practical difficulties in ordering new books because bookstores rarely have the opportunity to review books before ordering them. This alternative would also prevent older minors from perusing and purchasing materials constitutionally protected as to them.

c. Alternatively, the bookstore could place all materials that could be "harmful to minors" behind a counter, but given the large number of constitutionally protected books involved, that may entail a restructuring of the store to ensure space. Since the display of books is crucial to book sales, this would also hurt sales. This option would also necessitate that employees perform the difficult task of designating books across multiple genres as "harmful to minors." This too would restrict the ability of adults and older minors to peruse and purchase materials constitutionally protected as to them.

d. The bookstore could also designate a room "adults only." This would, like the "behind the counter" option, potentially involve costly renovations and burden employees with the separation of books. Further, this new room would be difficult to monitor necessitating keys or electronic access (which would also entail

additional costs) and would be confusing to patrons. That kind of segregation would also lead to drop in sales of the segregated books, as many adults would be hesitant to go into the "adults only" room. As with the other alternatives, this would restrict the ability of adults and older minors to peruse and purchase materials constitutionally protected as to them.

8. For all the reasons stated above, ABA's Arkansas members fear prosecution under Section 1. If Section 1 is not held unconstitutional, the members will be forced to self-censor and restrict materials available in their stores to a great degree to great business detriment, or risk criminal liability.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 10th day of May, 2024.

/s/ *David Grogan*
David Grogan