IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


FAYETTEVILLE PUBLIC LIBRARY, et al.                    PLAINTIFFS


         v.                           No. 5:23-cv-5086


CRAWFORD COUNTY, ARKANSAS, et al.                      DEFENDANTS

## DECLARATION OF PATTY HECTOR

I, Patty Hector, hereby declare under penalty of perjury as prescribed in 28 U.S.C. § 1746:

1.      The facts contained in this declaration are based on my personal knowledge and I can testify competently to them if called upon to do so. I submit this sworn declaration in support of Plaintiffs' Motion for Summary Judgment.

2.      I hold a Master of Library Science degree from the University of North Texas and a bachelor's degree from Austin College. I have been a librarian for approximately forty years and have worked as a librarian in both private and public settings.

3.      I have worked at two different public libraries in Arkansas. In 1988, I began working as the Public Services Librarian of the Fort Smith Public Library (FSPL). I spent 15 years at FSPL and left as the Assistant Director. I then relocated to California, where I continued my work as a librarian at several public libraries in northern California. After returning to Arkansas, I was hired as the Library Director of the Saline County Library in 2016. I held that position until October 2023, when Saline County Judge Matt Brumley fired me because I refused to remove books discussing LGBTQ or sexual education issues from the library. After being fired from Saline County Library, I worked for approximately six months as a librarian at the Coronado

Center Library in Hot Springs Village. I am currently freelancing as a librarian while I run for a position on the Saline County Quorum Court.

4.      Being fired from a job I loved and did well for many years was traumatic. My termination was the culmination of a months-long escalation between the Quorum Court and a group called the Saline County Republican Women (SCRW), on the one hand, and the Saline County Library and me, on the other hand. I am providing a summary of the events leading up to my termination because I believe my experience provides context relevant to the Court's consideration of Act 372 and, in particular, its consideration of Section 5 of Act 372, which places final authority for reviewing book challenges in the hands of the elected members of city and county governing bodies.

5.      In early 2023, Saline County Library began to receive visits from members of SCRW, who were visiting only to confirm that the library had books in its collection that appeared on a list they had of purportedly harmful books. They were specifically looking for books that discussed race, gender, and sexual orientation. These SCRW members did not have library cards and made no effort to engage the Saline County Library's staff about the books they objected to, including through Saline County Library's preexisting reconsideration request process. Instead, they took their complaints directly to the Quorum Court.

6.      The SCRW members objected to the library having children's books like "Leo's Lavender Skirt" by Irma Borges, which depicts a young boy who likes wearing costumes, including a lavender colored skirt; "Worm Loves Worm" by J.J. Austrian, which tells the story of two worms planning their wedding; and "The Talk" by Darrin Bell, a Pulitzer Prize winning graphic memoir that discusses the author's experience with racism.

7. These books are perfectly reasonable and worthy selections for the children's section of a public library, and those who sought to have them removed clearly did so because they disagreed with the messages in those books. It is fundamental to the idea of the public library that a wide range of viewpoints are represented in the collection and that materials are not given special treatment based on the viewpoint expressed in the work.

8. After the SCRW members complained about books in the Saline County Library to the Quorum Court, the library received three book reconsideration requests, including one from Mr. Brumley. These reconsideration requests, which were denied, were the first ones the library had received in at least ten years.

9. Judge Brumley and members of the Quorum Court also spoke to three Saline County Library Board members around this time. I understand that the Library Board members told Judge Brumley and the Quorum Court members that they would not agree to fire me at the Quorum Court's request.

10. With the understanding that the library and Library Board would make it difficult for the Quorum Court to influence library operations, the Quorum Court sought to establish its influence over the library more directly. Its first move came at the April 2023 Quorum Court meeting, where members of the Quorum Court moved to adopt a "Resolution Requesting Saline County Library Ensure Children's Section Materials Are Subject Matter And Age Appropriate" (the "Library Resolution"). In view of the fact that Act 372 had been passed and was expected to "have an impact on the Library," the Library Resolution proposed that the library "proactively take steps to ensure that materials that are not subject matter or age appropriate, such as those that contain sexual content or imagery, are not located in areas where children's materials are located[.]" A true and accurate copy of the Library Resolution is attached as Exhibit A.

11.     The Justice of the Peace who sponsored the Library Resolution claimed that it was necessary to make libraries safe for children to use. The community members who spoke in favor of the resolution parroted that child safety rationale, as well, and some also called for the library to be defunded, if I did not remove the books they found offensive. Others claimed that the Library Resolution was necessary because the library contained books they perceived to be anti-Christian or anti-white.

12.     The justification for the Library Resolution and the comments offered in support of it were all in keeping with how the broader debate about which books should be in Arkansas' libraries has been framed, both by SCRW and more broadly. A throughline of this public debate has been that librarians who object to relocating or removing library materials simply because they express unpopular ideas are personally attacked, accused of endangering children, called "groomers" and "pedophiles," and more. I was subjected to all of that. I know that other librarians in Arkansas have faced the same accusations and insults, which are deeply unfair, extremely hurtful, and—it should hardly need saying—patently false.

13.     At the end of the day, the Quorum Court approved the Library Resolution. A true and accurate copy of the minutes of the April 2023 Quorum Court meeting is attached as Exhibit B.

14.     The Quorum Court did not solicit my or my staff's views before proposing the Library Resolution. Only two members of the Quorum Court came to the library before proposing the Library Resolution, and they refused to let me speak to them about the Library Resolution or to answer any questions. If they had been willing to hear what I had to say, I would have explained to them that libraries already take into account the age and subject matter of books as part of our standard curation practices. Anyone familiar with libraries generally, or the Saline County Library

in particular, would see this reflected in the fact that libraries often have a Children's section, Young Adult section, Adult Fiction section, and so forth. Saline County Library also requires that children under the age of twelve have an adult chaperone when they are in the library.

15. Collectively, these policies and practices ensure that library users have the information they need to browse the library and find their way to the sections that are likely to contain materials that will be interesting to them and suitable for their maturity and reading level. For young children, we expect that parents or guardians will use the information and guidance the library makes available to play an active role in helping young children find good reading selections. This is a system that has served public library patrons, including in Saline County, very well for a very long time. It has ensured that anyone who walks through the library doors can find something that they want to read, even if it also means that they might find a book containing ideas with which they disagree.

16. After the Quorum Court passed the library resolution at the April 2023 meeting, Judge Brumley attended the May 2023 Saline County Library Board meeting to express his lack of confidence in the Board and my leadership of the library. He said that he was concerned for the future of the library, based on its decision not to remove the books from the SCL collection that he and others claimed were harmful to children. Mr. Brumley referenced Saline County Ordinance 78-1 (1978), which authorizes the library's existence, and made clear that, because I would not accede to his demands about book removal, he would be seeking to exert more control over the library's operations moving forward. A true and accurate copy of the minutes of the May 2023 Saline County Library Board meeting are attached as Exhibit C.

17. At the next Quorum Court meeting, held on June 19, 2023, the Quorum Court introduced an ordinance that would amend Ordinance 78-1 by vesting oversight of all library

operations in the County Judge and stripping the Library Board of authority to make employment decisions for the library (the "Library Ordinance"). A true and accurate copy of the minutes for the Saline County Quorum Court's June 19, 2023 meeting are attached as Exhibit D. The Quorum Court passed the Library Ordinance at the August 21, 2023 meeting. A true and accurate copy of the minutes for the August 21, 2023 meeting are attached as Exhibit E.

18. Many predicted that passage of the Library Ordinance meant that I would be fired. Sure enough, on October 9, 2023, Mr. Brumley fired me. He did not offer an explanation for his decision to fire me from a job I had done well for many years but, the events of the preceding few months make it perfectly clear that I was fired because I refused to accede to public pressure and allow the views of vocal opponents of certain ideas and books guide the library's decisions about which materials should be made available and where in the library they should be located. Those are decisions to be made by professional librarians, who are committed to principles of librarianship, not by elected officials or advocacy organizations, who are committed to advancing the interests of their powerful constituents or their own agenda.[1]

---

[1] The whole saga was thoroughly documented in the press. *See, e.g.*, Debra Hale-Shelton, *UPDATE: Saline County Judge Fires Librarian After Months of Controversey Over Censorship*, Ark. Times (Oct. 9, 2023), https://arktimes.com/arkansas-blog/2023/10/09/saline-county-judge-fires-librarian-after-months-of-controversy-over-censorship; Mary Hennigan, *Pointing Fingers and Drawing Lines: Saline County's Library Fight Draws a Crowd*, Ark. Times (Aug. 22, 2023), https://arktimes.com/arkansas-blog/2023/08/22/pointing-fingers-and-drawing-lines-saline-countys-library-fight-draws-a-crowd; Mary Hennigan, *Amid Months-long Fight Over Censorship, Saline County Judge Wins the Power to Fire Librarians*, Ark. Times (Aug. 21, 2023), https://arktimes.com/arkansas-blog/2023/08/21/saline-county-quorum-court-approves-library-limitations-assigns-more-power-to-themselves; Tess Vrbin, *Saline County Judge: Library Director's Statements Cause "High Degree of Concern"*, Ark. Advocate (May 22, 2023), https://arkansasadvocate.com/2023/05/22/saline-county-judge-citizens-bring-concerns-about-obscene-content-to-library-board/#:~:text=The%20library%20board's%20meeting%20was,is%20not%20accessible%20to%20children.%E2%80%9D; Mary Hennigan, *Library Under Attack: Saline County Quorum Court Approves Strict Policies, Residents Threaten Defunding*, Ark. Times (Apr. 18, 2023), https://arktimes.com/arkansas-blog/2023/04/18/library-under-attack-saline-county-quorum-

19. Of course, all of this happened in the context of Act 372, which has supercharged the debate about books and libraries in Arkansas in an unproductive way and greatly increased the hostility that has been aimed at librarians. As noted above, the Library Resolution was justified, in part, as a proactive step that Saline County should take to pre-emptively implement what the Quorum Court thought Act 372 would soon require.

