IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

FAYETTEVILLE PUBLIC LIBRARY, a political
subdivision in the City of Fayetteville, State of
Arkansas; et al.

                          PLAINTIFFS

v.                   NO. 5:23-CV-05086

CRAWFORD COUNTY, ARKANSAS; et al.

                          DEFENDANTS

## DECLARATION OF JEFF TREXLER

I, Jeff Trexler, pursuant to 28 U.S.C.§ 1746, do declare:

1. I am the Interim Director of the Board of the Comic Book Legal Defense Fund ("CBLDF"), a plaintiff in this action. I have held this position since 2020. I make this declaration in support of plaintiffs' motion for summary judgment.

2. The CBLDF is a nonprofit organization founded in 1986 dedicated to protecting the legal rights of the comic arts community. With a membership that includes creators, publishers, retailers, educators, librarians, and fans, the CBLDF has defended dozens of First Amendment cases in courts across the United States and led important educational initiatives promoting comics literacy and free expression.

3. While comic books, graphic novels, webcomics, newspaper strips, and other expressions of the comic arts are often mischaracterized as material directed primarily at children, they have long appealed to adult readers. In recent years, the comic arts have received widespread recognition for their value in expressing serious literary, artistic, political, and scientific content in genres

across the demographic categories, including middle-grade, young adult, and material addressed to older audiences. A particularly significant historical milestone in this regard was the awarding of a Pulitzer Prize in 1992 to Art Spiegelman for *Maus*, a graphic novel about the Holocaust. Subsequent decades have seen numerous other cartoonists and graphic novelists win significant awards, including Alison Bechdel, author of *Fun Home* (MacArthur Award, 2014), Gene Luen Yang, author of *American Born Chinese* (MacArthur Award, 2016)*,* Lauren Redness, author of *Radioactive: Marie and Pierre Curie, A Tale of Love and Fallout* (MacArthur Award, 2016)*,* Maia Kobabe, author of *Gender Queer: A Memoir* (American Library Association Alex Award and Stonewall Honor, 2020), and Jerry Craft, author of *New Kid* (Newberry Medal, 2020).

4. Section 1 of Act 372 of 2023 ("Act 372") prohibits making books that are "harmful to minors" available to minors. In so doing, it creates a substantial risk that access to constitutionally protected materials will be limited or removed for members of the CBLDF community in Arkansas, including retailers, teachers, librarians, and readers.

5. Act 372 creates a reasonable apprehension among Arkansas retailers, school officials, and library administrators that they and their employees may be at risk of prosecution under Section 1 for permitting minors to view or access constitutionally protected material that might be deemed "harmful to minors" under the statue. Determining what books may cross this vague line is not at all clear, especially in light of recent mischaracterizations of certain graphic novels as obscene, pornographic, or otherwise "harmful to minors" despite the books' demonstrable and widely recognized serious value for older minors.

6. As a result, Arkansas retailers seeking to comply with Section 1 of Act 372 are faced with untenable choices.

a. The bookstore could bar all patrons under the age of 18 from entering the bookstores. This would not only have a deleterious effect on children and young adult book sales, but it also would imply the store only sold "adult" books, which would be immensely detrimental to business. Further, it would prevent minors from perusing and purchasing materials constitutionally protected as to them.

b. A bookstore could exclude from its inventory all graphic novels and related comic art material that could conceivably fall within the scope of Section 1. However, this would curtail the availability of a number of popular books, including bestsellers distributed by mainstream publishers, to the point of risking a store's financial viability. In addition, this alternative would create practical difficulties in advance orders of new books, since bookstores rarely have the opportunity to review books before ordering them. This alternative would also prevent minors and adults from perusing and purchasing materials constitutionally protected as to them.

c. Alternatively, the bookstore could place all materials that could be "harmful to minors" behind a counter, but given the large number of constitutionally protected books involved, that may entail a substantial and expensive restructuring of the store to ensure space. Since the display of books is crucial to book sales, this would also have a substantial negative impact on a store's revenue. This option would also necessitate that employees perform the uncertain task of designating books across multiple genres as "harmful to minors." This too would restrict the ability of adults and minors to peruse and purchase materials constitutionally protected as to them.

d. The bookstore could also designate a room "adults only." This would, like the "behind the counter" option, potentially involve costly renovations and burden

employees with the separation of books. Further, this new room would be difficult to monitor, necessitating keys or electronic access (which would also entail additional costs) and would be confusing to patrons. That kind of segregation would also lead to drop in sales of the segregated books, as many adults would be hesitant to go into the "adults only" room. As with the other alternatives, this would restrict the ability of adults and minors to peruse and purchase materials constitutionally protected as to them.

7. For creators in the comic arts, any of the above alternatives would substantially limit their ability to write on topics of their choosing and to have their work available and displayed prominently in both libraries and bookstores, which is vital to their ability to make a living in their chosen profession.

8. For all the reasons stated above, Arkansas members of the CBLDF community have a reasonable fear of prosecution under Section 1. If Section 1 is not held unconstitutional, retail members will feel forced to restrict access to materials available in their stores to a significant degree; librarians and teachers will be forced to limit access to constitutionally protected works; and author members will be pressed to self-censor their writing despite the First Amendment's long-established safeguards for freedom of speech.

Executed on this 10th day of May, 2024.

                                           /s/ *Jeff Trexler*
                                           Jeff Trexler