IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

FAYETTEVILLE PUBLIC LIBRARY, a political
subdivision in the City of Fayetteville, State of
Arkansas; et al.                                                                               PLAINTIFFS

v.                              NO. 5:23-CV-05086

CRAWFORD COUNTY, ARKANSAS; et al.
                                                                                                DEFENDANTS

## DECLARATION OF KANDI WEST

I, Kandi West, pursuant to 28 U.S.C.§ 1746, do declare:

1. I am the co-owner of WordsWorth Books, an independent bookstore that sells new books and gifts in historic heights neighborhood in Little Rock, Arkansas, a plaintiff in this action. I make this declaration in support of plaintiffs' motion for summary judgment.

2. WordsWorth Books sells books for people of all ages, and regularly hosts author events and children's storytime events. Our customers range in age from babies to senior citizens and include students who are 16-17 years of age, and therefore minors. Often parents and grandparents and other adults browse the store with younger children, and there is no section from which younger children are restricted.

3. Section 1 of Act 372 of 2023 ("Act 372") prohibits making books that are "harmful to minors" available to minors, forcing this large quantity of constitutionally protected materials to be segregated, and not prominently displayed.

4. We fear that anyone who works at our store may be at risk of prosecution under Section 1 for permitting minors to view or access constitutionally protected material which might be deemed "harmful to minors" under the meaning of the statue.

5. I am unclear how I or my staff would know which books may meet the standard to be "harmful to minors" under Arkansas' variable obscenity statue, but our bookstore may contain hundreds of books with sexually related narrative that might be deemed "harmful to minors" and those books fall in many literary genres, such as fiction, nonfiction, romance, photography, health, art/photography, and new releases. These are sold in different sections of the store. Examples of books we carry that could be appropriate for a 17-year old but perhaps not a 10-year old include: "The Hate U Give" by Angie Thomas; "Speak" by Laurie Halse Anderson; "The Color Purple" by Alice Walker; "Maus I: A Survivor's Tale: My Father Bleeds History" and "Maus II: A Survivor's Tale: And Here My Troubles Began" by Art Spiegelman; "The Catcher in the Rye" by JD Salinger; "The Bluest Eye" by Toni Morrison; "The Book Thief" by Markus Zusak; and "Looking for Alaska" by John Green.

6. Adults generally become acquainted with our books when they are readily visible. While many customers come into WordsWorth Books asking for a specific title, many more discover a new title while browsing. If titles were hidden away, those sales would be lost. The prominent display of books shelved or displayed on tables in an orderly, easily accessible manner in an atmosphere conducive to browsing is essential for our commercial success, and also essential to fulfill our goal of connecting readers with books.

7. None of the options available to us to comply with Section 1 of Act 372 are tenable:

    a. We could bar all patrons under the age of 18 from entering the bookstore. This would alter our purpose. This would also dramatically affect children and young

adult book sales, and of course our events for children, and would imply the store only sold "adult" books, which would be immensely detrimental to business. Further, it would prevent older minors from perusing and purchasing materials constitutionally protected as to them.

b. We could limit our inventory to books or other items not regulated by Section 1. It would be hard to determine what category many books fall into and would curtail the availability of a number of very popular books, including some bestsellers. Thus, this alternative is not practically or commercially feasible. In addition, this alternative would create practical difficulties in ordering new books because we often do not have the opportunity or the time to review books before ordering them. This alternative would also prevent older minors from perusing and purchasing materials constitutionally protected as to them

c. Alternatively, we could place all materials that could be deemed "harmful to minors" behind a counter, but, given the large number of constitutionally protected books involved, that would entail a restructuring of the store to ensure space. Since the display of books is crucial to book sales, this would also hurt sales. This option would also necessitate that our employees perform the difficult task of designating books across multiple genres as "harmful to minors." This too would restrict the ability of adults and older minors to peruse and purchase materials constitutionally protected as to them.

d. We could also designate a room "adults only." This would, like the "behind the counter" option, potentially involve costly renovations and burden employees with the separation of books. Further, this new room would be difficult to monitor,

necessitating keys or electronic access (which would also entail additional costs) and would be confusing to patrons. That kind of segregation would also lead to drop in sales of the segregated books, as many adults would be hesitant to go into an "adults only" room. As with the other alternatives, this would restrict the ability of adults and older minors to peruse and purchase materials constitutionally protected as to them.

8. For all the reasons stated above, we fear prosecution under Section 1. If Section 1 is not held unconstitutional, we will be forced to self-censor materials and restrict available in our stores to a great degree and to great business detriment, or risk criminal liability.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 10th day of May, 2024.

>/s/ *Kandi West*
>Kandi West