**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

FAYETTEVILLE PUBLIC LIBRARY, a political subdivision
in the City of Fayetteville, State of Arkansas; et al.                **Plaintiffs**

**Case No. 5:23-cv-05086-TLB**

CRAWFORD COUNTY, ARKANSAS; et al.                          **Defendants**

**THE PROSECUTING ATTORNEYS' RESPONSE TO**
**THE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

As explained in the Prosecuting Attorneys' motion for summary judgment, Sections 1 and

5 of Act 372 of 2023 are constitutional. Section 1 is a criminal provision that prohibits furnishing

an item to a minor if the item is obscene to minors; every binding decision on similar laws has

upheld the law. The Plaintiffs ask the Court to depart from those binding decisions. Section 5

requires libraries to establish criteria for the selection of physical materials in their collections and

also requires libraries to establish a policy with minimum procedures to allow certain people to

challenge materials that are in the collection but do not meet the selection criteria. Curating mate-

rials in a public (that is, government) library is government speech, and even if it isn't, Section 5

is constitutional.

**Facts**

The Prosecuting Attorneys incorporate by reference the factual assertions in their motion

for summary judgment and supporting brief. *See* Docs. 93, 97.

**1. Section 1**

Section 1 of Act 372 makes it a crime to "knowingly . . . [f]urnish[], present[], provide[],

make[] available, give[], lend[], show[], advertise[], or distribute[] to a minor an item that is harm-

ful to minors." Ark. Code Ann. § 5-27-212(b)(1). In turn, "harmful to minors" is defined as "any

description, exhibition, presentation, or representation, in whatever form, of nudity, sexual con-

duct, sexual excitement, or sadomasochistic abuse, when the material or performance, taken as a

whole, has the following characteristics":

- The average person eighteen (18) years of age or older *applying contemporary community standards* would find that the material or performance has a predominant tendency to appeal to the prurient interest in sex to minors;

- The average person eighteen (18) years of age or older *applying contemporary community standards* would find that the material or performance depicts or describes nudity, sexual conduct, sexual excitement, or sadomasochistic abuse in a manner that is patently offensive to prevailing standards *in the adult community* with respect to what is suitable for minors; and

- The material or performance lacks serious literary, scientific, medical, artistic, or political value for minors.

Ark. Code Ann. § 5-68-501(2) (emphases added).

The "contemporary community standards" would not necessarily treat all minors equally,

so an item may not be obscene to a 17-year-old, even though it may be obscene to a 10-year-old.

Thus, Section 1 does not treat all minors as a class. *See Shipley, Inc. v. Long*, 195 S.W.3d 911, 917

(Ark. 2004) (declining to interpret "harmful to minors" as treating all minors as a class based on

what would be "harmful" only to 17-year-old minors).

The Prosecuting Attorneys highlight two additional points in response to the Plaintiffs'

briefing. First, throughout their briefing, the Plaintiffs base their alleged injury on items that they

say without support "could" or "might" be considered by someone "potentially" harmful to minors.

Doc. 101, at 19 ("could"); 8, 10, 26 n.14 ("might"); *id.* at 10, 11, 12, 26 ("potentially"). As ex-

plained in the Prosecuting Attorneys' briefing, the Plaintiffs do not present evidence or argument

that they in fact possess or want to possess items that are obscene as to minors or that they want to

or may furnish those items to minors. In one spot, the Plaintiffs' brief says that because of Section

1 minors will be denied access to certain named books. Doc. 101, at 12. But the Plaintiffs refused

to take a position on whether "the content of the books" "violate[s] Section 1." Doc. 99-24, at 91:5–7 (Coulter Depo.). The other evidence cited similarly declined to take a stance. *See, e.g.*, Doc. 99-4, ¶ 10 (Coffey Decl.) (saying some items "*could* be deemed inappropriate" and "*unfairly* characterized" but not saying that it is—or even could be considered to be—obscene as to minors under Section 1 (emphases added)); Doc. 99-11, ¶ 4 (Jordan Decl.) (saying only that some items "*might* be deemed" obscene as to minors (emphasis added)); Doc. 99-18, ¶ 4 (West Decl.) (same). Thus, there is no evidence that the Plaintiffs intend to or will likely violate Section 1 or will be denied access to an item they want to possess.

Second, although the Plaintiffs say rearranging their establishments or banning minors will impose costs on them, they offer no facts to explain why they cannot comply with Section 1 in the same way that was upheld by the Eighth Circuit in *Upper Midwest Booksellers Ass'n v. City of Minneapolis*—wrapping items in opaque covers. 780 F.2d 1389, 1391 (8th Cir. 1985). Nor do they offer facts about why keeping them in separate inaccessible areas—which was also upheld in *Upper Midwest*—would be more burdensome on them than on the *Upper Midwest* Plaintiffs.

