**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

FAYETTEVILLE PUBLIC LIBRARY, a political subdivision
in the City of Fayetteville, State of Arkansas; et al.                           **Plaintiffs**

**Case No. 5:23-cv-05086-TLB**

CRAWFORD COUNTY, ARKANSAS; et al.                                                **Defendants**

**REPLY IN SUPPORT OF THE PROSECUTING ATTORNEYS'
MOTION FOR SUMMARY JUDGMENT**

The Prosecuting Attorneys adopt and incorporate by reference their motion for summary judgment, Doc. 93; its brief in support, Doc. 97; and their response to the Plaintiffs' motion for summary judgment. Doc. 107. Only a few points are highlighted below.

### 1. The Plaintiffs misinterpret several portions of Act 372.

For Section 1, the Prosecuting Attorneys reiterate that "harmful to minors" is best understood as not treating minors as a class. *See* Doc. 107, at 2, 12–14. At least one argument the Plaintiffs make seems to agree that this is the best interpretation. *See* Doc. 113, at 6 (stating that "whether a material is harmful to a minor . . . turns on . . . the specific characteristics of the minor who would be receiving the information").

Regarding Section 5, the Plaintiffs dispute that material may be withdrawn from general circulation for only one reason—if it is inappropriate under the library's own selection criteria. They say this is not so because the selection criteria is not listed as something that the local governing body must be given on an appeal. Doc. 113, at 22. But the governing body is presented with a "writ[ten] . . . summary of the reasons for the [library committee's] decision." Ark. Code Ann. § 13-2-106(c)(11), (12)(B). Thus, the written summary will include any relevant selection criteria.

And the governing body is limited to affirming or reversing that decision; it cannot go beyond it. Doc. 97, at 5.

Further, the Plaintiffs claim that librarians employ the selection criteria in a "completely viewpoint neutral" manner. Doc. 113, at 22. But the text of the criteria do not require any such thing. Doc. 97, at 5–6. This is just another example of why a facial challenge to Section 5 is inappropriate: librarians already have discretion to act in the way the Plaintiffs fear librarians and governing bodies will act if Section 5 were not enjoined. Thus, Section 5 is not the alleged issue.

## 2. The Plaintiffs do not have standing.

The Plaintiffs admit that they have not taken a stance on whether any of their items are "harmful to minors" under Section 1. Doc. 113, at 6. Thus, they have not shown "an intent[] to engage" in regulated conduct. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). In fact, some of the Plaintiffs' declarations confirm this, saying it would be "incorrect[],"[1] "inaccurate[]," and "unfair[]"[2] to call their items "harmful to minors" or "inappropriate." As explained in the Prosecuting Attorneys' other briefing, this is insufficient to establish an injury in fact under Article III.

## 3. The Plaintiffs claims fail on the merits.[3]

*Overbreadth.* In their response, the Plaintiffs continue to mix their two overbreadth claims together—one for adults; one for older minors. These claims should be addressed separately. Doc.

---

[1] Doc. 99-2, ¶¶ 6, 9 (Caldwell-Stone Decl.).

[2] Doc. 99-4, ¶ 10 (Johnson Decl.).

[3] In the brief in support of the Prosecuting Attorneys' motion for summary judgment, the undersigned argued that because the "Library Plaintiffs" were the only plaintiffs bringing a claim against Section 5, the claims should fail because political subdivisions cannot use the Fourteenth Amendment against the State. Doc. 97, at 23. Although this argument still applies to the Plaintiffs that are libraries, the "Library Plaintiffs" are not only libraries. Doc. 75, at 2 n.1. Buried in one footnote, this term includes individuals who are patrons of private booksellers, organizations, and public libraries. *Id.* Therefore, the breadth of some of the Prosecuting Attorneys' analysis is lessened.

107, at 10–11. As explained in the Prosecuting Attorneys' response to the Plaintiffs' motion for summary judgment, *Upper Midwest Bookseller Ass'n v. City of Minneapolis*, 780 F.2d 1389 (8th Cir. 1985), is binding and conclusive as to the adults' claim. Doc. 97, at 13–14; Doc. 107, at 11–12. Further, the Plaintiffs overread the import of the *Virginia* line of cases. Doc. 97, at 16–17.

*Section 1 Vagueness.* First, the Plaintiffs challenge Section 1 as vague based on the terms "presents," "provides," and "makes available." Doc. 75, at ¶ 97.

There is no evidence that people can't understand these words.

Nevertheless, in response to this lack of evidence, the Plaintiffs misread the record, saying that "the record indisputably shows that Section 1 leaves librarians and booksellers unsure about whether placing books known to contain sexual content on the bookshelves may subject them to liability once a minor walks through the front door." Pls.' Resp. to Mot. for Summ. J. at 14–15 (cleaned up). But their citations to the record have nothing to do with the terms "presents," "provides," and "makes available." Instead, each of those citations is about the term "harmful to minors," which the Plaintiffs have not challenged as vague. Pls.' Resp. to Mot. for Summ. J. at 5 n.7, 15 n.14.

