**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

**FAYETTEVILLE PUBLIC LIBRARY,** *et al.*                                                      **PLAINTIFFS**

**V.**                                     **CASE NO. 5:23-CV-5086**

**CRAWFORD COUNTY, ARKANSAS,** *et al.*                                              **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER ON FEES AND COSTS

Before the Court is a Motion for Attorneys' Fees and Costs (Doc. 129) and Brief in Support (Doc. 130) filed jointly by all Plaintiffs. The Motion has been fully briefed and is ripe for ruling.[1] For the reasons given below, it is **GRANTED IN PART AND DENIED IN PART**.

### I.  PROCEDURAL HISTORY

On December 23, 2024, this Court permanently enjoined the enforcement of Sections 1 and 5 of Arkansas Act 372. Section 1 of the Act would have imposed a misdemeanor penalty of up to one year in jail on librarians, booksellers, and others who made certain media "available" to anyone under the age of eighteen; and Section 5 would have mandated a new procedure for libraries, city councils, and county quorum courts to

---

[1] In ruling on the Motion, the Court also considered the Response in Opposition (Doc. 147) filed by Separate Defendants Crawford County, Arkansas, and County Judge Chris Keith ("Crawford County Defendants"); the Response in Opposition filed by Separate Defendants Todd Murray, Sonia Fonticiella, Devon Holder, Matt Durrett, Jeff Phillips, Will Jones, Teresa Howell, Ben Hale, Connie Mitchell, Dan Turner, Jana Bradford, Frank Spain, Tim Blair, Kyle Hunter, Daniel Shue, Jeff Rogers, David Ethredge, Tom Tatum, II, Drew Smith, Rebecca Reed McCoy, Michell C. Lawrence, Debra Buschman, Tony Rogers, Nathan Smith, Carol Crews, Kevin Holmes, Chris Walton, and Attorney General Tim Griffin, in his official capacity (collectively, "the State"); Plaintiffs' Reply (Doc. 154); and the State's Surreply (Doc. 159).

1

follow when evaluating a citizen's request to move or remove a book from a public library's permanent collection.

More than a dozen individuals, businesses, and organizations joined forces to challenge Sections 1 and 5, including public libraries, librarians, private bookstores, library and bookstore patrons, and organizations that represent Arkansas librarians, libraries, booksellers, publishers, and authors. These Plaintiffs were not represented by the same lawyers; however, the lawyers decided early on to coordinate their litigation efforts and file all pleadings and briefs jointly, presenting a united front. They filed the original complaint (Doc. 2) on June 2, 2023, and a motion for preliminary injunction (Doc. 22) shortly thereafter on June 22.

Once Plaintiffs served their complaint and preliminary injunction motion, Crawford County Defendants hired attorneys to mount a vigorous defense. They filed a motion to transfer the case to state court (Doc. 29) on June 27, 2023. Plaintiffs responded to the motion two days later, and the Court denied the motion in a one-page order (Doc. 41) on July 7, 2023. But by July 5, Crawford County Defendants had also filed a motion to dismiss (Doc. 35), arguing that Plaintiffs lacked standing to sue them—an argument these defendants would repeat (and lose) ad nauseum throughout the litigation.

Meanwhile, on July 6, 2023, both sets of Defendants filed responses in opposition to the motion for preliminary injunction (Docs. 37 & 38), and Plaintiffs filed a reply (Doc. 42) on July 13. Once the motion for preliminary injunction and Crawford County Defendants' motion to dismiss were ripe for ruling, the Court scheduled an in-person evidentiary hearing on both motions for July 25, 2023. The hearing lasted several hours. Then, on July 29, the Court issued a short order (Doc. 52) denying Crawford County

Defendants' motion to dismiss and a lengthy order (Doc. 53) preliminarily enjoining the enforcement of Sections 1 and 5 of Act 372. The preliminary injunction order was filed just three days before Act 372 was set to take effect.

