# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF ARKANSAS
# FAYETTEVILLE DIVISION

**FAYETTEVILLE PUBLIC LIBRARY**, a political subdivision in the City of Fayetteville, State of Arkansas; et al.

**Plaintiffs**

v.                    Case No. 5:23-cv-05086-TLB

**CRAWFORD COUNTY, ARKANSAS; et al.**

**Defendants**

- and -

**TIM GRIFFIN**, in his official capacity as Attorney General of Arkansas

**Intervenor-Defendant**

### BRIEF IN SUPPORT OF PROSECUTOR DEFENDANTS' EMERGENCY MOTION TO STAY EXECUTION OF THE AWARD OF ATTORNEYS' FEES AND COSTS

After enjoining Defendants from enforcing Sections 1 and 5 of Act 372 in their entirety, the Court awarded Plaintiffs $441,646.49 in attorneys' fees and costs. Without a stay of that award pending appeal, Plaintiffs' collection of the award will cause chaos for the parties and Arkansans throughout the State.

To pay the award, money would either need to be drawn from the general revenues of Arkansas's 75 counties or collected by defunding deputy-prosecutor positions. Both options entail complex processes and would work substantial harms on Arkansans. Then, if even a portion of the appeal is successful (which is likely), the complex processes would have to be unwound. That would require divvying up the clawed-back award among the 75 counties or reappropriating funds for deputy prosecutors' salaries. The simpler option—for both Plaintiffs and Prosecutor Defendants—is to deal with one, final executable award for fees and costs (if any remains after the appeals), so that Plaintiffs will not have to parcel back whatever amount of fees and costs is altered through the appeals. Further, a stay will not harm Plaintiffs. For one, the Court's injunction will

remain in effect. For another, Plaintiffs will be entitled to postjudgment interest on awarded fees and costs that remain after appeal.

The Court should grant the Prosecutor Defendants and Interventor-Defendant's[1] Emergency Motion to Stay Execution of the Award of Attorneys' Fees and Costs by Wednesday, June 18, 2025.[2] They respectfully request a decision by that date so, if necessary, they are able to seek emergency relief from the Eighth Circuit before the judgment goes into effect on Friday, June 20, 2025.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 62, courts have discretion to stay execution of an order on attorneys' fees and costs pending appeal. *See EEOC v. Drivers Mgmt., LLC*, No. 8:18-cv-462, 2024 WL 3758016, at *1 (D. Neb. Aug. 12, 2024). They may do so without the posting of a bond or other security, which this Court has done before. *See Ark. United v. Thurston*, No. 5:20-cv-5193, 2023 WL 187507, at *5 (Jan. 13, 2023); *see also, e.g.*, *Arban v. W. Pub. Corp.*, 345 F.3d 390, 409 (6th Cir. 2003) (explaining that a stay under Rule 62 does not require a bond or security); *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 759 (D.C. Cir. 1980) (same). In fact, multiple appellate courts have noted that requiring a bond or other security "would be inappropriate . . . where the defendant's ability to pay the judgment is so plain that the cost of

---

[1] Intervenor-Defendant is not liable for the awarded attorney' fees and costs and joins this stay out of an abundance of caution. He was not a party until after the Court entered a permanent injunction. Thus, the Court's amended judgment was limited to making "Defendants," not Intervenor-Defendant, liable for fees and costs.

[2] Counsel for Prosecutor Defendants and Intervenor-Defendant consulted with Plaintiffs' counsel about whether this motion would be opposed. Plaintiffs' counsel initially indicated that they would decide last week but then indicated they might have been able to decide by today. Prosecutor Defendants and Intervenor-Defendant waited until today to give Plaintiffs time to consider. Today, however, Plaintiffs informed counsel that they are still deciding whether they will oppose this motion or not. The Crawford County Defendants do not oppose the motion.

the bond would be a waste of money." *Arban*, 345 F.3d at 409 (quoting *Olympia Equipment Leasing Co. v. W. Union Telegraph Co.*, 786 F.3d 794, 796 (7th Cir. 1986)); *see also Acevedo-Garcia v. Vera-Monroig*, 296 F.3d 13, 17 (1st Cir. 2002).