20. Even without its corrosive effect on discussions about libraries in Arkansas, Act 372 was deeply concerning to me as a library director for a number of reasons. First and foremost, Saline County Library carried books and other materials in its general collection that discussed sex and other mature topics that, although constitutionally protected and suitable reading choices for adults and mature minors, might have been considered by some to be harmful to a younger, less mature minor. Those books were not placed in an area of the library meant to attract the interest of younger, less mature minors, but they were also not physically segregated to a secure area that could be accessed only by adult patrons, as Act 372 seems to require. Given that, I was deeply concerned that me or my staff could be prosecuted for violating Section 1 of Act 372 if the law went into effect.

21. I also expected that these books, and certainly the books that prompted the Library Resolution, would be repeatedly challenged under Section 5 of Act 372 as inappropriate. Although Act 372 was not yet in effect, some who spoke in support of the Library Resolution at the April 2023 Quorum Court meeting stated that they planned to start challenging books they

court-approves-strict-policies-residents-threaten-defunding; Marry Hennigan, *Republicans in Saline County Join the Book Banning Club. Take a Look at What They're Mad About*, Ark. Times (Apr. 14, 2023), https://arktimes.com/arkansas-blog/2023/04/14/republicans-in-saline-county-join-the-book-banning-club-take-a-look-at-what-theyre-mad-about.

did not want in the library. I understood that they meant they would start doing so once Act 372 went into effect.

22.     The events that led to my firing, and the pressure exerted by the Quorum Court on behalf of their constituents, shows exactly why it is a problem that Section 5 of Act 372 requires a book challenge procedure that places final decision-making authority in the hands of a local governing body, like the Quorum Court. If Act 372 goes into effect, I fully expect that the members of the Saline County Quorum Court will, in keeping with their past conduct, use the role they have been given under Act 372 to censor books that express ideas they or their constituents do not like. It will also be hard for the Saline County Library staff not to succumb to that pressure, which may cause them to preemptively relocate or remove books that they know will cause them trouble. I imagine that they may also stop acquiring books that will be the subject of challenges and, ultimately, be deemed "inappropriate" by the Quorum Court. That will limit the reading choices for Saline County but what would be the point of purchasing books that will be immediately challenged, declared inappropriate or worse, and segregated into a locked room? The Quorum Court has made it perfectly clear that those who do not participate in their censorship agenda will be fired.

23.     Practically speaking, Act 372 will also be unworkable for the Saline County Library, as it will be for most libraries in Arkansas. Although materials in the Saline County Library are organized into sections that roughly correlate with age, as described above, the materials in its three branches are organized on open shelves, which allows patrons to browse for materials of interest to them, without requiring assistance from a library staff member. Saline County Library's patrons, who range in age from the very young to the very old, are not restricted from accessing any portion of the library collection, currently.

24.     Saline County Library branches also do not have separate rooms that can be used to securely store books deemed "harmful" to minors or inappropriate in an area that is inaccessible to all minors. If they do, those rooms are currently being used to offer valuable services, like community meeting space. Nor do I think that the Saline County Library has the resources to alter the interior layout of its buildings in order to add walls or doors in order to create new adults-only spaces. Even if Saline County Library had available space, or could build new segregation spaces, doing so would defeat the basic purpose of a library: to create a welcoming and inviting environment, where readers can freely peruse the curated offerings in the collection.

25.     Placing materials in an adult-only room would also stigmatize those materials and likely prevent adult patrons from browsing them and discovering materials they might have otherwise enjoyed. And it would directly deny access to older, more mature minors on account of their age. In my many years as a librarian, I have encountered plenty of thoughtful teenagers who are capable of reading and appreciating a book that deals with a mature topic—even if the book describes a romantic relationship involving sex—and taking away important lessons conveyed by the work. It would be a shame to limit the reading choices for those young people to materials that would be suitable for the library's youngest users.

26.     It is also worth recognizing how common it is for a parent, grandparent, or guardian to visit the library with a young child and hope to find something of interest for both the child and the adult. In Saline County Library, however, children under the age of twelve cannot be left unattended. If the library has to create an adult-only room under Act 372, a parent who comes to the library with their 10-year-old child would not be able to browse the books segregated in that adult-only area.

27.    People like coming to the library because it is a comfortable, familiar experience that makes things people want easily accessible. If they have to navigate a whole bunch of unpleasantness to find a book they like, feel judged by others in the library based on the books they are looking at, or figure out if they will get in trouble for trying to find a new romance novel while holding their young child, I think people will simply stop coming to the library.

28.    Short of excluding all children from the library, it is hard to imagine a workable solution for complying with Act 372 that does not put Arkansas' librarians, including my former colleagues at Saline County Library, at risk of being jailed or constantly inundated with challenges to books expressing disfavored ideas.

I declare under penalty of perjury that the foregoing is true and correct.

Executed May 10, 2024 in Hot Springs Vlg, Arkansas.

Patty Hector

# EXHIBIT A

### SALINE COUNTY RESOLUTION NO. 2023-_____

**A RESOLUTION REQUESTING THE SALINE COUNTY LIBRARY ENSURE THAT MATERIALS CONTAINED WITHIN THE CHILDREN'S SECTION OF THE LIBRARY ARE SUBJECT MATTER AND AGE APPROPRIATE.**

**WHEREAS,** the Saline County Library ("Library") has been an integral part of the Saline County community for decades; and

**WHEREAS,** the Library is visited by individuals of all ages, backgrounds, and beliefs; and

**WHEREAS,** the Library currently has many children visit who may be exposed to materials that are not subject matter or age appropriate for children, such as sexual content or imagery, that their parents or the public do not deem to be appropriate; and

**WHEREAS,** the Library Board of Directors and Library employees have a responsibility to ensure that materials contained at the Library, particularly within the children's section, regardless of the legal definition of obscenity, are age appropriate for children; and

**WHEREAS,** while the Arkansas Legislature passed Senate Bill 81, now Act 372 of 2023, which may have an impact on the Library, and the Library should proactively take steps to ensure that materials that are not subject matter or age appropriate, such as those that contain sexual content or imagery, are not located in areas where children's materials are located; and

**NOW, THEREFORE BE IT RESOLVED BY THE SALINE COUNTY QUORUM COURT THAT:**

SECTION I: The Library should enact policies to relocate materials that are not subject matter or age appropriate for children, due to their sexual content or imagery, to an area that is not accessible to children.

SECTION II: That this Resolution shall be in full force and effect from and after its passage and approval.

THIS RESOLUTION adopted this 17th day of April 2023

APPROVED: _____        SPONSORS:  JIM WHITLEY
　　　　　MATT BRUMLEY                                    DISTRICT #10
　　　　　SALINE COUNTY JUDGE


　　　　　　　　　　　　　　　　　　　　　　　　　　CLINT CHISM
ATTEST: _____        DISTRICT # 11
　　　　　DOUG CURTIS
　　　　　SALINE COUNTY CLERK

# EXHIBIT B

# SALINE COUNTY QUORUM COURT
## MINUTES
### APRIL 17, 2023

The Saline County Quorum Court met on Monday, April 17, 2023 at 6:30 p.m. in Courtroom #3 in the Saline County Courthouse. County Judge Matt Brumley called the meeting to order. Justice of the Peace Jim Whitley gave the invocation and Justice of the Peace Rick Bellinger led the Pledge of Allegiance.

Roll call was taken with all members present.

Motion by Barbara Howell and seconded by Carl Billingsley to approve the Minutes from the March 13, 2023 Quorum Court Meeting. Motion passed unanimously by voice vote.

REPORTS/PROCLAMATIONS:

NONE.

OLD BUSINESS:

NONE.

NEW BUSINESS:

Judge Brumley moved the Informational Item of ARP Projects to the top of the meeting.

Brian Black of Black, Corley, Owens, & Hughes Architects gave an update regarding the Saline County Jail expansion.

Adam Burris, a representative with Motorola, gave an update of the progress of the communication towers project.

Judge Brumley went over of the ongoing water project that the county is working with the Saline County Water Alliance on.

Judge Brumley stated that the deadline for spending the funds is December 31, 2026 and we are within that timeline.

Exhibit "A": Motion by J. R. Walters and seconded by Pat Bisbee to Approve Resolution Recognizing Public Safety Telecommunicators as First Responders. Motion passed unanimously by voice vote. Resolution 2023-4.