## 2. Section 5

The Prosecuting Attorneys highlight two facts related to Section 5. First, even though the library Plaintiffs' vagueness challenge to Section 5 is related to the word "appropriateness," they do not mention that their library policies use the word "appropriate," or its derivatives, 27 times, showing that they have no difficulty understanding the word when they use it. *See* Doc. 97, at 25.

Second, in footnote 5, the Plaintiffs say that they asked the Prosecuting Attorneys "if any of the books on a list of twenty (20) books . . . would be considered 'harmful to minors' within the meaning of Section 1" and that the Prosecuting Attorneys objected to the interrogatory "as *unduly burdensome to the extent it seeks to require them to read and evaluate the 20 listed books*." Doc. 101, at 10–11 n.5 (emphasis in original). The Plaintiffs did not mention that they originally asked

3

each Prosecuting Attorney to read and evaluate **97 books**—totaling hundreds of thousands of pages across the Prosecuting Attorneys—and answer multiple other interrogatories. Ex. 1 (Plaintiffs' Improper Discovery Requests); Ex. 2 (Prosecuting Attorneys' RFP and Interrogatory Response). Even though the Plaintiffs were in clear violation of the Federal Rules of Civil Procedure's interrogatory limit, the undersigned offered to partially respond to a limited number of interrogatories in compliance with the Federal Rules. Ex. 3 (Counsel Emails re: Interrogatories). By the time the Plaintiffs served their new interrogatories with the list of 20 books, the Prosecuting Attorneys had one business day to respond before the discovery deadline. Doc. 101-25, at 4, 6; Ex. 3 (Counsel Emails re: Interrogatories). The Plaintiffs' suggestion that it is not unduly burdensome for each of the Prosecuting Attorneys to read and evaluate 20 books within one business day is not relevant or accurate.

## Legal Standard

To be granted, the Plaintiffs' motion for summary judgment must demonstrate that "there is no genuine dispute regarding any material fact and that [the Plaintiffs are] entitled to judgment as a matter of law." *McGowen, Hurst, Clark & Smith, P.C. v. Commerce Bank*, 11 F.4th 702, 710 (8th Cir. 2021). Even if the Plaintiffs make that showing in their initial motion, the Defendants need only "show a genuine dispute" exists by "identify[ing] 'specific facts' that are in dispute." *Id.* (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)). "If, taking the record as a whole, a reasonable fact finder could . . . find for the nonmovant, there is [a] genuine dispute of material fact." *Id.*

Moreover, the Plaintiffs bring a facial challenge to Act 372. *See* Doc. 75, at ¶ 1. "Facial challenges are disfavored," requiring the Court to "speculat[e]" and "risk . . . premature[ly] interpret[ing]" the law. *Josephine Havlak Photographer, Inc. v. Vill. of Twin Oaks*, 864 F.3d 905, 912

(8th Cir. 2017) (quoting *Phelps-Roper v. City of Manchester*, 697 F.3d 678, 685 (8th Cir. 2012)). It is the Plaintiffs' burden to show they are entitled to a prescription for this "strong medicine." *Id.* (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008)). This requires "show[ing] that there is no set of circumstances under which [Act 372] would be valid." *Calzone v. Hawley*, 866 F.3d 866, 870 (8th Cir. 2017). Thus, facts related to the Plaintiffs are irrelevant to the Court's facial determination. *See Phelps-Roper*, 697 F.3d at 693 ("[I]n this facial challenge we do not look to one particular set of circumstances.").

## Argument

The Prosecuting Attorneys' response to the Plaintiffs' motion for summary judgment largely overlaps with the arguments made in the Prosecuting Attorneys' own motion for summary judgment. *See* Docs. 93, 97. Therefore, they incorporate by reference their motion for summary judgment and brief in support. Below, the Prosecuting Attorneys summarize their arguments, including additional argument as necessary.

### 1.  The Plaintiffs lack standing, and this case is not ripe for judicial review.

To establish Article III standing, the Plaintiffs have the burden to show (1) a "concrete, particularized, and actual or imminent" injury in fact; (2) that the alleged injury is traceable to the Defendants; and (3) that the Court can redress the alleged injury. *Ojogwu v. Rodenburg L. Firm*, 26 F.4th 457, 461 (8th Cir. 2022) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2022)). Failure to allege any one of these requirements independently defeats the Court's jurisdiction.

Ripeness is similar because "[t]he doctrines of standing and ripeness 'originate' from the same Article III limitation." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006)). It is again the Plaintiffs'

burden to show their case is ripe for review by showing "both 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 608 (8th Cir. 2022) (quoting *Sch. of the Ozarks, Inc. v. Biden*, 41 F.4th 992, 998 (8th Cir. 2022)). A case is unfit for review if it "would . . . benefit from further factual development [or] poses a purely legal question . . . contingent on future possibilities." *Id.* (quoting *Sch. of the Ozarks*, 41 F.4th at 998).