Second, the Plaintiffs' attempt at distinguishing Section 1 from another statute—Arkansas Code Annotated § 5-68-502—that they admit is constitutional is unavailing. *See* Doc. 113, at 14 n.13. They now claim that § 5-68-502(a)(2) is only a "'sale' provision" and that's why it was previously upheld. *Id.* But that's inaccurate. Section 5-68-502(a)(2) is not limited to the "sale" of harmful materials; it also prohibits "furnish[ing], present[ing], distribut[ing], allow[ing] to view, or otherwise disseminat[ing]." Notably, some of these terms are the *exact same* as what Plaintiffs now challenge. These verbs require some active—i.e., knowing—action, just like Section 1. *Shipley, Inc. v. Long*, 195 S.W.3d 911, at 221–22 (Ark. 2004); Doc. 97, at 18–19. The Plaintiffs seemed

to recognize this in their preliminary-injunction briefing where they said that § 5-68-502 "prohibit[s] evils associated with *displaying and furnishing* materials harmful to minors," not only the sale of such materials. Doc. 23, at 37 (emphasis added).

*Section 5 Vagueness.* In the Plaintiffs' responsive brief, they say that the Prosecuting Attorneys make no argument about Section 5's use of the words "withdraw" and "relocate." Pls. Resp. to Mot. for Summ. J. at 24 n.21. But, as explained in the Prosecuting Attorneys' response to the Plaintiffs' summary-judgment motion, this was not pleaded in their complaint; they cannot add claims at this late stage. *See* Doc. 107, at 17–18. Even if they could, their arguments fail. *Id.* at 18.

*Prior restraints.* The Plaintiffs' prior-restraint claims are based, not on a prior restraint of *speech*, but an alleged prior restraint of *receipt* of speech. Doc. 113, at 13, 20, 24.

First, the Plaintiffs miss that any "right to receive speech is 'entirely derivative' of the rights of the speaker." *Penn. Family Inst., Inc. v. Black*, 489 F.3d 156, 165 (3d Cir. 2007) (quoting *In re Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 608 (2d Cir. 1988)); *see also NAACP, Los Angeles Branch v. Jones*, 131 F.3d 1317, 1322 n.5 (9th Cir. 1997). For the reasons explained in the Prosecuting Attorneys' other briefing, there is no predicate prior restraint on speech, so the Plaintiffs' claims must fail.

Second, there is no freestanding right to receive speech, particularly when plaintiffs try to wield any such right to force libraries to place certain materials in particular locations within the library—that is, to force the government to speak. "The First Amendment does not . . . require the government to speak." *Knights of Ku Klux Klan v. Curators of Univ. of Mo.*, 203 F.3d 1085, 1093–94 (8th Cir. 2000) (quoting *Muir v. Ala. Educ. Television Comm'n*, 688 F.2d 1033, 1044 (5th Cir. 1982) (en banc)). And as such, the Plaintiffs cannot compel libraries to provide materials in any particular way.

To the contrary, "[n]othing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech." *Minn. Voters Alliance v. Mansky*, 138 S. Ct. 1876, 1886 (2018). States have "broad discretion to decide what material to provide to their [libraries'] patrons" and are not required "to provide universal coverage." *United States v. Am. Library Ass'n*, 539 U.S. 194, 204 (2003) (plurality opinion) (cleaned up). As part of the States' broad discretion, they can curate libraries to include only what the State believes to be "requisite and appropriate." *Id.* (cleaned up). After all, the State has a "compelling" interest in protecting children "from material inappropriate for minors." *Id.* at 215 (Kennedy, J., concurring); *see also id.* at 203 (plurality opinion); *id.* at 219 (Breyer, J., concurring). And, importantly, the States' traditional control over libraries aligns with Arkansas law, under which public libraries are creatures of the State and only have the power they have been given. In sum, the State can provide whatever material it wishes in public libraries. And where, as here, the State is not banning the material but providing it to adult patrons anyway, the State's actions are not barred by the Constitution.

Indeed, only one case—and a splinted plurality opinion at that—even suggests that the right to receive information can compel government speech. That case is *Board of Education, Island Trees Union Free School District No. 26 v. Pico*, 457 U.S. 853 (1982). But on its face that decision is "narrow" and limited to "the unique role of the *school* library." *Id.* at 863, 869 (emphasis added). Here, we do not have a school library. Instead, this case is about non-school public libraries. And based on the voting lineup, "it is not clear what, if anything, from *Pico* is binding." *C.K.-W. ex rel. T.K. v. Wentzville R-IV Sch. Dist.*, 619 F. Supp. 3d 906, 913 (E.D. Mo. 2022). The controlling opinion did not even address the constitutional question. *Pico*, 457 U.S. at 884 (White,

J. concurring); *see also Marks v. United States*, 430 U.S. 188, 193 (1977) (explaining that the opinion resting "on the narrowest grounds" is the binding opinion).