None of the Defendants took an interlocutory appeal of the preliminary injunction. However, on August 7, 2023, Crawford County Defendants filed a motion to correct or amend certain portions of the order they believed "relied on improper evidence." (Doc. 55, p. 2). The motion—which the State did not join—was ultimately denied by the Court on September 26, 2023. *See* Doc. 63. The Court then issued an initial scheduling order (Doc. 64) on October 5 and held a case management hearing pursuant to Rule 16 of the Federal Rules of Civil Procedure on November 28. A final scheduling order (Doc. 71) was issued on December 1, 2023, setting a dispositive motion deadline of May 15, 2024.[2]

On December 28, 2023, Plaintiffs filed a motion for leave to amend their complaint to add two patron-plaintiffs and a few background facts about Crawford County. *See* Doc. 72. The Court granted the motion on January 11, 2024, *see* Doc. 74, but Crawford County Defendants moved to strike the amended pleading (Doc. 76) on February 12, trotting out all the same standing arguments they had lost in their prior motion.[3] Though these standing arguments were nothing new, Plaintiffs filed a response in opposition (Doc. 80), and the Court issued a one-page order denying the motion as "meritless" on March 4, 2024. *See* Doc. 84, p. 2.

---

[2] The parties agreed that the case would be resolved on cross-motions for summary judgment, but the Court included a bench trial date in the final scheduling order as a precaution.

[3] The State simply answered the Amended Complaint. *See* Doc. 79.

3

Once discovery ended, the parties filed their cross-motions for summary judgment as planned. *See* Docs. 90, 93, 99. Briefing on the motions was voluminous and did not ripen until August 15, 2024. On December 23, the Court issued its memorandum opinion and order (Doc. 126) granting Plaintiffs' summary judgment motion, denying Defendants' cross-motions, and finding that Sections 1 and 5 of Act 372 were unconstitutional, void, and of no effect. The Court entered final judgment and a permanent injunction the same day. *See* Doc. 127.

As the above timeline demonstrates, Plaintiffs prevailed at every stage of these proceedings. Neither set of Defendants disputes that fact. The only question before the Court is how much money Plaintiffs are reasonably entitled to be reimbursed for their attorneys' fees and costs under 42 U.S.C. § 1988(b), which allows "a reasonable attorney's fee as part of the costs" for prevailing in a civil rights suit brought under 42 U.S.C. § 1983.

The chart below lists Plaintiffs, divided into five groups according to the attorneys who represented them, along with each biller's hours billed, hourly rates, and total fees requested:

| Plaintiffs | Legal Biller | Hours | Rate/Hour | Total |
|---|---|---|---|---|
| Adam Webb, Arkansas Library Association, Advocates for All Arkansas Libraries | Ben Seel (attorney) | 542.3 | $275 | $149,132.50 |
| | Jeffrey Dubner (attorney) | 42.7 | $325 | $13,877.50 |
| | Victoria Nugent (attorney) | 12.7 | $400 | $5,080.00 |
| | Shelley Friedland (legal assistant) | 6.1 | $75 | $457.50 |
| | Katie Quackenboss (legal assistant) | 19.9 | $75 | $1,492.50 |
| Jennie Kirby,[4] Hayden Kirby, Leta Caplinger, Miel Partain, Madeline Partain, Olivia Farrell | Bettina Brownstein (attorney) | 140.4 | $400 | $56,160.00 |
| American Booksellers Association, Association of American Publishers, Authors Guild, Comic Book Legal Defense Fund, Freedom to Read Foundation, Pearl's Books, Wordsworth Books | Rebecca Hughes Parker (attorney) | 249.2 | $350 | $87,220.00 |
| | Michael Bamberger (attorney) | 81.6 | $515 | $42,024.00 |
| | Karen Ogle (paralegal) | 5.8 | $150 | $870.00 |
| | Cheryl Sykes (paralegal) | 12.4 | $100 | $1,240.00 |
| Fayetteville Public Library | Brandon Cate (attorney) | 49.9 | $350 | $17,465.00 |
| | Vince Chadick (attorney) | 6.9 | $350 | $2,415.00 |
| Central Arkansas Library System, Nate Coulter, Eureka Springs Carnegie Public Library | John Adams (attorney) | 359.6 | $200 | $71,465.00[5] |
| **GRAND TOTAL REQUESTED:** | | | | **$449,354.00** |