When considering whether to grant a stay, courts weigh four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 482 U.S. 770, 776 (1987)). The second and third factors are addressed as a "balance of the equities" between the parties. *Brady v. Nat'l Football League*, 640 F.3d 785, 793 (8th Cir. 2011). And when the government is involved, the harm to the government and public-interest factors can merge. *Nken*, 556 U.S. at 435.

## ARGUMENT

**1. Prosecutor Defendants and Intervenor-Defendant are likely to be successful, at least in part, on their merits appeal and appeal of the attorneys-fee award.**

Prosecutor Defendants and Intervenor-Defendant are likely to succeed on both (1) their appeal of the injunction and declaratory judgment and (2) their appeal of the attorneys-fees award. And even if they do not win the entirety of those appeals, even a partial win on either will alter the fees and costs that Plaintiffs may recover. The Court is acquainted with the parties' arguments on these issues, so for efficiency, Prosecutor Defendants and Intervenor-Defendant incorporate by reference their motions and briefing. Fed. R. Civ. P. 10(c); Doc. 93; Doc. 97; Doc. 107; Doc. 117; Doc. 148; Doc. 159. In short, the Court erred in the following six ways.

*First*, the Court granted Plaintiffs substantially all the requested fees and costs. Doc. 160, at 5, 11. As a preliminary matter, this is erroneous because about half of the requested fees were

incurred during the preliminary-injunction stage and earlier proceedings. *See* Doc. 148, at 2. Under the Eighth Circuit's binding decision in *Spirit Lake Tribe v. Jaeger*, 5 F.4th 849 (8th Cir. 2021), Plaintiffs are not entitled to recover those fees, because they failed to timely move for them. Doc. 148; Doc. 159. But the Court did not even cite *Spirit Lake*, much less distinguish it or explain if it believed the 2021 decision had been abrogated. Doc. 160, at 6–7. Further, although the Court deducted a few hours attributable to paralegals and legal assistants, it failed to reduce any of the unreasonably requested attorney hours and reduced only two attorneys' unreasonable rates. *Id.* at 9–10.

*Second*, the Court held that Plaintiffs had standing to challenge Sections 1 and 5 of Act 372 and that Plaintiffs' claims were ripe. Doc. 126, at 12, 30–31. But no Plaintiffs had standing to challenge Section 5, and at least some Plaintiffs lacked standing as to at least some Defendants for their Section 1 challenge. No Plaintiff has standing to challenge Section 5 (and the challenge is unripe) because the alleged injuries are premised on mere speculation that someone may challenge library materials. *See L.H. v. Indep. Sch. Dist.*, 111 F.4th 886 (8th Cir. 2024). Furthermore, the speculative injury is not fairly traceable to Defendants because Prosecutor Defendants do not implement Section 5, *see Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958 (8th Cir. 2015) (explaining a plaintiff's injury is not "fairly traceable" to officials that "do not have authority to enforce" the challenged law), and because the only alleged injury in Crawford County occurred before Section 5 was enacted. *See* Doc. 126, at 30. Relatedly, the alleged Section 5 injury is not redressable because Prosecutor Defendants do not enforce Section 5, and Crawford County's actions that supposedly formed the basis of Plaintiffs' injury have already been enjoined in a separate case. *See Virden v. Crawford County*, No. 2:23-cv-2071, 2024 WL 4360495, at *5 (W.D. Ark. Sept. 30, 2024).