Exhibit "B": Motion by J. R. Walters and seconded by Barbara Howell to Approve Resolution Authorizing the Preliminary Grant Application Process for the U. S. Department of Justice Office on Violence Against Women Grants to Encourage Arrest Policies and Enforcement of Protection Orders Program. Motion passed unanimously by voice vote. Resolution 2023-5.

Exhibit "C": Motion by Josh Curtis and seconded by Jim Whitley to send the proposed Emergency Ordinance Designating Planning Services as Professional Services back to Committee. Motion passed unanimously by voice vote.

Exhibit "D": Motion by Rick Bellinger and seconded by Justin Rue to approve Emergency Ordinance Establishing Saline County Litter Control Fund. Roll call vote; motion passed unanimously. Ordinance 2023-12.

Motion by Pat Bisbee and seconded by J. R. Walters to include Add-on Exhibit "E". Motion passed unanimously by voice vote.

ADD ON:

Exhibit "E":
Motion by Jim Whitley and seconded by Clint Chism to approve Resolution Requesting Saline County Library Ensure Children's Section Materials are Subject Matter and Age Appropriate.

Motion by Keith Keck and seconded by Rick Bellinger to Amend the Resolution with an addition referencing Act 372. Motion passed with voice vote.

Keith Keck withdrew motion. After much discussion concerning amending resolution, Judge Brumley called for a roll call vote. Motion to Amend Resolution with roll call vote by Keith Keck and seconded by Carlton Billingsley. Motion failed with 4 for and 9 against.

DISCUSSION:

Concerning Exhibit "E"; Mr. Bellinger said before voting yes to the proposed Resolution he wanted to make it clear that he is not for banning books nor is he for defunding the library. Several of the members expressed support of the Resolution but stated that they did not wish to defund the library. Both Mr. Keck and Mr. Billingsley felt they should have spoken to the library board before drafting the Resolution.

COMMENTS:

Judge Brumley instructed those in attendance that had signed in for public comment that they would each have 3 minutes with a 30 second warning.

The following spoke in this order:

> Jon Newcomb
> John Goff
> Bill Whipple
> Carl Heyl
> Rena' Allmond
> Dana Bloch
> Tim Allmond
> Chelsea Simon
> Gary Beck

Jordan Sandlin
Stephanie Duke
Edith Baker
David Gibson
Sam Taggert
Scott Gray
Fred McGraw
Julia Norris
Allison Gray
Andy Bowden
Bailey Morgan
Mary Lewis
Grayson Hartz
Shannon Everett
Olivia McClure
Angela Gray
Marcia Lanier
Brian English
Kristen Netterstrom Higgins

Motion to approve Resolution passed with 11 for and 2 against. Resolution 2023-6.

Exhibit "F": This is exhibit was pulled.

Motion made by Josh Curtis and seconded by C. J. Engel to adjourn. Motion passed by voice vote.

Meeting adjourned at 9:05 p.m.

**RESOLUTION NO. 2023-_____**

**A RESOLUTION EXPRESSING SUPPORT FOR HOT SPRINGS VILLAGE RECEIVING ACCESS TO GRANT WRITING EXPERTISE FROM THE CENTRAL ARKANSAS PLANNING AND DEVELOPMENT DISTRICT.**

**WHEREAS,** Hot Springs Village ("HSV") is a private community and political subdivision within the unincorporated portion of Saline County; and

**WHEREAS,** HSV is eligible for certain federal and state grants, such as those for public safety, including law enforcement and fire control, as well as, utilities, such as water, wastewater, and broadband; and

**WHEREAS,** Saline County is a member of the Central Arkansas Planning and Development District ("CAPDD"); and

**WHEREAS,** CAPDD employs grant writers to assist members prepare grant applications for federal and state grants; and

**NOW, THEREFORE BE IT RESOLVED BY THE SALINE COUNTY QUORUM COURT THAT:**

SECTION I:  Saline County expresses its support and desire for CAPDD providing its grant writing assistance to HSV.

SECTION II: That this Resolution shall be in full force and effect from and after its passage and approval.

THIS RESOLUTION adopted this 15th day of May 2023

APPROVED: _____     SPONSOR: KEITH KECK
               MATT BRUMLEY                                    DISTRICT # 13
               SALINE COUNTY JUDGE


ATTEST: _____
               DOUG CURTIS
               SALINE COUNTY CLERK

## ORDINANCE NO. 2023-

**BE IT ENACTED BY THE QUORUM COURT OF SALINE COUNTY, STATE OF ARKANSAS, AN ORDINANCE TO BE ENTITLED: "AN ORDINANCE CLASSIFYING PLANNING SERVICES AS PROFESSIONAL SERVICES WITHIN THE MEANING OF ARK. CODE ANN. §19-11-801."**

**WHEREAS**, paragraph (c) of Ark. Code Ann. §19-11-801 authorizes a Quorum Court to elect to not use competitive bidding for other professional services not listed in subsection (b) of this code section, but instead utilize a Request for Qualifications ("RFQ"), with a two-thirds (2/3) vote of the political subdivision's governing body; and

**WHEREAS**, there has been discussion regarding the need to have a professional provide a thorough review of the Saline County Planning Board Subdivision Rules and Regulations ("Subdivision Rules"), as well as, any policy needs associated with the growth of Saline County, and provide recommendations for making the Subdivision Rules and any other Saline County Planning Board ("Planning Board") policies better situated to address growth in Saline County;

**WHEREAS**, there may be qualified professionals that provide planning services ("Planning Services") that may not be architects or engineers; and

**WHEREAS,** the Saline County Quorum Court deems it necessary to procure Planning Services, which includes creating design and development guidelines for commercial and multi-family development and review and recommendations associated with rules and regulations, as other professional services.

**NOW THEREFORE BE IT ORDAINED** by the Quorum Court of Saline County, Arkansas that:

**Article 1.** From and after the effective date of this Ordinance, Planning Services are deemed professional services under Ark. Code Ann. § 19-11-801.

**Article 2.** Any RFQ issued pursuant to this Ordinance for Planning Services associated with the Planning Board will be prepared and released by the Saline County Judge, with input from the Saline County Quorum Court and Planning Board. Responses received will be graded by a committee including a Planning Board member, the County Judge or their designee, and a member of the Saline County Quorum Court.

DATE:     July 17, 2023                          APPROVED: _____
                                                                                     MATT BRUMLEY
                                                                                     SALINE COUNTY JUDGE

ATTEST: _____          SPONSOR: KEITH KECK, JP DISTRICT #13
                   DOUG CURTIS
                   SALINE COUNTY CLERK

## RESOLUTION NO. 2023 - _____

## SALINE COUNTY QUORUM COURT

**A RESOLUTION** authorizing the preliminary grant application process for the 2023-2024 VOCA Grant program.

**WHEREAS,** enhancing Saline County law enforcement and service to victims of domestic violence is an ongoing need which can be met by the continued employment of victim justice and assistance personnel; and

**WHEREAS,** the continuation funding to be requested through the 2023-2024 VOCA Grant Program will provide ongoing assistance for victims of domestic violence; and

**WHEREAS,** the Saline County Sheriff's Office Victim Advocate position funded by the VOCA Grant Program has been grant funded since 2007 with federal funds received as sub-grants from the State of Arkansas, Office of Intergovernmental Services, Victim Justice and Assistance Program (DFA/IGS/VJA); and

**WHEREAS,** the match requirement for the VOCA Grant Program is 20%; and is met by the employment of a County-paid Victim Advocate who performs the same duties, and

**WHEREAS,** members of the Saline County Quorum Court have had an opportunity to review and comment on this notification; and

**NOW, THEREFORE, BE IT RESOLVED** that the Saline County Quorum Court hereby authorizes and directs the Saline County Grants Administrator to submit the VOCA Grant Application.

DATE: MAY 15, 2023

APPROVED:_____
                     MATT BRUMLEY
                     SALINE COUNTY JUDGE
                     (CEO OF SALINE COUNTY)

Attest:_____
        DOUG CURTIS
        SALINE COUNTY CLERK

SPONSOR: J. R. WALTERS, JP DISTRICT NO. 12

### RESOLUTION NO. 2023 - _____

### SALINE COUNTY QUORUM COURT

**A RESOLUTION** authorizing the grant application process for the 2023-2024 STOP Grant program, and providing other assurances.

**WHEREAS,** enhancing Saline County law enforcement is an ongoing need which can be met by the continued employment of victim justice and assistance and certified law enforcement personnel; and

**WHEREAS,** the continuation funding requested through the 2023-2024 STOP Grant Program will provide ongoing investigation of domestic violence cases; and

**WHEREAS,** the position of Saline County Sheriff's Office Domestic Violence Unit Detective funded by the STOP Program has been grant funded since 2003 with federal funds received as a sub-grant from the State of Arkansas, Office of Intergovernmental Services, Victim Justice and Assistance Program; and

**WHEREAS,** the match requirement for the STOP Grant Program is 28%, and the major part of this match requirements is met with volunteer hours; and

**WHEREAS,** the members of the Saline County Quorum Court have had an opportunity to review and comment on the contents of the grant application; and

**NOW, THEREFORE, BE IT RESOLVED** that the Saline County Quorum Court hereby authorizes and directs the Saline County Grants Administrator to submit the STOP grant application.