In this case, the standing and ripeness issues "essentially 'boil down to the same question,'" so the analysis collapses together. *Religious Sisters*, 55 F.4th at 608 (quoting *Sch. of the Ozarks*, 41 F.4th at 998).

### 1.1.    For Section 1, because the Plaintiffs cannot identify any item they possess or want to possess that is "harmful to minors," they have not established an injury in fact and their claim is not ripe.

To establish an injury in fact in a pre-enforcement challenge, the Plaintiffs must show that the "injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List*, 573 U.S. at 158 (cleaned up). In other words, they must demonstrate "an intent[] to engage" in regulated conduct that is arguably constitutionally protected. *Id.* at 159 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). The Plaintiffs have not demonstrated an intent to engage in conduct regulated by Section 1 because they have not identified any item that they possess or wish to possess that is "harmful to minors." In fact, the Patron Plaintiffs reject knowing about any item they want to view that is covered by Section 1. *See* Doc. 97, at 10. This case is thus a far cry from cases where the Supreme Court has found standing. *See Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 390–92 (1988) (finding standing where the Plaintiffs, if their interpretation of the statute was correct, identified 16 books that would have been subject to regulation and offered evidence that up to 50% of their inventory would have been regulated).

The Plaintiffs' briefing confirms that they have not shown—or even alleged—that they have items that are "harmful to minors." Instead, they argue it is enough that someone, somewhere "could" or "might" think their items are "potentially" obscene to minors. Doc. 101, at 19 ("could"); 8, 10, 26 n.14 ("might"); *id.* at 10, 11, 12, 26 ("potentially"). As explained in the Prosecuting Attorneys' summary-judgment brief, to establish an Article III injury, the Plaintiffs must affirmatively show that they intend to engage in conduct that would be regulated. Doc. 97, at 3, 9–10. This mere "possibility" isn't enough to establish an injury. *Religious Sisters*, 55 F.4th at 608 (quoting *Sch. of the Ozarks*, 41 F.4th at 998).

The Plaintiffs have made no showing that their conduct is regulated, and they thus lack standing. Their challenge is also unripe: it is impossible to know if the Plaintiffs will be prosecuted; they may not even have books subject to regulation.

## 1.2.    For Section 5, the Plaintiffs have not established any element of Article III standing and their claims are not ripe.

*The Plaintiffs fail to show an injury in fact.* The Plaintiffs' alleged injury regarding Section 5 is "wholly speculative" and thus not an injury in fact. *Animal Legal Def. Fund v. Vaught*, 8 F.4th 714, 719 (8th Cir. 2021) (quoting *Susan B. Anthony List*, 573 U.S. at 160). The Eighth Circuit has held that a single-step hypothetical is too speculative to establish an injury in fact. *See Mitchell v. Dakota Cnty. Soc. Servs.*, 959 F.3d 887, 896 (8th Cir. 2020) (holding that a plaintiff who will only potentially engage in regulated conduct is not injured). But the Plaintiffs' alleged injury is five hypothetical steps removed from reality:

- If someone challenges library materials under a library's selection policy;

- And if the review process ultimately relocates the material;

- And if that decision violated the statute by relocating the library material based on viewpoint;

- And if that material happens to be something that a Plaintiff wants to view;

- And if the library material is not outside of First Amendment protection;

- Then—only at the end of this five-step hypothetical—will the Plaintiffs be potentially injured; the libraries because they will have to rearrange their floorplan and the patrons because they may have to walk to a different area of the library to look at certain books.

*The alleged injury is not traceable to the Defendants.* "Traceability requires proof of causation, showing that the injury resulted from the actions of the defendant and not from the independent action of some third party not before the court . . . ." *McGowen, Hurst, Clark & Smith, P.C. v. Com. Bank*, 11 F.4th 702, 709 (8th Cir. 2021) (quoting *Miller v. Thurston*, 967 F.3d 727, 735 (8th Cir. 2020)). But neither County Judge Keith nor Crawford County will be responsible for the Plaintiffs' hypothetical injuries. It is libraries who implement the policies that ultimately determine whether a book is appropriate for their collection, and it is municipal governing bodies— not the municipalities' executive head—who review the Section 5 appeals. *See* Ark. Code Ann. § 13-2-106(c)(12)(A).

Thus, if an injury ever occurs, it will result from application of the library's selection criteria by the library or its governing body on appeal, not from Crawford County or from County Judge Keith. The Plaintiffs' alleged injury is thus not traceable to the Defendants.