*Pico*'s outcome is an outlier and not binding here (or perhaps at all). However, if the Court does look to *Pico*, under both the dissent's view and the plurality's view, Section 5 is constitutional. The plurality would have allowed books to be removed for any reason—other than viewpoint discrimination—such as vulgarity and "educational suitability." *Pico*, 457 U.S. at 870–72. But Section 5 clearly states that the materials cannot be withdrawn from the general population of materials "solely for the viewpoints expressed within the material." Ark. Code Ann. § 13-2-106(c)(7)(B)(i). In other words, a material may be withdrawn only if there is a legitimate non-viewpoint based reason—that is, if the material does not comply with viewpoint-neutral selection criteria. Thus, the law does not allow viewpoint discrimination and is constitutional under *Pico*'s plurality. *Cf. Wentzville*, 619 F. Supp. 3d at 913–15 (upholding a school board's school-library policy that is similar to Section 5). Moreover, if any materials are challenged, relocated, and made inaccessible to minors, the items will still be available to adults. *See* § 13-2-106(c)(11)(A). The fact that the items here will still be available to adults is a "key distinction [from] *Pico*." *Turkish Coal. of Am., Inc. v. Bruininks*, 678 F.3d 617, 623 (8th Cir. 2012). Because the items will not be "substantially unavailable" to patrons, the Plaintiffs' claim cannot succeed. *Id.* at 624 (affirming dismissal of right-to-receive claim).

The *Pico* dissent's approach is even more straightforward: Any "'right to receive information and ideas' does not carry with it the concomitant right to have those ideas affirmatively provided at a particular place by the government." *Pico*, 457 U.S. at 888 (Burger, C.J., dissenting) (citations omitted). Thus, States may add and remove materials from public libraries at will.

Third, the Plaintiffs claim that there is "no mechanism for judicial review." Pls.' Resp. to Mot. for Summ. J. at 24. This overstates the law. If a library committee or local governing body fails to follow the dictates of Section 5 by, for example, removing books based on viewpoint or for a reason other than the selection criteria, the Plaintiffs do not explain why a proper plaintiff could not obtain an injunction, enjoining the proper defendants from violating Section 5. So while the material-by-material review is finally determined by the local governing body, that does not mean that it may freely violate the law.

### 4. Curation of library materials is government speech.

The Plaintiffs all but admit that public libraries engage in government speech, agreeing that public libraries are government entities that are staffed by government employees, under the control of government officials, and funded by the public fisc. Doc. 114, at 12–13. Despite this, they say that the Prosecuting Attorneys are wrong that "the Supreme Court has already 'appl[ied] the government speech doctrine to a "public library's exercise of judgment in selecting the material it provides to its patrons."'" Doc. 113, at 15 (alteration in original) (citation omitted). But it isn't the Prosecuting Attorneys who said that; it was the Court of Appeals for the First Circuit. *See Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 330 (1st Cir. 2009). And it's not just the First Circuit—the D.C. Circuit says it too: "[I]n the case of a public library . . . there is still government speech. With respect to the public library, the government speaks through its selection of which books to put on the shelves and which books to exclude." *PETA v. Gittens*, 414 F.3d 23, 28 (D.C. Cir. 2005).

The thrust of the caselaw is that public libraries engage in government speech when curating their materials. *See* Doc. 97, at 20–23. *Compare Little v. Llano Cnty.*, 2024 WL 2860213, at *21–*23, *28–*34 (5th Cir. June 6, 2024) (Duncan, J., dissenting) (arguing that public-library curation is government speech because circuit precedent was inapplicable), *with id.* at *4, *7

(holding that public-library curation was not government speech based primarily on circuit prece-

dent that the majority did not believe had been overruled).

## Conclusion

For these reasons, the Court should deny the Plaintiffs' motion for summary judgment.

<div style="margin-left: 40%;">

Respectfully submitted,

TIM GRIFFIN
Attorney General

By:     Noah P. Watson
        Ark. Bar No. 2020251
        Deputy Attorney General

        John Payne
        Ark. Bar No. 97097
        Deputy Attorney General

        Christine A. Cryer
        Ark. Bar No. 2001082
        Senior Assistant Attorney General

        Arkansas Attorney General's Office
        323 Center Street, Suite 200
        Little Rock, Arkansas 72201
        (501) 682-1019
        (501) 682-2591 fax
        noah.watson@arkansasag.gov
        john.payne@arkansasag.gov
        christine.cryer@arkansasag.gov

        *Attorneys for Defendants*

</div>