---

[4] Neither Jennie nor Hayden Kirby are current Plaintiffs. Jennie was named in the original complaint in her capacity as parent and next friend of her then-minor daughter Hayden. *See* Doc. 2. Hayden reached the age of majority around the time the Court issued the preliminary injunction order, so the amended complaint identified Hayden as a plaintiff in her own right and dismissed Jennie, whose presence in the case was no longer needed. See Doc. 75. Just before cross-motions for summary judgment were filed, Plaintiffs moved to voluntarily dismiss Hayden, who no longer had time to participate, and the Court granted the motion. *See* Doc. 89.

[5] The requested total for Mr. Adams is wrong. 359.6 x $200 = $71,920.00.

Before discussing hours and rates, the Court addresses two threshold issues, namely: (1) whether Crawford County Defendants should be held liable for Plaintiffs' attorneys' fees and costs, jointly and severally with the State; and (2) whether Plaintiffs are barred from requesting fees and costs for work performed prior to the Court's entry of the preliminary injunction.

With regard to the first issue, Crawford County Defendants contend that the State of Arkansas should foot the entire bill for Plaintiffs' reasonable fees and costs because "the Arkansas General Assembly drafted and passed Act 372" and "Crawford County never implemented Act 372 or took any steps to do so." (Doc. 147, p. 2). However, Crawford County Defendants fail to acknowledge that they were proper parties to sue, they hired their own counsel, and they mounted a vigorous defense *separate* from the State's. As the Court explained in detail above, Crawford County Defendants filed several unsuccessful (and generally ill-considered) motions that the State refused to join and which contributed to the fees Plaintiffs expended in this case, including a motion to transfer (Doc. 29), a motion to dismiss (Doc. 35), a motion to amend the preliminary injunction order (Doc. 55), and a motion to strike (Doc. 76). As the Court was not presented with any legal reason why Crawford County Defendants should be exempt from liability for Plaintiffs' reasonable fees and costs, they will be held jointly and severally liable along with the State.

Next, both sets of Defendants argue that the Court should strike any request for fees and costs that Plaintiffs' counsel incurred prior to the entry of the preliminary injunction order. In Defendants' view, Plaintiffs qualified as "prevailing parties" under § 1988 when preliminary relief was granted, which meant they were obligated to file a

motion for fees within fourteen days or lose the opportunity to claim those fees forever. This "gotcha" argument is entirely specious, as earlier this year, the Supreme Court made abundantly clear that "prevailing party status does not depend upon the degree of success at different stages of the suit, but whether, *at the end of the suit*, or other proceeding, the party who has made a claim against the other, has successfully maintained it." *Lackey v. Stinnie*, 145 S. Ct. 659, 667 (2025) (internal quotation marks omitted and emphasis added). Therefore, "[a] preliminary injunction, which temporarily preserves the parties' litigating positions based in part on a prediction of the likelihood of success on the merits, does not render a plaintiff a 'prevailing party'" under § 1988(b). *Id.* at 671. Only "when a court conclusively resolves [a plaintiff's] claim by granting enduring relief on the merits" is he entitled to the recoupment of his fees and costs. *Id.*

Below, the Court considers the reasonableness of Plaintiffs' attorneys' fees and costs expended from the filing of the original complaint to the entry of final judgment.