4

Nor did the Plaintiffs establish standing to challenge Section 1. For starters, public libraries, including some Plaintiffs, are "subordinate unit[s] of government" who do not have standing to challenge Sections 1 (or Section 5). *Ysura v. Pocatello Educ. Ass'n*, 555 U.S. 353, 363 (2009). That also means that association plaintiffs that were basing their standing on public-library members lack standing. Moreover, none of Plaintiffs have identified an item that is harmful to minors that they want to furnish to minors but for Section 1 (or that they wish to read that would be subject to Section 1). *See, e.g.*, Doc. 99-5, at 2–3; Doc. 93-8, at 48:10–22.

And even if some Plaintiffs had standing against some Defendants for some claims, the Court erroneously granted sweeping relief against all Defendants because no Plaintiffs showed harm traceable to (or redressable by) Prosecutor Defendants in counties in which they do not reside. *See Murthy v. Missouri*, 603 U.S. 43, 61 (2024) ("[F]or every defendant, there must be at least one plaintiff with standing to seek an injunction.").

*Third*, the Court held Section 5 violates the First Amendment. Doc. 126, at 36. Section 5, however, regulates government speech and thus cannot violate the Free Speech Clause. Doc. 97, at 20–23; Doc. 107, at 16–17; Doc. 117, at 7–8. And even if curation decisions under Section 5 were not government speech, Section 5 survives constitutional scrutiny. Doc. 107, at 19–20.

*Fourth*, the Court held that the terms "appropriateness," "withdraw," and "relocate" in Section 5 are unconstitutionally vague. Doc. 126, at 32. Read in context, however, those terms' ordinary meanings are understandable. Doc. 97, at 24–25; Doc. 107, at 17–18; Doc. 117, at 4. Neither "perfect clarity" nor "precise guidance" is required. *United States v. Williams*, 553 U.S. 285, 304 (2008).

*Fifth*, the Court held that Section 1 is facially overbroad and violates the First Amendment. Doc. 126, at 21. That is erroneous for several reasons. As a preliminary matter, the Plaintiffs did

not meet the high bar to mount a successful facial challenge. Doc. 97, at 7–8, 13, 15, 23; Doc. 107, at 4–5, 10, 12; Doc. 117, at 2. Even if they had, the State has a compelling interest in protecting minors and the lawful applications of Section 1 far outweigh any potentially unlawful application. Doc. 97, at 12, 15; Doc. 107, at 9, 12; Doc. 117, at 5. Any "incidental effect of the permissible regulation" will be "minimal." *Upper Midwest Booksellers Ass'n v. City of Minneapolis*, 780 F.2d 1389, 1395 (8th Cir. 1985).

*Sixth*, the Court held that Section 1 was void for vagueness based on the words "presents," "makes available," and "shows." Doc. 126, at 22. These words have clear, identifiable meanings, and any potential ambiguity is mitigated by context and the law's double "knowledge requirement." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 21 (2010).

In sum, the appeal is likely to succeed, at least in part, which means the attorneys-fee award will be eliminated altogether or reduced.

2. **Without a stay, Prosecutor Defendants will be irreparably harmed, and a stay is in the public interest.**

The harm to Prosecutor Defendants, along with the likelihood of success, are the two "most critical" factors. *Kansas v. United States*, 124 F.4th 529, 533 (8th Cir. 2024) (quoting *Brady*, 640 F.3d at 789). Without a stay, they will be irreparably harmed multiple times over.

At this point, it is uncertain where the allocation of funds would be drawn, but all potential sources for the funds will cause complication and harm when at least some of those funds will need to be repaid following the appeals. One potential source is the general revenues of Arkansas's 75 counties. Although the salaries of the elected prosecutors and deputy prosecutors come from State funds, *see* Ark. Const. art. 19, § 31 (elected prosecutors); Act 1015 of 2025 (deputy prosecutors), their expenses do not. The expenses of the Prosecuting Attorneys' Offices are paid by the "several counties of this state." Ark. Code Ann. § 16-21-119(b). Thus, without a stay, almost