DATE: MAY 15, 2023                     APPROVED:_____

                                                         MATT BRUMLEY
                                                         SALINE COUNTY JUDGE
                                                         CEO OF SALINE COUNTY

ATTEST:_____          SPONSOR:  J. R. WALTERS, JP DISTRICT NO. 12

            DOUG CURTIS
            SALINE COUNTY CLERK

## APPROPRIATION ORDINANCE NO. 2023 - _____

**BE IT ENACTED BY THE QUORUM COURT OF SALINE COUNTY, STATE OF ARKANSAS, AN ORDINANCE TO BE ENTITLED:**

**"AN ORDINANCE TO AMEND THE 2023 SALINE COUNTY BUDGET ORDINANCE NO. 2022-36; TO TRANSFER FUNDS THEREFORE TO THE VARIOUS BUDGETS; AND FOR OTHER PURPOSES."**

**WHEREAS,** the Assessor has requested to transfer part-time help to the Assessor – Personal Property full-time position in his office that has been vacated in order to hire a replacement for that position immediately. The Assessor requests to transfer those funds in the County General (1000), Assessor Department (0105) budget (Article 1).

**NOW THEREFORE BE IT ORDAINED BY THE QUORUM COURT OF SALINE COUNTY, ARKANSAS:**

**Article 1**. That the sum of $600.00 is hereby transferred in the County General, Tax Assessor Department budget as follows:

| Transfer From | Description | Transfer To | Description | Amount |
|---|---|---|---|---|
| 1000.0105.1002 | Part-Time Help | 1000.0105.0113 | Assr-Personal Prop. | $600.00 |

**Article 2.** It is deemed necessary for the smooth operation of Saline County Government that this ordinance be approved.

DATE:   MAY 15, 2023          APPROVED _____

                                                             MATT BRUMLEY
                                                             SALINE COUNTY JUDGE

ATTEST:_____          SPONSOR:  J. R. WALTERS, JP DISTRICT #12
             DOUG CURTIS
             SALINE COUNTY CLERK

# EXHIBIT C

# Saline County Library Board Meeting Minutes
May 22, 2023

Attendees:

Caroline Miller Robinson, Board Chair    Margaret Regnier, Friends of the Library Board Member
Marian Douglas, Board Member             Patty Hector, Library Director
Allison Nolley, Board Member             Leigh Espey, Library Manager
Laine Holleran, Board Member             Heather Phipps, Human Resources Manager
Kara Conrad, Board Member                Arielle Wilson, Financial Coordinator
Matt Brumley, County Judge

Excused:

I.    Call to Order
      Miller Robinson called the meeting to order at 3:32 PM.

II.   Announcements/Public Comment
      *Public Comments were made by the following individuals:*

      *Bob Vidt*
      *Jerry Davidson*
      *Jordan Reynolds*
      *Lydia Cheatham*
      *Amanda Ewald*
      *Brad Ewald*
      *Dwain Tennant*
      *Jordan Sandlin*
      *Ann Garner*
      *Rebecca Kidder*

III.  Minutes from the 4/11/2023 board meeting
      Douglas moved to accept the minutes as presented. Holleran seconded the
      motion, which passed unanimously.

IV.   Financial Reports
      a.  Income and Expense Reports
      Douglas moved to accept the income and expense reports as presented. Holleran
      seconded the motion, which passed unanimously.

      b.  Budget Modification Report
      Nolley moved to accept the Budget Modification Report as presented. Conrad
      seconded the motion, which passed unanimously.

V.   Discussion Items
     a.  Friends of the Library Report
     Friends of the Library Board Member Margaret Regnier spoke about the
     incredible, dedicated, and committed volunteers that the Friends of the Library
     has. They had a volunteer appreciation day for their volunteers in April. The book
     sale room continues to have a steady income for the library, and we continue to
     receive donations, but we are in need of hardback adult fiction. The Friends
     recently purchased and donated a sun shade for the Nature Play Space and plan
     on purchasing another one soon.

     b.  Director's Report
     *Patty Hector announced that the network build we closed for was successful, but
     we did come across a few problems and we are still cleaning things up.*

     c.  Library Management Teams Reports – Includes: Library Manager, Branch,
     Building Operations, Community Engagement, East End, Public Services, and
     Youth Services.

VI.  Unfinished Business
     a.  None

VII. New Business

     a.  Judge Brumley requests to learn more regarding the Board's perspective on
     the current state of affairs and the future of the Saline County Library
     *During the discussion Judge Brumley spoke about his high degree of concern
     over library leadership, and the library's lack of response to the quorum court
     resolution. Judge Brumley also spoke about Ordinance 78-1 from 1978 that
     states that the Library Board will need to submit quarterly finance reports to the
     County Judge. Judge Brumley requested that the library send the quarterly
     reports by Wednesday, May 31st. It was also mentioned that according to the
     Ordinance 78-1 the Library Board bylaws are out of compliance because it states
     the board can have up to 7 board members when the Ordinance states the board
     can only have 5 and that all Library Board members should have a property
     bond.*

     b.  Deletions
     Holleran moved to accept the deletions as presented. Conrad seconded the
     motion, which passed unanimously.

     c.  Change Capitalization Threshold per Legislative Auditor

Douglas moved to set the capitalization threshold to $500.00 as recommended by the legislative auditor. Holleran seconded the motion, which passed unanimously.

d. Recommendation for Replacement of Server Equipment
Nolley moved to accept the recommendation for the replacement of the server equipment as presented. Holleran seconded the motion, which passed unanimously.

e. Recommendation for Change in Investment Strategy
Douglas moved to accept the change in the Investment Strategy to start in October 2023 as presented. Nolley seconded the motion, which passed unanimously.

f. Resolution Empowering the Saline County Judge to Have Concurrent Power to Relocate and/or Remove Books from the Youth Services Division of the Saline County Library
Douglas moved to table this discussion till the next board meeting. Holleran seconded the motion, which passed unanimously.

g. Lease for East End Branch
Holleran moved that we move forward with the lease for the East End Branch. Nolley seconded that motion which passed unanimously.

h. Update for Reconsideration of Materials Policy
Nolley moved that concerning the presented reconsideration, it should say that the book must be read to its entirety before a recommendation is made. Conrad seconded that motion, which passed unanimously.

i. Board Member Recommendations
Douglas moved that the board would like to recommend, Janelle Stephens, Sam Gibson, and Caroline Robinson Miller as prospective board members to submit to the County Judge for approval. Holleran seconded that motion, which passed unanimously.

VIII. Miller Robinson adjourned the meeting at 5:32 PM.

Submitted by,

Heather Phipps
Human Resources Manager

# Saline County Library Board Meeting Minutes
June 26, 2023

Attendees:

Marian Douglas, Board Chair  Patty Hector, Library Director
Allison Nolley, Board Member  Leigh Espey, Library Manager
Kara Conrad, Board Member  Heather Phipps, Human Resources Manager
Jamie Clemmer, Board Member  Arielle Wilson, Financial Coordinator
Matt Brumley, County Judge  Amanda Garrison, East End Branch Manager
Will Gruber, County Attorney

Excused:

I.  Call to Order
    Douglas called the meeting to order at 3:30 PM.

II.  Announcements/Public Comment
    *No one signed up to make public comment.*
    *Douglas announced that we have a new board member Jamie Clemmer that is joining the board today.*
    *Nolley wanted to commend the staff for all the hard work they are doing despite the multiple threats and name calling on social media and excessive workload from the FOIA requests.*

III.  Discussion Items
    a. None

IV.  Unfinished Business
    None

V.  New Business
    a.  Approval of RFQ to Retain Legal Counsel
    *County Attorney, Will Gruber drew up the Request For Qualifications for the Library to retain legal counsel with feedback from Library Director Patty Hector. He explained to the board how the RFQ works; the library will need to advertise in the newspaper and post on the library website. The RFQ helps narrow down the candidates by a point system. The goal is to have these in by July 10th.*

    Nolley motioned that the board approve the RFQ to retain legal counsel. Conrad seconded that motion, which passed unanimously.

    b.  Resignation of Board Member L. Holleran and Recommendations for

Replacement
Conrad motioned that we schedule a special board meeting on July 6th at 3:30 PM for the purpose of selecting a new board member and to review all submissions. Clemmer seconded the motion, which passed unanimously.

c. Recommendation to Engage Accounting Firm for Audit
*Hector explained to the board that if ordinance passes, the Library will need to retain a third party auditor outside of the legislative audit. Gruber recommended that the library draw up a RFQ for an accounting firm.*

d. East End Branch Update
*East End Branch Manager, Amanda Garrison shared a picture of the walls going up at the new East End Branch location. She has also been meeting with Library Interiors of Texas to go over furnishings. Garrison spoke with Karen King from Hope Realty and they will be meeting sometime next week with an electrician to talk about outlet placement. The building is expected to be finished by August with an opening of September. Also, the Friends of the Library have donated $7,000 to help purchase things for the Library.*

VI.     Douglas adjourned the meeting at 4:05 PM.


Submitted by,

Heather Phipps
Human Resources Manager

# EXHIBIT D

# SALINE COUNTY QUORUM COURT
## MINUTES
### JUNE 19, 2023

The Saline County Quorum Court met on Monday, June 19, 2023 at 6:30 p.m. in Courtroom #3 in the Saline County Courthouse. County Judge Matt Brumley called the meeting to order. Justice of the Peace Jim Whitley gave the invocation and Justice of the Peace C. J. Engel led the Pledge of Allegiance.