*The Court cannot redress the Plaintiffs' alleged injury.* "To determine whether an injury is redressable, a court will consider the relationship between 'the judicial relief requested' and the 'injury' suffered." *California v. Texas*, 141 S. Ct. 2104, 2115 (2021) (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)). Here, the Plaintiffs seek to enjoin the Defendants from implementing Section 5. Doc. 75, at 32. As explained, the Defendants do not implement Section 5. And "[i]n the absence of any specific party" to enjoin, an injunction cannot "simply operate 'on the legal rules in the abstract.'" *California*, 141 S. Ct. at 2115 (quoting *Murphy v. Nat'l Collegiate Athletic Ass'n*,

138 S. Ct. 1461, 1486 (2018) (Thomas, J., concurring)). Thus, an injunction in this case cannot redress the alleged injury, leaving only a request for declaratory relief. Doc. 75, at 32. But a "declaratory judgment . . . is the very kind of relief that cannot alone supply" Article III's requirement that the "remedy . . . will redress the individual plaintiffs' injuries." *California*, 141 S. Ct. at 2116.

Further, in the Crawford County Defendants' motion for summary judgment, they assert without citation that the Arkansas Attorney General has authority to enforce Act 372. Doc. 91, at 6. That is inaccurate. Act 372 does not grant the Attorney General any enforcement authority.

There is no remedy the Court can order that will redress the Plaintiffs' alleged injuries.

## 2. The Plaintiffs' challenges to Section 1 fail on the merits.

The Supreme Court has "long held that obscene speech—sexually explicit material that violates fundamental notions of decency—is not protected by the First Amendment." *United States v. Williams*, 553 U.S. 285, 287 (2008). That is no less true when States regulate the availability of material that is obscene as to children. *See Ginsberg v. New York*, 390 U.S. 629, 640 (1968) (explaining that States have "an independent interest in the well-being of [their] youth"). Indeed, it is "well settled" that States "can adopt more stringent" laws when regulating obscene material's availability to minors than when regulating its availability to adults. *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 212 (1975). Thus, statutes regulating the furnishing of obscene materials to minors are subject to the lowest level of judicial scrutiny—rational-basis review. *Ginsberg*, 390 U.S. at 641.

### 2.1. Section 1 is not a prior restraint because it does not bar speech from occurring.

The Plaintiffs' front-line argument against Section 1 is that it is allegedly a prior restraint. But they do not offer any analysis to explain why Section 1 is a prior restraint; they just assume

that is it one. Doc. 101, at 22. Unlike the Plaintiffs, the Court must first analyze whether Section 1 is a prior restraint.

A law imposes a prior restraint only if it penalizes speech that hasn't occurred; a fear of past speech being penalized isn't sufficient. *See SOB, Inc. v. Cnty. of Benton*, 317 F.3d 856, 866 (8th Cir. 2003). Section 1 does not bar any speech. It only bars conduct after the speech has occurred—that is, furnishing to a minor an item that is obscene to minors. Ark. Code Ann. § 5-27-212(b); *cf. Upper Midwest*, 780 F.2d at 1397 (upholding an ordinance that "with[held] offensive expression from the young 'without restricting the expression at its source,'" which meant the minimal effect on adults was constitutionally "[in]significant" (quoting *FCC v. Pacifica Found.*, 438 U.S. 726, 749 (1978))). Because Section 1 does not "freeze[]" the Plaintiffs' speech beforehand, it is not a prior restraint. *CBS, Inc. v. Davis*, 510 U.S. 1315, 1317 (1994) (quoting *Neb. Press Ass'n v. Stuart*, 427 U.S. 439, 559 (1976)). The Plaintiffs have not offered any contrary analysis.

Even if Section 1 could be construed as a prior restraint, prior restraints are not per se unconstitutional when related to minors. *See, e.g.*, *Henerey ex rel. Henerey v. City of St. Charles, Sch. Dist.*, 200 F.3d 1128, 1134 (8th Cir. 1999) (high school); *Bystrom ex rel. Bystrom v. Fridley High Sch., Ind. Sch. Dist. No. 14*, 822 F.2d 747, 750 (8th Cir. 1987) (same). Instead, the question is whether the alleged restraint on minors is otherwise "consistent with the First Amendment." *Bystrom*, 822 F.2d at 749. For the reasons explained, Section 1 is constitutional.

### 2.2. Section 1 is not overbroad.

The Plaintiffs' briefing conflates its two claims related to overbreadth—one about adults' access and the other about older minors' access. To properly analyze the issues, however, the two claims must be evaluated individually. Further, these are facial challenges, so if "third parties will [not] be affected in any manner differently from" the Plaintiffs, then a facial challenge is

"inappropriate to entertain." *Twin Oaks*, 864 F.3d at 912 (quoting *Minn. Majority v. Mansky*, 708 F.3d 1051, 1056 (8th Cir. 2013)). But the Plaintiffs don't speculate about Section 1's effect on anyone other than themselves. In fact, they admit that Section 1's alleged effects "will be felt in a similar fashion by all readers in Arkansas." Doc. 101, at 27. So the Court should "limit [its] analysis to the [law's] application to [the Plaintiffs]." *Twin Oaks*, 864 F.3d at 912.