## II. LEGAL STANDARD

The Supreme Court has made clear that, in the absence of special circumstances, "a district court not merely 'may' but *must* award fees to the prevailing plaintiff." *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 760–61 (1989) (emphasis in original). This near-mandatory awarding of fees under § 1988 is to ensure "'effective access to the judicial process' for persons with civil rights grievances," and thereby fulfill § 1983's purpose. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting H.R. Rep. No. 94–1558, p. 1 (1976)). "Accordingly, a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Id.* (internal quotations and citations omitted). By providing a mechanism by which attorneys

7

who take on civil rights claims can recover their fees should they prevail, Congress has incentivized the Bar to take these cases in the first place.

To calculate a reasonable fee award, courts look to the "lodestar" amount, *i.e.*, "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433. When making this determination, courts may consider the twelve factors identified in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974).[6] But often, these factors "are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 n.9.

### III. DISCUSSION

Defendants make three challenges to Plaintiffs' request for fees and costs. First, they contend that some hourly rates are too high. Second, they argue that some time entries are duplicative, excessive, and wasteful. And third, they argue that some of the costs requested are unnecessary and should not be reimbursed. The Court will address each argument in turn.

### A. Hourly Rates

This case involved complex legal questions, as First Amendment challenges often do. Plaintiffs' counsel worked together to prosecute the case and fend off attacks from both sets of Defendants at every stage of the litigation. Accordingly, the Court finds the

---

[6] "The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley*, 461 U.S. at 430 n.3 (1983) (citing *Johnson*, 488 F.2d at 717–19).

8

rates requested by Plaintiffs are generally reasonable and commensurate with the attorneys' background, training, and expertise, with the following few exceptions:

- Shelley Friedland and Katie Quackenboss are described in Plaintiff's Motion as "legal assistants." In analyzing their time entries, it appears they performed only clerical tasks, such as formatting documents and cite checking. The Court declines to award attorney's fees for clerical tasks that a competent legal secretary could have performed. Therefore, Ms. Friedland's and Ms. Quackenboss's hours will not be reimbursed.

- Karen Ogle and Cheryl Sykes are described in the Motion as "paralegals." However, their time entries are also limited to purely clerical tasks, such as preparing legal binders, organizing pleadings, and creating indexes. Their hours will not be reimbursed.

- Victoria Nugent is an attorney with twenty-seven years of legal experience. She requests an hourly rate of $400. The Court finds that an hourly rate of $350 is more appropriate for the local market.

- Michael Bamberger is an attorney with sixty-four years of experience who specializes in First Amendment litigation. He is entitled to an above-market hourly rate, given his skill set and breadth of knowledge. However, the Court finds that his requested rate of $515 per hour is slightly high for the market. The Court awards him $400 per hour.

**B. Time Entries**

Defendants argue that Plaintiffs' counsel spent too much time performing certain tasks. They object that too many lawyers reviewed the same pleading or brief or sat in on depositions or hearings without speaking. But that is the nature of a multi-plaintiff case. Each plaintiff's lawyer is entitled to sign off on each brief submitted on behalf of their client, and each plaintiff's lawyer is ethically obligated to attend every hearing and deposition necessary to adequately represent their client's interests. Further, given the Act's breadth and scope, it should come as no surprise to the State that so many parties sued about Sections 1 and 5 of Act 372, or that different teams of lawyers were retained to represent different groups of plaintiffs.

Defendants criticize Plaintiffs' attorneys' "duplicative" and "wasteful" phone calls, emails, and meetings spent coordinating their litigation strategy. But what Defendants fail to recognize is that this coordination *saved money*. Plaintiffs were not obligated to coordinate. Each group of Plaintiffs could have filed separate motions and responses, which would have exponentially increased the amount of fees they reasonably expended. Instead of doing that, Plaintiffs agreed to file everything jointly, which necessitated written and oral communication among the lawyers—none of whom billed their time excessively.