$500,000 in *county* funds could be pulled from the 75 counties' separate "general revenues" and put into the hands of private law firms and organizations. Ark. Code Ann. § 16-21-119(b). Alternatively, the State might need to defund multiple deputy-prosecutor positions to reappropriate funds to pay the fees. *See* Ex. 1, at 2–3 (2007 Claim Commission decision that resulted in funds being taken from deputy-prosecutor salaries); *see Texas v. Becerra*, 577 F. Supp. 3d 527, 556 (N.D. Tex. 2021) (finding that an employer who would, among other harms, "[l]os[e] up to 36" employees without an injunction would be irreparably injured). Either way, there would be significant harm—to the counties, which could lose general-revenue money, or to the judicial districts, which could lose valuable manpower to prosecute crimes.

Then, if Prosecutor Defendants and Intervenor-Defendant are successful on any part of their appeal, the complex process of obtaining funds from the counties or defunded deputy-prosecutor positions would have to be undone. Some portion (or all) of the award would have to be disgorged by Plaintiffs and either divvyed up among the 75 counties or be reappropriated to deputy-prosecutor positions. Competing this process would take significant and unrecoverable state-employee time. *Cf. Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 426 (8th Cir. 1996) (explaining that "unrecoverable economic loss . . . does qualify as irreparable harm"). And until then, counties may have to operate with fewer funds or deputy prosecutors may need to be terminated or put on leave.

And the public interest, which can be considered with the harm to government actors, weighs in favor of a stay for the same reasons. *Nken*, 556 U.S. at 435. The general revenues of the counties are vital for their day-to-day operation, and having Prosecuting Attorneys' Offices fully staffed and able to effectively prosecute crimes keeps Arkansans safer. In other words, "the

7

public interest counsels in favor of maintaining the status quo until the merits panel can adjudicate the case." *Kansas v. United States*, 124 F.4th 529, 534 (8th Cir. 2024).

### 3. A stay will not harm Plaintiffs.

In considering the harm to Plaintiffs, "the maintenance of the status quo is an important consideration." *Kansas*, 124 F.4th at 534 (quoting *E.T. v. Paxton*, 19 F.4th 760, 770 (5th Cir. 2021)). It is not only in the public's interest to maintain the status quo, but maintaining the status quo also will not harm Plaintiffs here. For three reasons, staying payment of the award maintains the status quo and will actually benefit, rather than harm, Plaintiffs.

*First*, a stay will prevent the status quo from being altered. The Court's injunction related to Act 372 will remain in effect pending appeal, and Plaintiffs have not yet acquired attorneys' fees and costs. *Second*, with a stay, Plaintiffs will be compensated with any accrued postjudgment interest on the attorneys' fees and costs under 28 U.S.C. § 1961(a). *See El-Tabech v. Clarke*, 616 F.3d 834, 841 n.2 (8th Cir. 2010). *Third*, Plaintiffs will benefit from a stay. It will be administratively easier for Plaintiffs to acquire the final award for fees and costs, if any, after the appeal concludes. If the award is collected before the appeal concludes and is subsequently reduced, Plaintiffs will be required to disgorge fees and costs already obtained.

## CONCLUSION

For these reasons, Prosecutor Defendants and Intervenor-Defendant respectfully request that the Court grants their motion to stay pending appeal the order awarding attorneys' fees and costs by Wednesday, June 18, 2025.

Case 5:23-cv-05086-TLB   Document 164   Filed 06/16/25   Page 9 of 9 PageID #: 2854

Respectfully submitted,

TIM GRIFFIN
Attorney General

By:    Noah P. Watson
       Ark. Bar No. 2020251
       Deputy Solicitor General

       Arkansas Attorney General's Office
       101 West Capitol Avenue
       Little Rock, Arkansas 72201
       (501) 682-1019
       (501) 682-2591 fax
       noah.watson@arkansasag.gov

       *Attorneys for Prosecutor Defendants
       and Intervenor-Defendant*