Roll call was taken with all members present.

Motion by Carlton Billingsley and seconded by Barbara Howell to approve the Minutes from the May 15, 2023 Quorum Court Meeting. Motion passed unanimously by voice vote.

REPORTS/PROCLAMATIONS:

NONE.

OLD BUSINESS:

NONE.

NEW BUSINESS:

Exhibit "A": Motion by Pat Bisbee and second by Barbara Howell for Appointment of Vicki Baldridge to Saline County Board of Equalization. Motion passed unanimously.

Exhibit "B": Motion by J. R. Walters and seconded by C. J. Engel for Appointment of Jamie Clemmer to the Saline County Public Library Board for a term to expire on June 30, 2023 in order to fill a vacancy after Caroline Miller Robinson's resignation. Motion passed unanimously.

Exhibit "C": Motion by Carlton Billingsley and seconded by J. R. Walters to approve Appointment of Jamie Clemmer to the Saline County Public Library Board for a term to expire June 30, 2028. Motion passed unanimously.

Motion by J. R. Walters and seconded by Josh Curtis to suspend the rules and read title only of Exhibit "D". Motion passed unanimously.

Exhibit "D": Motion by J. R. Walters and seconded by Barbara Howell to approve Ordinance Amending 2023 Saline County Budget Ord. 2022-36; to Appropriate/Transfer Funds therefore to the Various Budgets; and, for other Purposes. Roll call vote; motion approved unanimously. Ordinance 2023-14.

Exhibit "E": Motion by Josh Curtis and seconded by J. R. Walters to approve First Reading of Ordinance Amending Ord. 1978-1, to Revise the Obligations, Duties and Powers of the Administrative County Library Board for Saline County. Motion approved unanimously by voice vote.

## COMMENTS:

Judge Brumley instructed those in attendance that had signed in for public comment that they would each have 3 minutes with a 30 second warning.

The following spoke in this order:

Greg White
Lydia Cheatum
Robin Campbell
Preston Lewis
Clay Harrison
Rachel Glenn
Fred McGraw
Rena' Allmond
Stephanie Johnson
Frank Curtis
Monica Davidson
Bryan Rousey
Fronda Coldiron
Deana Nall
Shannon Everett
Gary Don Beck
Jennifer Floyd
Wayne Beech
Dusty Higgins
Kristen Netterstrum Higgins
Keith Kellum
Clint Lancaster
Varena Hammons
Alan Robinette

Motion made by Josh Curtis and seconded by J. R. Walters to adjourn. Motion passed by voice vote.

Meeting adjourned at 8:17 p.m.

ORDINANCE NO. 2023 -

**BE IT ENACTED BY THE QUORUM COURT OF SALINE COUNTY, STATE OF ARKANSAS, AN ORDINANCE TO BE ENTITLED: "AN ORDINANCE AMENDING ORDINANCE NO. 1978-1, TO REVISE THE OBLIGATIONS, DUTIES AND POWERS OF THE ADMINISTRATIVE COUNTY LIBRARY BOARD FOR SALINE COUNTY."**

**BE IT ORDAINED BY THE QUORUM COURT OF SALINE COUNTY**

**WHEREAS,** Saline County Ordinance No. 1978-1 ("Library Ordinance") established an administrative county library board for Saline County ("Saline County Library Board");

**WHEREAS,** Arkansas Code Annotated § 14-15-705 authorizes a county administrative board to exercise administrative powers granted by county ordinance; and,

**WHEREAS,** the Quorum Court of Saline County ("Quorum Court") has determined that it is in the best interest of Saline County residents that the administrative powers granted to the Saline County Library Board be amended.

**NOW THEREFORE BE IT ORDAINED BY THE QUORUM COURT OF SALINE COUNTY, ARKANSAS:**

   **Article 1.** The Library Ordinance, Saline County Ordinance No. 1978-1, is hereby amended and revised by this Ordinance as set forth below.

   Article 5. The Saline County Library Board created by this Ordinance shall have ~~full and complete~~ authority, subject to oversight by the Saline County Judge, to manage, operate, maintain and keep in a good state of repair any and all buildings, equipment or installations of any kind used and devoted to the purpose of the Saline County Public Library as the same exists at the time the said Board receives them or as may be added or changed hereafter. ~~The Saline County Library Board shall have the power and duty to employ or remove all employees of the Saline County Public Library and to fix, regulate and pay their salaries.~~ The Board shall have the ~~exclusive~~ right and power, subject to the Saline County Judge's oversight, to make purchases of all supplies and equipment and other property and things requisite and necessary for the operation and management of the Saline County Public Library. This power includes contracting for or purchasing ~~including~~ new construction and equipment as needed it being the intention of this Ordinance to vest in said Board the authority to operate, manage, maintain equipment and control the Saline County Public Library all subject to ~~county purchasing~~ all statutory and constitutional laws of Arkansas.

   Article 6. The Saline County Library Board shall have authority to enter into contracts, other than for the purposes of employment, with persons, firms, corporations or organizations including all levels of government and municipal corporations for any legitimate purpose in furtherance of the operation of the Saline County Public Library, subject to all applicable state and local laws.

   Article 7. The Board shall adopt such rules, policies, procedures, and regulations as it may deem necessary and expedient for the proper operation and management of The Saline County Public Library, not inconsistent with this Ordinance or the laws of the State of Arkansas, and shall have authority to alter, change or amend such rules and regulations at its discretion. Prior to adoption of any rules, policies, procedures, or regulations under this Article, the Board shall submit the proposals to the Saline County Judge for review. The Board shall have the final authority to adopt or amend any rules, policies, procedures, or regulations subject to all applicable state and local laws.

Article 8. The Board shall submit quarterly reports beginning three months after its organization, and each three months thereafter, reporting in full on the operations, including an accounting of receipts and disbursements, to the County Judge and the Quorum Court, and shall furnish such other and further reports data and information as may be requested by the County Judge and the Quorum Court. The quarterly report to the County Judge and the Quorum Court with respect to receipts and disbursements shall be certified as correct by said Board. Said Board shall also submit to the County Judge and the Quorum Court an annual <u>third-party</u> audit <u>by a non-governmental accounting firm</u> of the operations of said Saline County Public Library. <u>The Board shall submit a detailed line-by-line library budget during the county's annual budget process, for review and approval by the Quorum Court, and subject to appropriation by the Quorum Court.</u>

Article 9. All sums collected by said Board shall become County funds and be deposited in the County Treasury in a separate fund to be called the Saline County Public Library Fund. All county monies for the operation of the Saline County Public Library shall be provided by Quorum Court appropriation. ~~The Board members shall each furnish to the County a $2,500.00 property bond, which shall be filed with the County Clerk, which will insure the County against any misappropriation or mishandling of funds.~~ The Board members shall receive no salary, nor other form of monetary compensation for their services. <u>Board members shall cause to be furnished to the County, for filing with the County Clerk, subject to any statutory requirements, sufficient security, through bonding or insurance, to insure the County against any misappropriation or mishandling of funds. The Library Board shall cause to be obtained a primary payer or first payer insurance policy or policies to provide adequate security against claims that may be made due to actions or inactions of the Library Board or Saline County Public Library, against the Library Board or Saline County Public Library, with the County as an additional insured.</u>

**Article 2**. Strikethroughs are words or phrases to be deleted while underlined words or phrases are to be added to Library Ordinance 1978-1. All strikethroughs or underlined additions in this ordinance are to be deemed applied upon passage but prior to publication and application of the terms set forth herein.

**Article 3**. A copy of the amended Library Ordinance, incorporating the additions and deletions set forth in this ordinance, and this ordinance shall be on file in the Office of the County Clerk and available for public inspection during normal business hours.

**Article 4**. SEVERABILITY: If any part of this ordinance is held invalid, such invalidity shall not affect any other portion of this ordinance.

**Article 5.** REPEALER: Any ordinance or parts of ordinances in conflict herewith are hereby repealed.

DATE:   June 19, 2023             APPROVED: _____
                                                        MATT BRUMLEY
                                                        SALINE COUNTY JUDGE

ATTEST: _____   SPONSOR:   JOSH CURTIS, JP DISTRICT #7
                DOUG CURTIS                               EVERETTE HATCHER, JP #2
                SALINE COUNTY CLERK                       C J ENGEL, JP #9
                                                          BARBARA HOWELL, JP #4
                                                          ED ALBARES, JP #8
                                                          JUSTIN RUE, JP #5
                                                          CLINT CHISM, JP #11
                                                          J R WALTERS, JP #12
                                                          JIM WHITLEY, JP #10
2nd Reading                                               CARLTON BILLINGSLEY, JP #3

## ORDINANCE NO. 2023-__

**BE IT ENACTED BY THE QUORUM COURT OF SALINE COUNTY, STATE OF ARKANSAS, AN ORDINANCE TO BE ENTITLED: "AN ORDINANCE AMENDING ORDINANCE NO. 2004-34, THE LITTER CONTROL ORDINANCE."**

**WHEREAS**, Saline County is a beautiful county, with many natural assets, that has its natural splendor marred by litter; and

**WHEREAS**, Ordinance No. 2004-34 ("Litter Control Act") has been effective for almost 20 years, but amendments are needed to ensure that the public is properly aware of the Litter Control Ordinance and the help create sufficient disincentives to littering; and

**WHEREAS**, the Quorum Court of Saline County is committed to the goal of the Litter Control Act, which is to improve the quality of life for all citizens of the State of Arkansas and County of Saline.

**NOW, THEREFORE, BE IT ORDAINED BY THE QUORUM COURT OF SALINE COUNTY**

**Article 1.** Section 3 of the Litter Control Act entitled "ENFORCEMENT OF THE ACT" is hereby amended to add the following underlined language:

The County Judge of Saline County shall, to the extent there are funds available, cause signage to be placed on County roads referencing the Litter Control Act and possible monetary penalties for violating the Act.

**Article 2.** Section 8 of the Litter Control Act entitled "VIOLATIONS-PENALTIES" is hereby amended to add the following underlined and delete the following struck-through language:

Every person convicted of a violation of Section 4, 5, or 6 of this Act shall be fined not less than $500.00 $250.00 nor more than $1,000.00 $500.00 except:

(2) That those persons who violate Section 4, 5, or 6 of this Act and who are found to have committed the prohibited acts in furtherance of or as part of a commercial enterprise, whether or not that enterprise is the disposal of wastes, shall be guilty of "commercial littering" and as such shall be fined not less than $700.00 $350.00 nor more than $1,000.00 $500.00. Additionally, those convicted may be required to remove any litter disposed of in violation of this Act.

**Article 3.** Section 10 of the Litter Control Act entitled "PENALTY" is hereby amended to add the following underlined and delete the following struck-through language:

Any person who violates any provision of Section 9 of this Act shall be fined not less than $500.00 $250.00 nor more than $1,000.00 $500.00.

**Article 4.** Section 14 of the Litter Control Act entitled "PROCEEDS FROM SALE OF JUNK MOTOR VEHICLES, OLD VEHICLE TIRES AND INOPERATIVE OR DISCARDED HOUSEHOLD APPLIANCES" is hereby amended to add the following underlined and delete the following struck-through language:

PROCEEDS FROM SALE OF JUNK MOTOR VEHICLES, OLD VEHICLE TIRES, ~~AND~~ INOPERATIVE OR DISCARDED HOUSEHOLD APPLIANCES~~.~~ OR FINES RECEIVED PURSUANT TO THIS ACT.

Any fines received pursuant to the "Litter Control Act" shall be deposited into the "Litter Control Account" and used solely to pay for: (1) signage in Saline County informing the public of the Litter Control Act; and, (2) other educational awareness opportunities for the public associated with the Litter Control Act as deemed appropriate by the County Judge of Saline County.

**Article 5**. Any strikethroughs or underlined additions in Articles 1-4 above are to be deemed applied subsequent to passage but prior to publication and application of the terms set forth herein.

**Article 6**. The provisions of this Ordinance are to be liberally construed to accomplish the objectives and purposes hereof.

**Article 7**. If any section of this Ordinance shall be declared unconstitutional or unlawful, only that section of the ordinance shall be affected and all other provisions of the ordinance shall remain in full force and effect.

**Article 8**. Any parts of Saline County Quorum Court Emergency Ordinance 2004-34, or any other, or part of, any ordinance, resolution, rule, regulation now in effect that are in conflict with this Ordinance are herewith and hereby repealed to the extent of such conflict.

**Article 9**. A copy of the amended Litter Control Act, incorporating the additions and deletions set forth in this ordinance, and this ordinance shall be on file in the Office of the County Clerk and available for public inspection during normal business hours.


DATE:  July 17, 2023          APPROVED: _____
                                        MATT BRUMLEY
                                        SALINE COUNTY JUDGE

ATTEST: _____   SPONSOR: RICK BELLINGER, JP DISTRICT # 6
             DOUG CURTIS
         SALINE COUNTY CLERK

**RESOLUTION NO. 2023 - _____**

## SALINE COUNTY QUORUM COURT
## FEDERAL-AID PROJECT RESOLUTION

**A RESOLUTION EXPRESSING THE WILLINGNESS OF SALINE COUNTY TO UTILIZE FEDERAL-AID FUNDS FOR THE FOLLOWING COUNTY PROJECT: HIGHWAY 5 & DESOTO BLVD. ROUNDABOUT**

**WHEREAS,** Metroplan has approved Federal-Aid Surface Transportation Block Grant Program – attributable funds for the project at the following Federal and County participating ratios, up to the maximum Federal-Aid available:

| Type Work | Work Phase | Federal % | County % |
|---|---|---|---|
| Projects that reach construction | Preliminary Engineering | 80 | 20 |
| | Right-of-Way | 80 | 20 |
| | Utilities | 80 | 20 |
| | Construction | 80 | 20 |
| | Construction Engineering | 80 | 20 |
| Projects that never progress to construction | All Phases | 0 | 100 |

**NOW THEREFORE, BE IT RESOLVED BY THE QUORUM COURT OF SALINE COUNTY THAT:**

**Section I:** The County will participate in accordance with its designated responsibilities in this project.

**Section II:** The Saline County Judge Matt Brumley or his designated representative is hereby authorized and directed, on behalf of the Saline County Quorum Court, to execute all appropriate agreements and contracts necessary to expediate the construction of this County project.

**Section III:** The County pledges its full support and hereby authorizes the Arkansas Department of Transportation to initiate action to implement this project.

THIS RESOLUTION adopted this 17th day of July, 2023.

APPROVED: _____
           MATT BRUMLEY
           SALINE COUNTY JUDGE


ATTEST: _____
           DOUG CURTIS
           SALINE COUNTY CLERK

## APPROPRIATION ORDINANCE NO. 2023 - ____

**BE IT ENACTED BY THE QUORUM COURT OF SALINE COUNTY, STATE OF ARKANSAS, AN ORDINANCE TO BE ENTITLED:**

**"AN ORDINANCE APPROPRIATING FUNDS FROM THE DISTRICT COURT AUTOMATION FUND FOR THE PURPOSE OF DISTRICT COURT RELATED TECHNOLOGY AND FOR OTHER RELATED PURPOSES."**

**WHEREAS,** the City of Benton and the County of Saline in cooperation and in conjunction with each other provide local access for the public to the judicial system through the District Court of Saline, Benton Division; and

**WHEREAS,** Ark. Code § 16-13-704 allows the District Court to collect an installment fee each month on each account that the Judge allows a defendant to make time payments on and said installment fees are collected and deposited each month in an account held by the City of Benton entitled the "District Court Automation Fund" solely for the purpose of district court-related technology, and;

**WHEREAS,** Ark. Code § 16-13-704 requires that expenditures from the District Court Automation Fund be approved by the District Judge and authorized by the City Council of the City of Benton and the Quorum Court of the County of Saline.

**NOW THEREFORE BE IT ORDAINED BY THE QUOURM COURT OF SALINE COUNTY, ARKANSAS:**

**Article 1.** That the amount of $20,495.00 currently held in the District Court Automation Fund is hereby authorized and appropriated to be spent on district court-related technology, to include replacement of office and court computers and other technology used for the purpose of the District Court.

**Article 2.** That the City of Benton Chief Financial Officer, upon joint approval by the Quorum Court of Saline County, is authorized to transfer said amount from the District Court Automation Fund and pay for district court-related technology.

**Article 3.** It is hereby found and determined that the immediate passage of this Ordinance is necessary for the continued efficient maintenance of the District Court of Saline County and being necessary for the immediate preservation of the public health, safety and welfare; THEREFORE, an emergency is hereby declared to exist and this Ordinance shall be in full force and effect from and after its passage and approval.

DATE:   JULY 17, 2023          APPROVED:   _____
                                            MATT BRUMLEY
                                            SALINE COUNTY JUDGE

ATTEST: _____     SPONSOR:    J. R. WALTERS, JP DISTRICT NO. 12
          DOUG CURTIS
          SALINE COUNTY CLERK

**RESOLUTION NO. 2023-___**

**SALINE COUNTY QUORUM COURT**

A RESOLUTION APPOINTING STEVE COX TO SOLEMNIZE THE MARRIAGE OF JEREMY COX AND BRANDI BURTON IN SALINE COUNTY, ARKANSAS

**WHEREAS,** Steve Cox has petitioned the Quorum Court, requesting to be appointed for the purpose of solemnizing the marriage of Jeremy Cox and Brandi Burton in Saline County, Arkansas and;

**WHEREAS,** A.C.A. § 14-20-110 provides that the County Quorum Court may appoint special officials to solemnize marriages within their respective counties; and

  **NOW THEREFORE, BE IT RESOLVED** IN THE QUORUM COURT OF SALINE COUNTY, ARKANSAS that the Quorum Court of Saline County hereby appoints Steve Cox, pursuant to A.C.A. § 14-20-110, for the purpose of solemnizing the marriage of Jeremy Cox and Brandi Burton, in Saline County, Arkansas.

DATE: JULY 17, 2023     APPROVED: _____
               MATT BRUMLEY
               SALINE COUNTY JUDGE

ATTEST: _____    SPONSOR: JUSTIN RULE, JP DISTRICT # 5
   DOUG CURTIS
   SALINE COUNTY CLERK

**EMERGENCY ORDINANCE NO. 2023-_____**

**BE IT ENACTED BY THE QUORUM COURT OF SALINE COUNTY, ARKANSAS, AN ORDINANCE TO BE ENTITLED:**

**AN EMERGENCY ORDINANCE ADOPTING CERTAIN RULES AND REGULATIONS CONCERNING EXTERNAL NOISE ATTENUATION OF DATA CENTERS AND TO PREVENT NOISE DISTURBANCE IN SALINE COUNTY AND WITHIN ITS UNINCORPORATED LIMITS; TO DECLARE AN EMERGENCY; AND FOR OTHER PURPOSES**

**WHEREAS**, the equipment associated with the cooling systems and generators required to operate data centers generate broadband noise and low-frequency hums that result in noise disturbance. Noise disturbance is the cause of degradation and may produce negative impacts on public health, property and the environment.

**WHEREAS,** noise attenuation should be an integral part of the design and construction of data centers in order to prevent noise pollution and noise disturbance.

**WHEREAS**, the county finds that the public interest is served by the prevention of unreasonable noise emanating externally from the Data Centers and the provisions of this Ordinance are enacted for the purpose of preserving and protecting the public health, safety, welfare and property of the citizens of Saline County, Arkansas.

**THEREFORE, BE IT ORDAINED BY THE QUORUM COURT OF SALINE COUNTY, ARKANSAS, AS FOLLOWS:**

**ARTICLE 1.  Purpose and Applicability**

All Data Centers constructed within this jurisdiction shall be designed and built to incorporate external noise attenuation measures in order to minimize the impact of noise disturbance on the residents of Saline County, Arkansas.

This ordinance shall apply to limit the noise disturbance originating within the unincorporated limits of Saline County, Arkansas.

**ARTICLE 2: Definitions**

For the purpose of this Ordinance, the following definitions shall apply unless the context clearly indicates or requires a different meaning:

1. *Ambient Noise*: The all-encompassing noise level associated with a given environment, being a composite of sounds from all sources, excusing the alleged offensive noise, at the locations and approximate time at which comparison with the alleged offensive noise is to be made.

2. *Data Center*: A facility constructed and operated that is engaged in storage, management, processing, and transmission of digital data, including facilities used for cryptocurrency mining, which houses networked computer systems along with supporting equipment such as batteries, back-up power generators, HVAC and cooling systems.
3. *Decibel (dB)*: A unit for measuring the volume of a sound, equal to twenty (20) times to the base 10 (10) of the ratio of the pressure of the sound measured to the referenced pressure, which is twenty (20) micropascals (twenty (20) micronewtons per square meter.)
4. *Mechanical Equipment*: The networked computer systems along with supporting equipment such as batteries, backup generators, and cooling systems housed on the Data Center's property.
5. *Noise Attenuation*: The reduction of noise levels through the use of sound-absorbing material, architectural design techniques, and/or any other suitable means.
6. *Noise Disturbance* is any sound which:
    a. Endangers or injures the safety or health of humans or animals; or
    b. Annoys or disturbs a reasonable person of normal sensitivities; or
    c. Endangers or injures person or real property.
7. *Person*: An individual, association, partnership, or corporation, including any officer, employee, department, or agency.
8. *Property Line*: An imaginary line along the ground surface, and its vertical extension, which separates the real property owned by one person from that owned by another person, but not including intra-building real property divisions.
9. *Sound*: An oscillation in pressure, particle displacement, particle velocity or other physical parameter, in a medium with internal forces that causes compression and rarefaction of that medium. The description of sound may include any characteristic of such sound, including duration, intensity and frequency.
10. *Sound Level*: The weighted sound pressure level obtained by the use of s sound level meter and frequency weighting network, such as A, B, or C as specified in American National Standards Institute specifications for sound level meters (ANSI SI. 4-1971, or the latest approved revision thereof). If the frequency weighting employed is not indicated, the A-weighting shall apply.
11. *Sound Level Meter*: An instrument which includes a microphone, an amplifier, RMS detector, integrator or time averager, output meter, and weighting networks used to measure sound pressure levels.

## ARTICLE 3: Noise Attenuation Requirements

Before a Data Center has commenced construction or operating within this jurisdiction, the property owner and operator proposing to build a Data Center shall comply with the following:

1. *Notice Requirements*
    a. The property owner and operator must notify all residents within a half-mile radius of the parcel, including any affiliated homeowners' association operating

2

within the half-mile radius, that the property owner and operator intends to build and operate a Data Center on the property. The notice required in this section must be mailed to all postal addresses and homeowners' association addresses contained within a half-mile radius extending from the property line where the proposed Data Center will be built. Proof of notification shall be filed with the county clerk's office within 30 days of providing notice. The property owner and operator must notify the County Judge that the property owner and operator intends to build and operate a Data Center. The notification must include the location for the proposed data center.

2. *Noise Study Requirements*
   a. The property owner of the lands upon which the Data Center is to be located shall conduct a sound study performed by a third-party acoustic engineer to document baseline sound levels in the area of the proposed Data Center, including noise levels measured at the property line in eight locations (north, south, east, west, northeast, northwest, southeast, southwest.) The report of the study must include sound mitigation recommendations based on the results of the sound study. The property owner must provide a copy of the report of the study to the county judge and file with the county clerk within 30 days of completion of the report.

3. *Noise Attenuation Plan Requirements*
   a. The property owner must consult with a third- party architectural or design firm to develop a building plan that includes necessary noise attenuation measures in order to prevent the external sound level emanating from the Data Center from exceeding the sound level limitations below which will be considered a noise disturbance. The building plan is not required to adopt any or all of the noise attenuation recommendations so long as the plan includes noise attenuation measures that the architectural or design firm deems adequate to be in compliance with this Ordinance. Noise attenuation measures may include but not limited to:
      i. Soundproofing walls, screens, panels, fences, or enclosures
      ii. Buffer yards
      iii. Other noise attenuation measures recommended by the third-party acoustic engineer
   b. Mechanical equipment must be shown on any proposed plan and must be fully screened on all sides. Mechanical equipment not screened by a facade of the building must be screened by a visually solid fence, screen wall or panel, or parapet wall and constructed with a design, materials, details, and treatment compatible with those used on the nearest facade of the building.
   c. The property owner must provide a copy of the building plan to the county judge and file with the county clerk within 30 days of completion of the plan prior to construction.
   d. Any additions, changes, or expansions of the Data Center must comply with the noise attenuation requirements of this Ordinance and must be designed and

submitted to the county judge and file with the county clerk within 30 days of completion of the report.

4. *Post Completion Noise Study Requirements*
   a. Upon the Data Center's completion, the Data Center operator must conduct a post-construction noise study performed by a third-party acoustic engineer to document noise levels emanating from the Data Center when mechanical equipment is running at full capacity, including all HVAC units and generators necessary for peak operation. Noise levels are to be measured at the property line in the original eight locations used during the baseline study. The Data Center operator must provide a copy of the report to the county judge and file with the county clerk within 30 days of completion of the study.
   b. The Data Center shall not begin operations until the completion of the post-construction noise study and submission to the county judge and county clerk as required above. In order for the Data Center to be in compliance, the noise study results must show that its operation is in compliance with this Ordinance. If the results show that the Data Center is not in compliance with this Ordinance, the Data Center will be unable to commence operation until the required noise attenuation measures and noise limitations are met.
   c. Furthermore, the Data Center operator must conduct annual noise studies under the baseline and post-construction studies specifications in accordance with subsections (a) and (b) above. The Data Center operator must provide the results to the county judge and file with the county clerk within 30 days after the anniversary date of the first sound study report.

## ARTICLE 4: Procedure for Measurement

All tests shall be conducted according to the following procedures:

1. *Complaint Driven:* When the measurement is the result of a complaint, measurements will be taken at the property line of the receiving property.
2. *Normal Monitoring:* When the measurement procedure is in the normal course of monitoring sound, the measurements will be taken at the real property line of the source of the sound.
3. *Outdoor Conditions:* No outdoor measurements must be taken while winds exceed (including gusts) 15 miles per hour; under conditions that will allow the sound level meter to become wet; or when the ambient temperature is out of range of tolerance on the sound meter.
4. *Calibration:* The sound level meter must be verified and calibrated according to the manufacturer's specifications immediately prior to taking the measurements.
5. *Meter Placement:* The sound level meter must be placed a minimum of four feet above the ground or from any reflective surface. The microphone must be pointed at the sound source.
6. *Measurements:* Measurements must include "high", "average", and "low" readings. If the sound level meter does not provide these multiple readings, a minimum of three

separate measurements must be taken at a single location at varying time intervals. The average sound level reading shall be used to determine whether there has been a violation of this Ordinance.

7. *Monitoring Report:* The report for each measurement session must include:
   a. The day, date and time of the measurements,
   b. Date and time of recent calibration,
   c. Temperature and wind speed the time of measurement,
   d. Identification of the monitoring equipment,
   e. Location, land use, and description of the source,
   f. Location and land use of the listener, and
   g. Sound level measurements.
8. *Extraneous Sounds:* If there are extraneous sound sources that are unrelated to the measurements and increase the monitored sound level, the measurement shall be postponed until these noises subside.

## ARTICLE 5: Noise Limitations

It shall be unlawful for any Data Center to make, or continue to cause or permit to be made or continued, noise levels constituting a noise disturbance. For the purposes of this section, the external noise level emanating from Data Centers shall be deemed disturbing to a person, reasonably calculated to disturb the peace and unreasonably offensive and injurious to the public, or their property, if the sound level is:

1. 65 dBa or higher during the hours of 8 A.M. to 10 P.M. or 55 dBa or higher during the hours of 10 P.M. to 8 A.M. (as determined by a third-party acoustic engineer) measured at the property line of the receiving property.
2. The standard which may be considered in determining whether a violation of this Ordinance exists includes but is not limited to the following:
   a. The level or volume of the noise
   b. The time of day or night the noise occurs
   c. The duration of the noise
   d. Whether the noise is recurrent, intermittent or constant
   e. Whether proper and reasonable noise attenuation methods were followed and maintained

## ARTICLE 6: Violations

1. Any or all of the following persons may be held responsible for noise violations:
   a. The person operating the equipment or creating the noise;
   b. The person who employs the person operating the equipment or creating the noise at the time of the violation;
   c. The person who owns or rents the property where the violation occurs.
2. The following acts, and the causing thereof, are declared to be in violation of this Ordinance:

     a. The sound level emanating from the Data Center exceeds 65 dBa or higher during the hours of 8 A.M. to 10 P.M. or 55 dBa or higher during the hours of 10 P.M. to 8 A.M. measured at the property line of the receiving property.
     b. The noise attenuation measures provided in the design plan to the county judge are not incorporated in the construction of the Data Center.
     c. Any of the required sound study results are not filed with the county judge and the county clerk within 30 days of completion of the report.
     d. The building plan is not filed with the county judge and the county clerk within 30 days of completion of the plan prior to construction.
     e. Failure to act in accordance with any other provision of this Ordinance.

3. All data centers shall be in compliance with the requirements of this Ordinance before commencing operation; failure to do so will be deemed in violation of this Ordinance and result in an injunction and/or a stay in commencing operation.

## ARTICLE 7: Penalties

(1) Any person(s), firm, corporation, partnership, association, owner, occupant, agent or anyone having ownership in the subject property or supervision or control over the Data Center that violates or fails to comply with any provision of this Ordinance, shall be guilty of a misdemeanor.

(2) Upon conviction of such violation, any offending party shall be punished by fine of $1,000 for any one specified offense or violation, or double that sum for repetition of the offense or violation. If the act prohibited is continuous in time, the fine or penalty for allowing the continuance thereof, in violation of this Ordinance, shall be $500 for each day that it may unlawfully continue. If the prohibited act continues after conviction of violation, an injunction in court of proper jurisdiction to abate the nuisance and violation of the Ordinance may be sought and awarded.

(3) The county or any citizen shall be entitled to pursue all legal and equitable remedies available under the law in order to abate the nuisance and compel compliance with this Ordinance, including injunctive relief and any civil damages the court deems appropriate.

(4) Until the Data Center is in compliance with this Ordinance and required noise attenuation measures are implemented and noise limitations met, the data center shall cease operations.

## ARTICLE 8: Severability

If any provision of this Ordinance is found to be invalid by the decision of any court of competent jurisdiction, such invalidity shall not affect the remaining sections, phrases, and provisions of this Ordinance which remain valid and enforceable.

## ARTICLE 9: Emergency Clause

The Quorum Court finds that the immediate implementation of this ordinance is necessary for the preservation of the public's peace, health, safety, welfare, and property, an emergency is hereby declared to exist and that this Ordinance is to be in effect immediately after its adoption.

PASSED AND APPROVED this _____ day of _____, 2023.

APPROVED: _____

        MATT BRUMLEY
        COUNTY JUDGE

ATTEST: _____      SPONSOR: KEITH KECK, JP DISTRICT # 13

        DOUG CURTIS
        COUNTY CLERK

# EXHIBIT E

# SALINE COUNTY QUORUM COURT
## MINUTES
## AUGUST 21, 2023

The Saline County Quorum Court met on Monday, August 21, 2023 at 6:30 p.m. in Courtroom #3 in the Saline County Courthouse. County Judge Matt Brumley called the meeting to order. Justice of the Peace Jim Whitley gave the invocation and Justice of the Peace Justin Rue led the Pledge of Allegiance.

Roll call was taken with all members present.

Motion by Rick Bellinger and seconded by Barbara Howell to approve the Minutes from the July 17, 2023 Quorum Court Meeting. Motion passed unanimously by voice vote.

REPORTS/PROCLAMATIONS:

NONE.

COMMENTS:

Judge Brumley moved the public comment to precede Exhibit "A". He informed those in attendance that had signed in to speak they would each have 3 minutes with a 30 second warning. He further stated that he would allow a total of 45 minutes for comment.

The following spoke in this order:

Robin Robinson
Rachel Glenn
Betty Van Bibber
Judy Pridgen
Pat Roberts
Fred McGraw
Pam Vidt
Carter Kirby (not a resident of Saline Co.)
Mary Lewis
Kristin Netters Higgins
Rhonda Covington
Dean McDonald, Jr.
Angela Gray
Brian Rousey (asked to leave podium)
Allison Gray
Gary Don Beck
Amanda Ewald
Jennifer Lancaster
Clint Lancaster

OLD BUSINESS:

Exhibit "A": Error found in proposed ordinance; motion by Josh Curtis and seconded by Clint Chism to suspend the rules and take it back to the First Reading.

Saline County Clerk Doug Curtis read corrected Ordinance Amending Ord. 1978-1, to revise the Obligations, Duties and Powers of the Administrative Saline County Library Board. Motion to approve First Reading; motion passed unanimously by voice vote.

Motion by Josh Curtis and seconded by Rick Bellinger to suspend the rules and read title only of Second Reading of Exhibit "A". Rollcall vote taken; motion passed unanimously.

Motion by Josh Curtis and seconded by Jim Whitley to suspend the rules and read title only of Third Reading of Exhibit "A". Motion passed unanimously by voice vote.

Rollcall vote taken to pass Exhibit "A"; motion passed by majority, with 11 for and 2 opposed. Ordinance 2023-17.

Exhibit "B": Motion by Rick Bellinger and seconded by J. R. Walters for approval of Second Reading of Ordinance Amending Ord. 2004-34; The Litter Control Ordinance. Motion passed unanimously by voice vote.

NEW BUSINESS:

Motion by C. J. and seconded by J. R. Walters to suspend the rules and read title only of Exhibit "C". Motion passed unanimously by voice vote.

Exhibit "C": Motion by C. J. Engel and seconded by Justin Rue to approve Resolution authorizing the Grant Application Process for the Edward Byrne Memorial Assistance Grant (JAG) Program. Motion passed unanimously by voice vote. Resolution 2023-12

Exhibit "D": Motion by J. R. Walters and seconded by Rick Bellinger for Appointment of Guilmar Juarez appointment to the Saline County, Arkansas Waterworks and Sanitary Sewer Public Facilities Board (Woodland Hills). Motion approved unanimously by voice vote.

Exhibit "E": This exhibit was withdrawn.

Motion by Rick Bellinger and seconded by Justin Rue to suspend the rules and read title only of Exhibit "F". Motion passed unanimously by voice vote.

Exhibit "F": Motion by Rick Bellinger and seconded by J. R. Walters to approve Ordinance to amend the 2023 Saline County Budget Ord. 2023-36 and amendments thereto; to appropriate Professional Development Recognition Payments and for other purposes. Roll call vote; motion approved unanimously. Ordinance 2023-18.

Motion by Carlton Billingsley and seconded by Josh Curtis to suspend the rules and read title only of Exhibit "G". Motion passed unanimously.

Exhibit "G": Motion by Carlton Billingsley and seconded by Josh Curtis to approve Ordinance Amending 2023 Saline County Budget Ord. 2022-36. Roll call vote; motion approved unanimously. Ordinance 2023-19.

DISCUSSION:

C. J. Engel asked the judge for an update of the consolidation of the OEM office for the City of Benton with the City of Bryant. Judge Brumley responded that there is an upcoming meeting which should address progress made. The judge also introduced Jerry Cohen as the new OEM director for the county.

Keith Keck gave an update on the Hot Springs Village pet vaccination clinic and thanked the county for the funding they have provided.

Barbara Howell announced that the annual fund raiser for the Avilla Fire Department will be held on September 23, 2023.

Motion made by C. J. Engel and seconded by J. R. Walters to adjourn. Motion passed by voice vote.

Meeting adjourned at 7:40 p.m.