### 2.2.1.  The Eighth Circuit has squarely held that laws like Section 1 do not restrict adults' rights.

The Plaintiffs' first claim is that Section 1 violates adults' First Amendment rights by causing "a chilling effect upon the exercise of [those] rights . . . in that [Section 1] inhibit[s] and discourage[s] the browsing, possession, sale and distribution of" certain items because the adults may have to go to "a segregated 'adults only' section." Doc. 75, at ¶¶ 86–89.

The Eighth Circuit, however, has already spoken: the Plaintiffs' claim must fail. In *Upper Midwest Bookseller Ass'n v. City of Minneapolis*, 780 F.2d 1389 (8th Cir. 1985), the Eighth Circuit "approved" a Minneapolis ordinance "similar to Section 1." Doc. 53, at 34. "[T]he ordinance [made] it unlawful for any person knowingly to display for commercial purposes any material that is 'harmful to minors' unless that material [was] in a sealed wrapper." *Upper Midwest*, 780 F.2d at 1390. And the sealed wrapper had to have "an opaque cover" if the material's "cover, covers, or packaging, standing alone, [was] harmful to minors." *Id.* Alternatively, a bookseller could comply by "physically segregat[ing] the proscribed material" behind "a sign reading 'Adults Only—you must be 18 to enter,'" and booksellers had to "enforce[] these restrictions," "so that minors [could not] be present or [could not] view the material." *Id.* at 1391. The *Upper Midwest* plaintiffs alleged that "the ordinance [was] overbroad because [it] impermissibly limit[ed] access of adults to materials that are constitutionally protected as to them." *Id.* The Eighth Circuit upheld the

ordinance, "[f]inding a total absence of the 'substantial overbreadth' necessary to facially invalidate" the law. *Id.* at 1398.

The Plaintiffs here make the exact same claim that was rejected in *Upper Midwest*—that is, Section 1 violates adults' rights because adults might have to view some items in a different location than they currently do. In fact, the adult Plaintiffs admit there would be nothing stopping them from viewing regulated books. Ex. 10, at 54:20 (Caplinger Depo.) ("I would have access."). Thus, just like in *Upper Midwest*, the Plaintiffs' adult-access claim fails.[1]

### 2.2.2.  Section 1 does not restrict the rights of older minors.

Next, the Plaintiffs urge that Section 1 violates the First Amendment rights of "older minors" because they will not be able to view "material [that] may be 'harmful' only to younger minors, based on their developmental maturity." Doc. 75, at ¶¶ 89–91. For this facial challenge, the Plaintiffs must show that Section 1's overbreadth is "both 'real' and 'substantial' in relation to its 'plainly legitimate sweep.'" *Twin Oaks*, 864 F.3d at 912 (quoting *Minn. Majority*, 708 F.3d at 1056).

Multiple binding and persuasive cases have approved laws like Section 1, including the Supreme Court in *Ginsberg*, the Eighth Circuit in *Upper Midwest*, and the Tenth Circuit in *M.S. News Co. v. Casado*, 721 F.2d 1281 (10th Cir. 1983), without any concern about whether the law treated minors as a class. Section 1 should be upheld for two reasons.

As explained above, Section 1's "harmful to minors" standard does not mean that older minors cannot access items that are "harmful" only to younger minors. *Shipley, Inc. v. Long*, 195 S.W.3d 911 (Ark. 2004), does not hold differently. There, the Arkansas Supreme Court held that

---

[1] Because the Eighth Circuit's decision binds the Court, the Court should not follow the decision in *Shipley, Inc. v. Long*, 454 F. Supp. 2d 819, 831 (E.D. Ark. 2004). *See* Bryan A. Garner et al., *The Law of Judicial Precedent* 29 (1st ed. 2016) ("Lower courts are bound even by old and crumbling high-court precedent—until the high court itself changes direction.").

the "harmful to minors" definition "protect[s] *all* minors from harmful materials." *Id.* at 917. It therefore rejected the offered interpretation that did not protect "younger children . . . [from] works [that] would have some serious literary, artistic, political, or scientific value for an older adolescent." *Id.* at 916. The Arkansas Supreme Court's decision did not address whether items harmful to younger minors would be regulated as to younger minors while still allowing older minors to continue to access the same material. Instead, an item is only harmful to a minor if it is harmful based on the "contemporary community standards," which do not treat all minors the same. Ark. Code Ann. § 5-68-501(2). Moreover, the Arkansas Supreme Court in *Shipley* did not treat all minors as a class based on what would be harmful only to older minors. 195 S.W.3d at 917. The Plaintiffs' challenge therefore fails because it is based on an incorrect interpretation.

Even if Section 1 is a one-size-fits-all approach, it is constitutional for three reasons. First, variable obscenity is not protected speech for minors. *See Ginsberg*, 390 U.S. at 638, 641; *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 794 (2011) (stating that the law in *Ginsberg* regulated "unprotected speech"). Second, laws often treat minors as a class—even related to fundamental rights—though some minors would be developmentally mature enough to engage in the regulated conduct. *See, e.g.*, U.S. Const. amend. XXVI (setting the minimum voting age to 18 years of age); *Thompson v. Oklahoma*, 487 U.S. 815, 840–41, 845–48 (1988) (compiling laws in every State that prohibit minors from serving on a jury, purchasing obscenity, and gambling). Third, requiring States to regulate minor-by-minor based on "developmental maturity," Doc. 75, ¶ 90, would create "confusion and difficulty" when "mak[ing] the differential obscenity determinations for each of the 'minor' age subgroups." *Shipley*, 454 F. Supp. 2d at 829. The Plaintiffs' so-called solution is to "prohibit only those materials which are harmful to the older mature minors," but that would "distort the obvious objectives of the statute." *Id.* After all, it is these "older minors" who will soon

be adults. *Id.* Moreover, there is no constitutional reason the subcategorization should stop at "older minors" because *any* bright-line age limit will be somewhat over- and underinclusive. If the Plaintiffs are right that "developmental maturity" is all that matters, Doc. 75, at ¶ 90, then State will be required to regulate immature 17-year-olds differently than mature 17-year-olds. That makes no sense—practically or constitutionally.

Despite the supporting and binding caselaw against the Plaintiffs, they have primarily relied on *Shipley, Inc. v. Long*, a 2004 decision from the Eastern District of Arkansas. As explained in the Prosecuting Attorneys' summary-judgment brief, the district court in *Shipley* improperly ignored *Ginsberg*, *Upper Midwest*, and *M.S. News* in favor of reading the tea leaves of a Supreme Court opinion that expressly did "not attempt to decide the constitutional issues" related to adults and did not even have the older/younger minor issue before it. *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988). *Shipley*'s reliance on the *Virginia* saga of cases was improper. It is *Ginsberg* and *Upper Midwest* that control here.

Further, as explained above and in the Prosecuting Attorneys' summary-judgment brief, even if Section 1 unconstitutionally restricts older minors' access, it is constitutional related to every other person. Therefore, the plainly legitimate sweep of Section 1 is far more substantial than its overbreadth because it is constitutional as to approximately 95% of people.[2] Thus, the facial challenge must fail.

---

[2] *Cf.* U.S. Census Bureau, Profile of General Population & Housing Characteristics (2020), https://data.census.gov/table?g=010XX00US&d=DEC+Demographic+Profile (identifying that 15- to 19-year-olds make up only 6.6% of the U.S. population, indicating that the "older minors" category is an even smaller percentage).

### 2.3.   Section 1 is not vague because the challenged terms are understandable to a person of ordinary intelligence.

In essence, this claim boils down to whether normal people understand the terms "presents," "provides," and "makes available." Doc. 75, at ¶ 97; Doc. 101, at 27. The Prosecuting Attorneys believe these are ordinary terms that people use and understand every day, as explained in their summary-judgment brief. Doc. 97, at 18–19. The Plaintiffs believe these are highly complex, unintelligible terms. Nevertheless, the Plaintiffs offer no evidence that people do not use and understand these terms, nor do they provide any argument about why Section 1's double knowledge requirement does not defeat their claim. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 21 (2010) ("[K]nowledge requirement[s] . . . reduce[] any potential for vagueness."). Summary judgment should not be granted on this claim.

### 3.   The Plaintiffs' challenges to Section 5 fail on the merits.

In the briefing the Plaintiffs say that Section 5 is unconstitutional "in four separate ways." Doc. 101, at 28. But they have only brought three causes of action: two causes of action based on alleged prior restraints, Doc. 75, at ¶¶ 99–101, 105–06; Doc. 101, at 33–35, and one related to alleged vagueness. Doc. 75 at ¶¶ 102–104; Doc. 101, at 28–31. Thus, the Plaintiffs' so-called claims about Section 5's alleged content- and viewpoint-based discrimination are not properly before the Court because they were not pleaded in the complaint. *Hall v. Higgins*, 77 F.4th 1171, 1181 n.4 (8th Cir. 2023) (holding claims cannot be added at summary judgment if not pleaded in the complaint).

The Plaintiffs' claims that are properly before the Court fail on their own terms, but they also fail as a group because the curation of library materials is government speech.

### 3.1.   The curation of library materials is government speech.

Curation of library materials is government speech and is therefore not subject to First Amendment analysis. The First Circuit has explained that the Supreme Court has already "appl[ied] the government speech doctrine to 'a public library's exercise of judgment in selecting the material it provides to its patrons." *Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 330 (1st Cir. 2009) (citing *United States v. Am. Library Ass'n*, 539 U.S. 194 (2003) (plurality opinion)). Even applying the test anew shows that the doctrine applies here.

Government speech exists if the following three factors weigh in favor of finding government speech: (1) "the history of the expression at issue," (2) "the public's likely perception as to who (the government or a private person) is speaking," and (3) "the extent to which the government has actively shaped or controlled the expression." *Shurtleff v. City of Boston*, 142 S. Ct. 1583, 1589–90 (2022). All three factors weigh in favor of library curation being governing speech.

First, under Arkansas law, Arkansas public libraries only have the powers given to them. The State, "at its pleasure, may modify or withdraw all such powers." *Pritchett v. City of Hot Springs*, 514 S.W.3d 447, 449 (Ark. 2017) (quoting *Hunter v. City of Pittsburgh*, 207 U.S. 161, 178–79 (1907)). Thus, it is unsurprising that the Plaintiffs' own documents call libraries "governmental agenc[ies]" that engage in "government[al] actions." Doc. 97-5, at 34 (Webb Production). The list from Plaintiffs' filings and discovery goes on:

- Asserting that "Crawford County . . . maintain[s] and oversee[s] the Crawford County Library System." Doc. 100, at ¶ 54.

- Acknowledging that the municipalities that created public libraries hold ultimate control. *See* Doc. 97-1, at 158:2–6 (Coulter Depo.) (explaining that the CALS Library Board "serves at the pleasure of the appointing entities"—that is, counties and cities); Doc. 97-4, at 31 (ESCPL Production) (placing the Madison County and Carrol County Quorum Courts at the pinnacle of the organizational chart).

- Calling public libraries "political subdivision[s]," "municipal public librar[ies]," and "bod[ies] . . . politic." Doc. 75, at ¶¶ 12–14.

16

- Proving that public libraries are publicly funded. Doc. 97-1, at 28:20–22 (Coulter Depo.).

- Calling public-library employees "government employee[s]." Doc. 97-1, at 34:23–35:12 (Coulter Depo.).

- Confirming that public libraries are subject to constitutional restraints on government entities and must comply with the Arkansas Freedom of Information Act. Doc. 97-1, at 28:22–23, 33:12 (Coulter Depo.).

Second, even a general understanding of the structure of Arkansas's government and Supreme Court caselaw—indeed, the Plaintiffs' own words—confirms there is no risk that the State's curation of library materials will be perceived as private speech.

Third, the government has always controlled the curation of materials in public libraries, whether through local library boards, government-employed librarians, or now through Section 5's minimum guidelines that all public libraries must follow. At the end of the day, public libraries exercising authority delegated by the State will still be selecting what materials to have for their patrons, just like before Act 372. The curation of library materials is wholly under State control and outside First Amendment analysis. The Court can end its inquiry here and rule against the Plaintiffs.

### 3.2. Section 5 is not vague because the challenged terms are understandable to a person of ordinary intelligence.

The Plaintiffs first argue that Section 5 is unconstitutionally vague. Like above, there is little to add: the Prosecuting Attorneys believe the challenged terms are understandable; the Plaintiffs say they can't understand the word "appropriateness"—despite it being ubiquitous in their current policies—and they argue that "accessible" is also not a word of ordinary understanding. Doc. 101, at 28–31.

They only deviation in the Plaintiffs' briefing is that they add that "withdraw" and "relocate" are not understandable. Doc. 101, at 31. This is improper because it is not a claim made in

Case 5:23-cv-05086-TLB   Document 107   Filed 06/05/24   Page 18 of 21 PageID #: 2166

their complaint. Doc. 75, at ¶ 102–104. They cannot add to their complaint now, so the Court can set this argument aside. *Hall*, 77 F.4th at 1181 n.4. Even if the Court were to address the words "withdraw" and "relocate," Act 372 is not vague.

Statutory words must be given "their plain and ordinary meanings in the context used." *DRB No. 24, LLC v. City of Minneapolis*, 774 F.3d 1185, 1188 (8th Cir. 2014). Here, read in context, the words "withdraw" and "relocate" are not vague. Section 5 directs certain materials to "be relocated within the library's collection to an area that is not accessible to minors." Ark. Code Ann. § 13-2-106(c)(11)(A). "Relocate" means "to locate again" or "establish or lay out in a new place." *Relocate*, Merriam-Webster Online.[3] In the statute, "withdrawn" is synonymous with "relocate"—the Plaintiffs admit this. Doc. 101, at 31 (agreeing that "'withdraw' and 'relocate' are used interchangeably"). People of ordinary intelligence understand what it means to relocate something to a different place.

### 3.3.   Section 5 is not a prior restraint because it does not bar speech from occurring.

Next, the Plaintiffs ask the Court to create a new category of prior restraints—an alleged prior restraint on *access*, instead of a prior restraint on *speech*. Doc. 101, at 33–34. No court has ever recognized such a right. This Court shouldn't either. *Cf. Alexander v. United States*, 509 U.S. 544, 553 n.2 (1993) (declining to expanding the prior-restraint doctrine beyond its traditional limits because the petitioner's interpretation would be an "essentially limitless expansion of the term").

Even so, the Plaintiffs fail to explain how Section 5 imposes a prior restraint, even though it does not bar speech from occurring beforehand. As explained above, government action is only a prior restraint if it bars future *speech*, not if it penalizes past speech. *SOB, Inc.*, 317 F.3d at 866.

---

[3] https://www.merriam-webster.com/dictionary/relocate (last visited June 5, 2024).

First, Section 5 does not bar materials that are relocated from being published, read, or acquired. Second, Section 5 imposes no penalty. It is not a prior restraint.

Moreover, the Plaintiffs fail to acknowledge that whether libraries keep materials in circulation during a challenge has nothing to do with Section 5. Libraries already have discretion to remove material from circulation during a challenge. Section 5 doesn't change that. This, again, shows why a facial challenge is inappropriate.

Also, the Plaintiffs claim that if a prior restraint exists, there must be "prompt judicial review," citing *Freedman v. Maryland*, 380 U.S. 51 (1965). Doc. 101, at 35. The Plaintiffs' reliance on *Freedman* is misplaced. *Freedman* dealt with a criminal prosecution for failing to comply with a licensing scheme. *Id.* at 56; *see also Thomas v. Chicago Park Dist.*, 534 U.S. 316, 321 (2002) (confirming that *Freedman* dealt with the "peculiar dangers" of "licensing" (cleaned up)). Licensing schemes are the quintessential prior restraint. *See Alexander*, 509 U.S. at 553 n.2. Section 5 does not have a criminal component, nor does it involve licensing.

Section 5 is not a prior restraint, so the Court should not grant summary judgment in the Defendants' favor.

### 3.4.    Section 5 is not content or viewpoint based.

The Plaintiffs include two subsections of their Section 5 briefing to discuss content- and viewpoint-based regulations. Doc. 101, at 32–33, 35. These fail for three reasons.

First, as noted above, these claims were not pleaded in the Plaintiffs' complaint. It is now too late to raise them. *See Hall*, 77 F.4th at 1181 n.4; *see also Arnold v. Arkansas*, 910 F. Supp. 1385, 1389–90 (E.D. Ark. 1995) (Eisele, J.) (holding that it was "too late in the litigation to . . . allege" new causes of action when "filing [a] motion for partial summary judgment").

Second, the content-based analysis is premised on the Plaintiffs' incorrect interpretation of the word "appropriateness." Doc. 101, at 32. As explained, "appropriateness" is not a free-ranging inquiry into subjective beliefs; it is an objective inquiry tied to a library's own established selection criteria. *See* Doc. 97, at 22. Section 5 does not change how libraries establish their selection criteria, so any alleged content-based injury that a library may cause is unrelated to Section 5, would only be appropriate for an as-applied challenge, and is not before the Court in this facial challenge.

Third, the Plaintiffs claim that Section 5 "facilitat[es] discrimination on the basis of viewpoint [because] it provides substantial rights to individuals who" challenge library materials, "while affording no rights to whose who would oppose" the challenge. Doc. 101, at 35. Section 5 does not support or discriminate against any particular viewpoint. In fact, the challenger's viewpoints are irrelevant—the person who challenges anti-religious books and the person who challenge pro-religious books will have the same minimum rights under challenge policies that comply with Section 5. *Cf. City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022) (upholding a law that required review of signs' content because the law did "not single out any topic or subject matter for differential treatment"—the "substantive message itself [was] irrelevant to the application of the [law]"). Further, as explained in the Prosecuting Attorneys' summary-judgment brief, the Library Plaintiffs' challenge is hypocritical; most of their policies already do not give anyone other than the challenger a right to be heard during a challenge. *See* Doc. 97, at 6. If there is a problem, Section 5 is not the cause.

## Conclusion

For these reasons, the Court should deny the Plaintiffs' motion for summary judgment.

Respectfully submitted,

TIM GRIFFIN
Attorney General


By:    Noah P. Watson
Ark. Bar No. 2020251
Deputy Attorney General

John Payne
Ark. Bar No. 97097
Deputy Attorney General

Christine A. Cryer
Ark. Bar No. 2001082
Senior Assistant Attorney General

Arkansas Attorney General's Office
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-1019
(501) 682-2591 fax
noah.watson@arkansasag.gov
john.payne@arkansasag.gov
christine.cryer@arkansasag.gov

*Attorneys for Defendants*