Three of Plaintiffs' attorneys—Mr. Seel, Ms. Hughes Parker, and Mr. Adams—took up the laboring oar on behalf of all Plaintiffs to draft the pleadings, motions, and responses that were filed in this case. They did not duplicate one another's work, which is no mean feat. Two attorneys—Mr. Adams and Ms. Brownstein—took or defended depositions on behalf of all Plaintiffs. The Court observes that the attorneys who were *not* the primary drafters were still obligated to review all briefs before they could be filed and suggest any changes necessary to protect their respective clients' interests. The same goes for depositions: One attorney for each set of Plaintiffs was ethically obligated to sit in on all depositions, even if another attorney assumed the primary speaking role.

Accordingly, all hours billed by the approved billers are both reasonable and appropriate, and the Court awards Plaintiffs **$439,335.00** in attorneys' fees as follows:

| Plaintiffs | Legal Biller | Hours | Rate/Hour | Total |
|---|---|---|---|---|
| Adam Webb, Arkansas Library Association, Advocates for All Arkansas Libraries | Ben Seel | 542.3 | $275 | $149,132.50 |
| | Jeffrey Dubner | 42.7 | $325 | $13,877.50 |
| | Victoria Nugent | 12.7 | $350 | $4,445.00 |
| Jennie Kirby, Hayden Kirby, Leta Caplinger, Miel Partain, Madeline Partain, Olivia Farrell | Bettina Brownstein | 140.4 | $400 | $56,160.00 |
| American Booksellers Association, Association of American Publishers, Authors Guild, Comic Book Legal Defense Fund, Freedom to Read Foundation, Pearl's Books, Wordsworth Books | Rebecca Hughes Parker | 249.2 | $350 | $87,220.00 |
| | Michael Bamberger | 81.6 | $400 | $32,640.00 |
| Fayetteville Public Library | Brandon Cate | 49.9 | $350 | $17,465.00 |
| | Vince Chadick | 6.9 | $350 | $2,415.00 |
| Central Arkansas Library System, Nate Coulter, Eureka Springs Carnegie Public Library | John Adams | 359.6 | $200 | $71,920.00 |
| **GRAND TOTAL AWARDED:** | | | | **$435,275.00** |

### C. Costs

Plaintiffs have submitted a bill of costs totaling $7,947.11. Rule 54(d) provides that "costs—other than attorney's fees—should be allowed to the prevailing party." Taxable costs are set forth at 28 U.S.C. § 1920 and include fees of the clerk and marshal, fees for printed and electronically recorded transcripts necessarily obtained for use in the case, fees and disbursements for printing and witnesses, fees for copies of any materials necessarily obtained for use in the case, docket fees, and compensation of court-appointed experts and interpreters. In addition to the taxable costs listed in § 1920, the

prevailing party may recover as attorneys' fees "out-of-pocket expenses of the kind normally charged to clients by attorneys." *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294–95 (8th Cir. 1996).

Defendants suggest that Plaintiffs should not have included costs for multiple copies of the same deposition transcripts. Plaintiffs agree. *See* Doc. 154, p. 10. Therefore, a deduction of $955.00 is appropriate. Defendants also criticize the inclusion of $620.62 in travel costs related to Ms. Hughes Parker's trip to Washington, D.C., to meet with co-counsel in person. Though Plaintiffs respond that it is not unreasonable for counsel to occasionally travel to a nearby city to meet co-counsel in person, they agree to withdraw this request for costs. *See id.* at p. 9. Therefore, a second deduction of $620.62 for Ms. Hughes Parker's train and car fare is appropriate. These deductions total $1,575.62, bringing the final award of costs to **$6,371.49**.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Attorneys' Fees and Costs (Doc. 129) is **GRANTED IN PART AND DENIED IN PART** as explained above. **IT IS ORDERED** that all Defendants jointly and severally owe Plaintiffs a total of $435,275.00 in attorneys' fees and $6,371.49 in costs, for a total award of **$441,646.49**. An Amended Judgment will be filed contemporaneously with this Opinion and Order.

**IT IS SO ORDERED** this 21st day of May, 2025.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE